

FILED 8/31/2026 4:44 PM
2026-DCL-01820 / 113102382
LAURA PEREZ-REYES
Cameron County District Clerk
By Alejandra  Ramos Deputy Clerk

**CAUSE NO.** 2026-DCL-01820

| | | |
|---|---|---|
| CARLOS ALBERTO ELIZONDO, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| v. | § | Cameron County - 138th District Court |
| | § | |
| CITY OF BROWNSVILLE, JARRETT SHELDON, | § | _____ JUDICIAL DISTRICT |
| INDIVIDUALLY AND AS FIRE CHIEF FOR THE | § | |
| CITY OF BROWNSVILLE, CESAR DE LEON, | § | |
| INDIVIDUALLY AND AS A BROWNSVILLE CITY | § | |
| COMMISSIONER, THE ESTATE OF | § | |
| BEN NEECE, INDIVIDUALLY, AND AS A BROWNSVILLE | § | |
| CITY COMMISSIONER, AND THE BROWNSVILLE | § | |
| FIREFIGHTERS ASSOCIATION LOCAL 970 | § | |
| Defendants | § | OF CAMERON COUNTY, TEXAS |

### Plaintiff's Original Petition, Request for Disclosure, and Jury Demand

Plaintiff, CARLOS ALBERTO ELIZONDO ("Plaintiff") files this Original Petition against Defendants,

CITY OF BROWNSVILLE ("City"), JARRETT SHELDON, INDIVIDUALLY AND AS FIRE CHIEF FOR THE CITY OF

BROWNSVILLE ("Chief Sheldon"), CESAR DE LEON, INDIVIDUALLY AND AS A BROWNSVILLE CITY

COMMISSIONER ("Commissioner De Leon"), THE ESTATE OF BEN NEECE, INDIVIDUALLY, AND AS A

BROWNSVILLE CITY COMMISSIONER ("Commissioner Neece"), AND THE BROWNSVILLE FIREFIGHTERS

ASSOCIATION LOCAL 970, and respectfully shows:

### I. Discovery Control Plan

1.01.    Plaintiff intends that discovery be conducted under Level 2 pursuant to Tex. R. Civ. P. 190.3.

### II. Parties and Service

2.01.    Plaintiff Carlos Alberto Elizondo is an individual residing in Cameron County, Texas.

2.02.    Defendant City of Brownsville, Texas is a Texas municipality that may be served by serving its

Mayor or City Secretary at City Hall, 1001 E. Elizabeth Street, Brownsville, Texas 78520, or by any other

method permitted by law.

2.03.    Defendant Jarrett Sheldon is the Fire Chief of the City of Brownsville. He is sued in his individual capacity for damages and in his official capacity for prospective declaratory and injunctive relief. He may be served at the Brownsville Fire Department, Central Station, 1000 E Adams St, Brownsville, TX 78520, or wherever he may be found.

2.04.    Defendant Cesar De Leon was a City Commissioner of the City of Brownsville. He is sued in his individual capacity for damages and in his official capacity for prospective declaratory and injunctive relief. He may be served at 622 East Saint Charles Street, Brownsville, Texas 78520, or wherever he may be found.

2.05.    Defendant the Estate of Ben Neece is sued based on the acts and omissions of Ben Neece while he served as a City Commissioner of the City of Brownsville, and individually. Plaintiff is informed and believes that service may be made through the Estate's representative at the representative's address of record or as otherwise authorized by law.

2.06.    Defendant Brownsville Firefighters Association Local 970 is an unincorporated nonprofit association that may be served through its president, Joseph Huerta, at 731 E. Elizabeth Street, Brownsville, Texas 78520, or wherever he may be found.

### III. Jurisdiction and Venue

3.01.    The Court has subject-matter jurisdiction because the amount in controversy exceeds the minimum jurisdictional limits of the Court, and Plaintiff seeks legal and equitable relief authorized by Texas and federal law, including relief under 42 U.S.C. § 1983.

3.02.    Venue is proper in Cameron County, Texas because all or a substantial part of the events or omissions giving rise to the claims occurred in Cameron County and the City is located there. Tex. Civ. Prac. & Rem. Code § 15.002(a).

### IV. Conditions Precedent and Notices

4.01.    All conditions precedent to Plaintiff's claims have occurred, been performed, or have been excused. Plaintiff pleads generally under Tex. R. Civ. P. 54.

4.02.    To the extent required for any state-law claim, Plaintiff provided the City with timely written notice of claim consistent with Tex. Civ. Prac. & Rem. Code § 101.101.

## V. Factual Background

5.01.    Plaintiff Carlos Alberto Elizondo dedicated more than nineteen years of public service to the citizens of Brownsville, Texas. Plaintiff began his employment with the City of Brownsville in or about 1997 and faithfully served the community for over nineteen years. During his tenure with the City, Plaintiff worked his way through the ranks of the Brownsville Fire Department, serving as an Emergency Medical Technician, Firefighter Paramedic, Firefighter Driver, Firefighter Lieutenant, and ultimately Fire Chief.

5.02.    Through hard work, dedication, and integrity, Plaintiff rose to the highest leadership position within the department and served as Fire Chief for the City of Brownsville. Throughout his career, Plaintiff was known for his professionalism and commitment to public safety and faithfully discharged his duties on behalf of the citizens of Brownsville.

5.03.    In 2014, Plaintiff sought to further serve his community by running for public office. Plaintiff ran for and was elected as a Trustee for the Brownsville Independent School District Board of Trustees, serving in Position 2. In that capacity, Plaintiff acted as an elected public official responsible for making decisions affecting public education, public funds, and the governance of the Brownsville Independent School District.

5.04.    During Plaintiff's tenure as both Fire Chief and BISD Trustee, certain members of the Brownsville City Commission, including Commissioner Cesar De Leon and Commissioner Ben Neece, began pressuring Plaintiff to use his position as a BISD Trustee to advance their personal and professional interests. Specifically, Commissioners De Leon and Neece sought to establish a quid pro quo

arrangement in which Plaintiff would use his influence as a BISD Trustee to affect matters involving legal services and litigation involving BISD in ways that would benefit their private law practices and professional interests.

5.05.    Among other things, these officials sought Plaintiff's assistance in influencing matters involving litigation pending against BISD, including litigation involving the daughter of a sitting State District Judge, Judge Elia Cornejo, and matters in which Commissioner Ben Neece's law firm represented clients with claims against BISD. These officials sought favorable treatment in those matters through Plaintiff's influence as an elected BISD Trustee.

5.06.    The requested conduct was improper, unethical, and potentially criminal. Plaintiff refused to misuse his public office or engage in any conduct that would violate the law or his ethical duties as a public servant. Plaintiff made it clear that he would not participate in any effort to manipulate public processes or influence matters before the school district for the private benefit of elected officials or their law practices.

5.07.    Plaintiff's refusal to participate in these improper acts placed him in direct conflict with certain City officials. After Plaintiff refused to comply with these requests, Defendants began retaliating against him. Plaintiff's refusal to engage in corruption and his stance against improper governmental conduct constituted speech and conduct as a citizen and elected official on matters of significant public concern, including governmental corruption, misuse of public office, and abuse of governmental authority.

5.08.    Following Plaintiff's refusal to cooperate, certain City officials, including Commissioners Cesar De Leon and Ben Neece began a concerted effort to remove Plaintiff from his position as Fire Chief and to damage his reputation and career.

5.09.    As part of this effort, the City commissioned an audit of the Brownsville Fire Department's ambulance operations.  The audit focused on a longstanding operational practice of referring certain

non-emergency ambulance transports to private ambulance companies.  This practice had been known

to and authorized by City leadership, including the City Manager and legal advisors for the City.

5.10.    Despite this knowledge, Defendants intentionally mischaracterized the audit findings and falsely

portrayed the authorized ambulance practices as improper or unlawful.  Defendants knowingly

concealed the fact that these authorized ambulance referral practices had always been permitted and

approved by City leadership.

5.11.    Defendants then used the audit as a pretext to justify disciplinary action against Plaintiff and to

initiate criminal allegations against Plaintiff.

5.12.    Specifically, Defendants knowingly and intentionally misrepresented facts to the Cameron

County District Attorney's Office alleging Plaintiff had committed the criminal offenses of Theft by a

Public Servant and Misapplication of Fiduciary Property, both third-degree felonies.  In making these

allegations, Defendants knowingly and intentionally failed to disclose critical exculpatory information,

including that the prior ambulance referral practices had always been authorized and approved by City

leadership.

5.13.    Defendants' actions were not taken for legitimate governmental purposes.  Instead, Defendants

used the criminal justice system as a tool to retaliate against Plaintiff for refusing to participate in their

requested misconduct and to justify his removal as Fire Chief.

5.14.    Based upon the misleading and incomplete information provided by City officials, criminal

proceedings were initiated against Plaintiff.  Plaintiff's home in Brownsville was raided, he was jailed, and

forced to surrender to investigators with the Cameron County District Attorney's Office in a highly

publicized and humiliating manner.  Plaintiff was arrested and formally charged with felony offenses.

5.15.    The criminal accusations against Plaintiff were widely publicized and caused severe damage to

his reputation, career, and standing in the community.  The City publicly associated Plaintiff's termination

with allegations of serious felony misconduct, creating a false and stigmatizing impression that Plaintiff had engaged in criminal wrongdoing.

5.16.    After Plaintiff was suspended with pay, he continued to access the Fire Department computer systems in order to monitor emergency operations within the City in anticipation of returning to work. Plaintiff had not been informed that his access privileges had been revoked and Defendants knew that Plaintiff had not been prohibited from accessing the system.

5.17.    Nevertheless, Defendants again referred criminal allegations to the Cameron County District Attorney's Office and accused Plaintiff of unauthorized access to the Fire Department computer system, which resulted in additional felony charges.

5.18.    These accusations were likewise baseless.  In September 2019, following a jury trial, a jury found Plaintiff "Not Guilty" on all charges related to the alleged unauthorized computer access.  The remaining criminal charges for Theft by a Public Servant and Misapplication of Fiduciary Property were eventually dismissed in April 2025 which resulted in the complete and favorable termination of all criminal prosecutions brought against Plaintiff.

5.19.    Throughout these events, Defendants acted intentionally, maliciously, and in concert with one another.  Commissioners Cesar De Leon and Ben Neece forced the hand of the City Manager and others acting on behalf of the City to reach an agreement and understanding to remove Plaintiff from his position as Fire Chief and to justify their decision through the creation of false allegations and criminal referrals.

5.20.    Defendants knowingly fabricated, manipulated, and misrepresented evidence and withheld material information to create the appearance of criminal wrongdoing where none existed.  These actions by Defendants deprived Plaintiff of his constitutional rights and subjected him to criminal prosecution without probable cause.

5.21.    Defendants also misused governmental disciplinary procedures, internal audits, and criminal referrals for improper purposes unrelated to legitimate law enforcement or administrative objectives. Rather than pursuing lawful ends, Defendants used these processes as tools of retaliation and coercion.

5.22.    As a direct result of Defendants' actions, Plaintiff was wrongfully terminated from his position as Fire Chief, publicly accused of several serious felony crimes, arrested, prosecuted, and subjected to years of criminal proceedings.  Plaintiff was then terminated as Fire Chief, by Jarrett Sheldon, who was acting in concert with and in conspiracy with the other Defendants.

5.23.    Defendants' conduct caused Plaintiff severe damages, including the loss of his employment, loss of income and employment benefits, loss of retirement opportunities, damage to his professional reputation, humiliation, mental anguish, and emotional distress.  The conduct of Defendants was extreme and outrageous and was undertaken with reckless disregard for Plaintiff's rights and well-being.

5.24.    Even after the criminal allegations proved to be unfounded and resulted in acquittals and dismissals, the damage to Plaintiff's career and reputation had already been inflicted.

5.25.    Defendants' actions were taken under color of law and pursuant to the authority of the City of Brownsville and its policymakers.  These actions were ratified and carried out by officials with final policymaking authority for the City with respect to the matters described herein.

5.26.    At all relevant times, the City of Brownsville acted through its officials, policymakers, and employees, including the Brownsville City Commission and the City Manager, who possessed final policymaking authority with respect to employment decisions involving the Fire Chief and the administration of the Brownsville Fire Department.

5.27.    The actions taken against Plaintiff were not isolated acts of lower-level employees but were instead directly authorized, directed, ratified, or approved by officials with final policymaking authority for the City of Brownsville.

5.28.    Specifically, the Brownsville City Commission, including Commissioners Cesar De Leon and Ben Neece, along with City Administration, participated in, directed, approved, and or ratified the decisions to initiate investigations against Plaintiff.  Defendants further used the Fire Department Audit of ambulance referrals operations as a pretextual basis for disciplinary action and referral of criminal accusations against Plaintiff to the Cameron County District Attorney's Office, which resulted in the termination of Plaintiff from his position as Fire Chief.  These actions were taken pursuant to the authority of the City's governing body and constituted official policy of the City of Brownsville.

5.29.    In addition, the City of Brownsville maintained policies, customs, and practices that permitted or encouraged retaliation against public employees who refused to participate in improper conduct or who opposed misconduct by City officials.

5.30.    The unconstitutional acts described herein were therefore undertaken pursuant to official municipal policy, longstanding custom, and/or the ratification of final policymakers, rendering the City of Brownsville liable under 42 U.S.C. § 1983.

5.31.    As a direct and proximate result of these policies, customs, and decisions by final policymakers, Plaintiff suffered the constitutional violations and damages described herein.

5.32.    At all relevant times, Defendants Cesar De Leon and Ben Neece were acting under color of state law in their capacities as elected officials of the City of Brownsville.

5.33.    The constitutional rights violated by Defendants were clearly established at the time of their conduct, including the First Amendment right of public officials and citizens to speak on matters of public concern without retaliation, the right under the Fourth Amendment to be free from criminal prosecution without probable cause, the right under the Fourteenth Amendment not to be subjected to criminal prosecution based on fabricated evidence, and the right not to be publicly stigmatized by false criminal accusations in connection with termination of employment without due process.

5.34.    No reasonable public official could believe it lawful to fabricate or manipulate evidence, conceal exculpatory information, or initiate criminal proceedings for retaliatory purposes.  Likewise, no reasonable official could believe it lawful to retaliate against a public employee for refusing to engage in unlawful or unethical conduct.

5.35.    Defendants De Leon and Neece personally participated in, directed, encouraged, or knowingly approved the retaliatory actions and criminal referrals described herein.  Their conduct was objectively unreasonable in light of clearly established law, and therefore they are not entitled to qualified immunity.

5.36.    The retaliatory actions taken against Plaintiff occurred in a clear sequence following Plaintiff's refusal to participate in improper conduct requested by City officials.

5.37.    First, after Plaintiff refused requests by Commissioners Cesar De Leon and Ben Neece to use his position as a BISD Trustee to influence matters involving litigation and legal services affecting the Brownsville Independent School District, City officials began targeting Plaintiff with investigations and scrutiny unrelated to his job performance.

5.38.    Shortly thereafter, the City commissioned an audit of the Brownsville Fire Department's ambulance operations, focusing on practices that had long been known to and approved by City leadership.  Rather than using the audit for legitimate operational review, Defendants used the audit findings as a pretext to justify disciplinary action against Plaintiff.

5.39.    Following the audit, Defendants referred allegations to the Cameron County District Attorney's Office, claiming that Plaintiff had committed criminal offenses related to ambulance operations.  These allegations resulted in a raid of Plaintiff's home, his public arrest, and the initiation of felony criminal charges.

5.40.    While these criminal proceedings were ongoing, the City proceeded to terminate Plaintiff from his position as Fire Chief, publicly associating his termination with allegations of criminal misconduct.

Defendants later initiated additional criminal accusations alleging unauthorized access to City computer systems, even though Plaintiff had not been informed that his access privileges had been revoked. These actions culminated in multiple criminal prosecutions against Plaintiff.

5.41.    In September 2019, a jury found Plaintiff not guilty of all charges related to the alleged unauthorized computer access. The remaining criminal charges were ultimately dismissed in April 2025, resulting in the complete and favorable termination of the criminal proceedings.

5.42.    The sequence of events described above demonstrates that Defendants' actions were not coincidental or based on legitimate concerns, but instead formed part of a retaliatory campaign that began after Plaintiff refused to participate in improper conduct requested by City officials.

5.43.    At all relevant times, the City of Brownsville, acting through its elected officials and administrative leadership, tolerated and permitted the misuse of governmental authority for political and personal purposes.

5.44.    City officials, including Commissioners Cesar De Leon and Ben Neece, exercised substantial influence over the City administrative processes, including internal investigations, audits, and disciplinary actions involving City employees.

5.45.    These officials used that influence to initiate investigations and disciplinary actions against Plaintiff after he refused to cooperate with their requests to use his position as a BISD Trustee to benefit their private interests.

5.46.    The misuse of governmental authority in Plaintiff's case included commissioning an audit designed to generate allegations against Plaintiff, misrepresenting the results of that audit to investigators and prosecutors, withholding material exculpatory information from law enforcement authorities, referring criminal accusations to prosecutors despite knowledge that the alleged conduct had been authorized by City leadership, and publicly associating Plaintiff's termination with accusations of felony misconduct.

5.47. These actions were not the result of a legitimate effort to enforce City policy or ensure compliance with the law. Instead, they reflected a pattern of using governmental processes, including audits, disciplinary proceedings, and criminal referrals, as tools to retaliate against individuals who refused to comply with the demands of City officials.

5.48. The City's tolerance of such conduct and failure to prevent the misuse of governmental authority demonstrates deliberate indifference to the constitutional rights of City employees and officials, including Plaintiff.

5.49. This pattern of conduct directly contributed to the constitutional violations suffered by Plaintiff.

**MUNICIPAL LIABILITY (MONELL) – CITY OF BROWNSVILLE**

5.50. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

5.51. At all relevant times, the City of Brownsville acted through its officials, policymakers, and employees, including the Brownsville City Commission through the City Manager, who possessed final policymaking authority with respect to employment decisions involving the Fire Chief and the administration of the Brownsville Fire Department.

5.52. The actions taken against Plaintiff were not isolated acts of lower-level employees but were instead directly authorized, directed, ratified, or approved by officials with final policymaking authority for the City of Brownsville.

5.53. Specifically, the Brownsville City Commission, including Commissioners Cesar De Leon and Ben Neece, along with the City Manager, participated in, directed, approved, or ratified the decisions to:

- initiate investigations against Plaintiff;
- commission and utilize an audit of Fire Department operations as a basis for disciplinary action;
- refer criminal accusations against Plaintiff to the Cameron County District Attorney's Office; and
- terminate Plaintiff from his position as Fire Chief.

These actions were taken pursuant to the authority of the City's governing body and constituted official policy of the City of Brownsville.

5.54.    In addition, the City of Brownsville maintained policies, customs, and practices that permitted or encouraged retaliation against public employees who refused to participate in improper conduct or who opposed misconduct by City officials.

5.55.    The unconstitutional acts described herein were therefore undertaken pursuant to official municipal policy, longstanding custom, and/or the ratification of final policymakers, rendering the City of Brownsville liable under 42 U.S.C. §1983.

5.56.    As a direct and proximate result of these policies, customs, and decisions by final policymakers, Plaintiff suffered the constitutional violations and damages described herein.

**POLICY, PRACTICE, OR CUSTOM OF RETALIATION AND MISUSE OF AUTHORITY**

5.57.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

At all relevant times, the City of Brownsville maintained and tolerated policies, customs, or practices that allowed City officials to misuse governmental investigations, disciplinary proceedings, and criminal referrals for improper purposes.

5.58.    These policies, practices, or customs included, but were not limited to:

- permitting City officials to initiate disciplinary actions or criminal referrals against employees without adequate factual investigation;
- permitting City officials to refer criminal allegations to law enforcement while knowingly withholding material exculpatory information;
- permitting the misuse of internal audits and administrative investigations as pretextual tools to justify predetermined employment actions; and
- permitting retaliation against employees who refused to participate in improper or unlawful conduct requested by City officials.

These policies, customs, and practices were known to and tolerated by officials with final policymaking authority for the City, including the City Commission and the City Manager.

5.59.    Despite the obvious risk that such practices would result in violations of constitutional rights, the City failed to implement adequate safeguards, supervision, or training to prevent the misuse of governmental authority.

5.60.    The City's policies, customs, and deliberate indifference to the misuse of governmental processes were moving forces behind the constitutional violations suffered by Plaintiff.

**FINAL POLICYMAKER RATIFICATION**

5.61.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

5.62.    Even if the actions described above were initially undertaken by subordinate officials, the City of Brownsville is liable because its final policymakers knowingly approved and ratified those actions.

5.63.    The City Commission, through Neece, De Leon, and the City Manager were acting as final policymakers, and were aware of the circumstances surrounding the investigations, initiated criminal referrals, and terminated Plaintiff.  Despite knowing that the allegations against Plaintiff were based on incomplete, misleading, and/or fabricated information, these policymakers approved, ratified, and enforced the terminating of Plaintiff and initiated actions leading to Plaintiff's prosecution.

5.64.    By affirmatively approving these actions, the City's final policymakers made the conduct described herein the official policy of the City of Brownsville.

**QUALIFIED IMMUNITY**

5.65.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.  At all relevant times, Defendants Cesar De Leon and Ben Neece were acting under color of state law in their capacities as elected officials of the City of Brownsville.

5.66.    The constitutional rights violated by Defendants were clearly established at the time of their conduct, including:

- the First Amendment right of public officials and citizens to speak on matters of public concern without retaliation;
- the right under the Fourth Amendment to be free from criminal prosecution without probable cause;

- the right under the Fourteenth Amendment not to be subjected to criminal prosecution based on fabricated evidence; and
- the right not to be publicly stigmatized by false criminal accusations in connection with termination of employment without due process.

5.67.    No reasonable public official could believe it lawful to fabricate or manipulate evidence, conceal exculpatory information, or initiate criminal proceedings for retaliatory purposes.

Likewise, no reasonable official could believe it lawful to retaliate against a public employee for refusing to engage in unlawful or unethical conduct.

5.68.    Defendants De Leon and Neece personally participated in, directed, encouraged, or knowingly approved the retaliatory actions and criminal referrals described herein.

Their conduct was objectively unreasonable in light of clearly established law, and therefore they are not entitled to qualified immunity.

**TIMELINE OF RETALIATORY ACTS**

5.69.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

5.70.    The retaliatory actions taken against Plaintiff occurred in a clear sequence following Plaintiff's refusal to participate in improper conduct requested by City officials.

5.71.    First, after Plaintiff refused requests by Commissioners Cesar De Leon and Ben Neece to use his position as a BISD Trustee to influence matters involving litigation and legal services affecting the Brownsville Independent School District, City officials began targeting Plaintiff with investigations and scrutiny unrelated to his job performance.

5.72.    Shortly thereafter, the City commissioned an audit of the Brownsville Fire Department's ambulance operations, focusing on practices that had long been known to and approved by City leadership.  Rather than using the audit for legitimate operational review, Defendants used the audit findings as a pretext to justify disciplinary action against Plaintiff.

5.73.    Following the audit, Defendants referred allegations to the Cameron County District Attorney's Office, claiming that Plaintiff had committed criminal offenses related to ambulance operations.

These allegations resulted in a raid of Plaintiff's home, his public arrest, and the initiation of felony criminal charges.

5.74.    While these criminal proceedings were ongoing, the City proceeded to terminate Plaintiff from his position as Fire Chief, publicly associating his termination with allegations of criminal misconduct. Defendants later initiated additional criminal accusations alleging unauthorized access to City computer systems, even though Plaintiff had not been informed that his access privileges had been revoked. These actions culminated in multiple criminal prosecutions against Plaintiff.

5.75.    In September 2019, a jury found Plaintiff not guilty of all charges related to the alleged unauthorized computer access. The remaining criminal charges were ultimately dismissed on April 2025, resulting in the complete and favorable termination of the criminal proceedings.

5.76.    The sequence of events described above demonstrates that Defendants' actions were not coincidental or based on legitimate concerns, but instead formed part of a retaliatory campaign that began after Plaintiff refused to participate in improper conduct requested by City officials.

**PATTERN OF MISUSE OF GOVERNMENTAL AUTHORITY**

5.77.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.  At all relevant times, the City of Brownsville, acting through its elected officials and administrative leadership, tolerated and permitted the misuse of governmental authority for political and personal purposes.

5.78.    City officials, including Commissioners Cesar De Leon and Ben Neece, exercised substantial influence over City administrative processes, including internal investigations, audits, and disciplinary actions involving City employees.  They were directly involved in a pattern and practice of attempting to illegally influence Plaintiff through threats of arrest and intentional withholding of facts to the Cameron County District Attorney, including misuse of the City audit process against Plaintiff.

5.79.    These officials used that influence to initiate investigations and disciplinary actions against Plaintiff after he refused to cooperate with their requests to use his position as a BISD Trustee to benefit their private interests.

5.80.    The misuse of governmental authority in Plaintiff's case included:

- commissioning an audit designed to generate allegations against Plaintiff;
- misrepresenting the results of that audit to investigators and prosecutors;
- withholding material exculpatory information from law enforcement authorities;
- referring criminal accusations to prosecutors despite knowledge that the alleged conduct had been authorized by City leadership; and
- publicly associating Plaintiff's termination with accusations of felony misconduct.

These actions were not the result of a legitimate effort to enforce City policy or ensure compliance with the law. Instead, they reflected a pattern of using governmental processes—including audits, disciplinary proceedings, and criminal referrals—as tools to retaliate against individuals who refused to comply with the demands of City officials.

5.81.    The City's tolerance of such conduct and failure to prevent the misuse of governmental authority demonstrates deliberate indifference to the constitutional rights of City employees and officials, including Plaintiff.

5.82.    This pattern of conduct directly contributed to the constitutional violations suffered by Plaintiff.

### VI. Causes of Action

### COUNT I

### First Amendment Retaliation – 42 U.S.C. §1983

6.01.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

6.02.    At all relevant times, Plaintiff Carlos Elizondo was engaged in speech and conduct protected by the First Amendment to the United States Constitution.

6.03.    Plaintiff, while serving as an elected Trustee of the Brownsville Independent School District, spoke and acted as a citizen on matters of public concern, including matters involving governmental

corruption, misuse of public office, improper influence over public institutions, and attempts by public officials to use their offices to obtain personal and professional benefits.

6.04.    Plaintiff refused requests by Commissioners Cesar De Leon and Ben Neece to misuse his position as a BISD Trustee to influence litigation and legal matters involving BISD in ways that would benefit their private law practices and professional interests.  Plaintiff's refusal to participate in such conduct constituted protected speech and conduct addressing matters of significant public concern.

In response to Plaintiff's protected conduct and refusal to participate in unlawful or unethical activities, Defendants retaliated against Plaintiff.

6.05.    Defendants, acting under color of state law, subjected Plaintiff to adverse employment actions, including but not limited to initiating investigations, fabricating allegations of wrongdoing, referring criminal accusations to prosecutors, and ultimately terminating Plaintiff's employment as Fire Chief. Plaintiff's protected speech and conduct were a substantial or motivating factor in Defendants' decision to terminate his employment and initiate criminal accusations against him.

6.06.    The retaliatory actions taken against Plaintiff would chill a person of ordinary firmness from engaging in protected speech regarding matters of governmental misconduct and corruption.

6.07.    The actions described herein were carried out and ratified by officials with final policymaking authority for the City of Brownsville, including the City Commission and City Manager. As to the City of Brownsville, the constitutional violations were caused by official policy, custom, or ratification by final policymakers, including the City Commission and City Manager, or by actions taken by officials with final policymaking authority.

6.08.    As a direct and proximate result of Defendants' unconstitutional retaliation and violation of Section 1983, Plaintiff suffered damages including loss of employment, loss of income and benefits, reputational harm, emotional distress, and other damages recoverable under law.

## COUNT II

### Malicious Prosecution – 42 U.S.C. §1983

6.09.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

Defendants, acting under color of state law, caused criminal proceedings to be initiated against Plaintiff

without probable cause.

6.10.    Specifically, Defendants knowingly and intentionally provided false, misleading, and incomplete

information to law enforcement authorities and prosecutors concerning Plaintiff's alleged involvement in

Theft by a Public Servant and Misapplication of Fiduciary Property, as well as alleged unauthorized

access to the City's computer systems.

6.11.    Defendants failed to disclose material exculpatory information to investigators and prosecutors,

including the fact that the operational practices underlying the allegations against Plaintiff had been

known to and authorized by City leadership.

6.12.    Defendants' actions were undertaken maliciously and for the improper purpose of retaliating

against Plaintiff for refusing to participate in unlawful or unethical conduct requested by City officials.

As a direct result of Defendants' actions, Plaintiff was arrested, charged with felony offenses, and

subjected to criminal prosecution.

6.13.    The criminal proceedings terminated in Plaintiff's favor, including a jury verdict of not guilty in

September 2019 and the dismissal of remaining charges on April 2025.  Defendants' conduct violated

Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

6.14.    As a direct and proximate result of Defendants' violations of Section 1983 and actions, Plaintiff

suffered damages including loss of liberty, humiliation, damage to reputation, loss of employment,

emotional distress, and other damages recoverable under law.

## COUNT III

### Fabrication of Evidence / Denial of Due Process – 42 U.S.C. §1983

6.15.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

6.16.    Defendants knowingly fabricated, manipulated, or materially misrepresented evidence concerning Plaintiff's conduct in connection with the Fire Department audit and the alleged computer access incidents.

6.17.    Defendants intentionally withheld or concealed material exculpatory information from investigators and prosecutors, including information demonstrating that the practices underlying the allegations against Plaintiff had been authorized and approved by City officials.

Defendants' fabrication and manipulation of evidence were used to create the appearance of criminal wrongdoing and to establish probable cause where none existed.

6.18.    These actions caused Plaintiff to be arrested, prosecuted, and deprived of his liberty.

The knowing use of fabricated evidence by government officials to initiate and maintain criminal proceedings violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment.

As a direct result of Defendants' conduct, including violation of Section 1983, Plaintiff suffered damages including loss of liberty, loss of employment, damage to reputation, emotional distress, and other damages recoverable under law.

## COUNT IV

### Abuse of Process

6.19.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

6.20.    Defendants used legal and administrative processes, including internal disciplinary investigations, audits, and criminal referrals, for purposes other than those for which such processes were intended.

6.21.    Defendants used these processes not to pursue legitimate governmental objectives but instead to retaliate against Plaintiff, intimidate him, and justify his removal from office.

6.22.    Defendants misused criminal investigative procedures and disciplinary mechanisms to create the false appearance of wrongdoing and to punish Plaintiff for refusing to participate in improper conduct. Defendants' misuse of these processes caused Plaintiff substantial harm, including criminal prosecution, loss of employment, reputational injury, and emotional distress.

## COUNT V

## Civil Conspiracy

6.23.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

Defendants Cesar De Leon, Ben Neece, City Administration, the Brownsville Firefighter Association Local 970, and others acting in concert with them, entered into an agreement and understanding to accomplish an unlawful objective.

6.24.    Specifically, Defendants agreed to remove Plaintiff from his position as Fire Chief and to justify that decision through the creation of false allegations, fabricated evidence, and criminal referrals.

6.25.    In furtherance of this agreement, Defendants engaged in numerous overt acts, including commissioning a pretextual audit, misrepresenting the results of that audit, referring criminal accusations to prosecutors, and participating in Plaintiff's termination.

6.26.    The actions of Defendants were undertaken with a meeting of the minds and for the purpose of harming Plaintiff.

6.27.    As a direct and proximate result of the conspiracy described herein, and violation of Section 1983, Plaintiff suffered substantial damages.

## COUNT VI

## Deprivation of Liberty Interest (Stigma-Plus) – 42 U.S.C. §1983

6.28.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

Defendants publicly accused Plaintiff of committing serious felony offenses in connection with his employment and termination.

6.29.    These accusations were false and stigmatizing and were publicly disseminated in connection with Plaintiff's termination.

6.30.    Defendants' actions damaged Plaintiff's reputation and foreclosed future employment opportunities in his profession.

6.31.    Plaintiff was not provided a meaningful opportunity to clear his name before or after these accusations were made.

6.32.    Defendants' conduct deprived Plaintiff of a protected liberty interest without due process of law in violation of the Fourteenth Amendment.

6.33.    As a result of Defendants Violations of Section 1983 and deprivation of Plaintiff's Liberty Interest, Plaintiff suffered damages including reputational harm, loss of employment opportunities, emotional distress, and other damages recoverable under law.

## COUNT VII

### Intentional Infliction of Emotional Distress

6.34.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

Defendants engaged in extreme and outrageous conduct, including fabricating criminal accusations against Plaintiff, initiating criminal prosecutions without probable cause, publicly accusing Plaintiff of serious felony misconduct, and causing Plaintiff to be arrested and prosecuted.

6.35.    Defendants knew or should have known that their conduct would cause severe emotional distress to Plaintiff.

6.36.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, humiliation, and mental anguish.

6.37.    Defendants' conduct was intentional, malicious, and undertaken with reckless disregard for

Plaintiff's rights and well-being.

## VII.

## Damages and Relief Requested

7.01.    Subject to proof at trial and the limitations of law, Plaintiff seeks:

- Reinstatement to his former position or a substantially equivalent position with full seniority and benefits, or front pay in lieu of reinstatement;
- Back pay; loss of benefits; restoration or compensation for lost retirement benefits and service credit; and other consequential losses;
- Compensatory damages (including mental anguish and reputational harm where authorized);
- Special damages consisting of fees, costs, and expenses incurred responding to misused processes;
- Exemplary/punitive damages against the individual Defendants in their individual capacities where permitted (not against the City);
- Declaratory and injunctive relief to prevent ongoing and future violations, to correct and/or expunge retaliatory or inaccurate employment records, and to restore Plaintiff's employment status and benefits;
- Attorney's fees and costs as authorized by 42 U.S.C. § 1988 and, where available to political subdivisions, under applicable Texas law;
- Pre- and post-judgment interest and court costs; and
- A public apology by the City
- All other damages Plaintiff is entitled to at law and equity.

Additionally, Plaintiff seeks recovery of all damages available under federal and Texas law, including

compensatory damages, punitive damages against individual defendants, costs of court, and attorneys'

fees under 42 U.S.C. §1988.

## VIII. Request for Disclosures and Initial Disclosures

8.01.    Plaintiff requests that each Defendant serve the disclosures described by Tex. R. Civ. P. 194.2

within the time required by the Texas Rules of Civil Procedure and otherwise comply with initial-

disclosure requirements.

## IX. Rule 47 Statement

9.01.    Plaintiff seeks monetary relief over $1,000,000, and non-monetary relief. Tex. R. Civ. P. 47(c).

**X. Jury Demand**

10.01.   Plaintiff demands a trial by jury and tenders the appropriate fee. Tex. R. Civ. P. 216.

**XII. Prayer**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants City of

Brownsville, Jarrett Sheldon, Cesar De Leon, The Estate of Ben Neece, and The Brownsville Firefighters

Association Local 970 be cited to appear and answer, and that upon trial, the Court enter judgment for

Plaintiff and against Defendants, jointly and severally where permitted by law, awarding:

- Reinstatement or front pay in lieu of reinstatement;
- Back pay, lost benefits, and restoration/compensation of retirement benefits and service credit;
- Compensatory, special, and exemplary damages as allowed by law (with punitive damages only against the individual Defendants and not against the City);
- Declaratory and injunctive relief as requested;
- Attorney's fees, costs, and expenses as authorized by law;
- Pre- and post-judgment interest; and
- Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

BARRERA, SANCHEZ & ASSOCIATES, P.C.
10113 N 10th Street, Ste. A
McAllen, Texas 78504
956-287-7555 voice
956-287-7711 fax

By:_____
       Marcus C. Barrera, J.D., M.B.A.
       Tex. Bar No. 00790271
       Email:   marcus@bsmlawyers.com and
                melissa@bsmlawyers.com

Attorney for Plaintiff, Carlos Alberto Elizondo

VERIFICATION

STATE OF ~~TEXAS~~ AU Pennsylvania                 §
COUNTY OF ___Northampton___                        §

  Before me, the undersigned authority, on this day personally appeared Carlos Alberto Elizondo, who, being by me duly sworn on oath, stated as follows:

  My name is Carlos Alberto Elizondo. I am the Plaintiff in this cause. I have read the foregoing pleading, and the facts stated therein are within my personal knowledge and are true and correct.


*Carlos Alberto Elizondo*
_____
Carlos Alberto Elizondo


SUBSCRIBED AND SWORN TO before me on this __31st__ day of ___March_____, 2026.


_____
Notary Public, State of ~~Texas~~ AU Pennsylvania

My commission expires: __01/08/2030__

| |
|---|
| Commonwealth of Pennsylvania - Notary Seal |
| Angel Manuel Urbaez, Notary Public |
| Northampton County |
| My commission expires January 8, 2030 |
| Commission Number 1466185 |

Notarized remotely online using communication technology via Proof.