**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **CARLOS ALBERTO ELIZONDO,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:26-cv-00491 |
| | § | |
| **CITY OF BROWNSVILLE;** | § | |
| **JARRETT SHELDON, individually;** | § | |
| **CESAR DE LEON, individually;** | § | |
| **THE ESTATE OF BEN NEECE; and** | § | |
| **BROWNSVILLE FIREFIGHTERS ASSOCIATION LOCAL 970,** | § | |
| Defendants. | § | |

# FIRST AMENDED COMPLAINT AND JURY DEMAND

## I. Nature of the Action

1. Plaintiff Carlos Alberto Elizondo brings this civil-rights action under 42 U.S.C. § 1983 for violations of rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2. This action was originally filed in the 138th Judicial District Court of Cameron County, Texas, as Cause No. 2026-DCL-01820, on March 31, 2026. Defendants City of Brownsville and Jarrett Sheldon removed the action to this Court on May 1, 2026, under 28 U.S.C. §§ 1331, 1441, and 1446.

3. Upon removal, the state-court pleadings, process, orders, and filings became part of this federal action. The Federal Rules of Civil Procedure govern this action after removal. Fed. R. Civ. P. 81(c)(1).

4. Plaintiff files this First Amended Complaint to clarify the claims, identify each defendant's conduct separately, eliminate duplicative official-capacity claims, and address the issues raised in Defendants' motions to dismiss.

5. Plaintiff does not assert Texas-law tort claims against the City employees. Plaintiff also does not assert state-law abuse-of-process, civil-conspiracy, or intentional-infliction-of-emotional-distress claims in this amended federal complaint.

## II. Parties

6. Plaintiff Carlos Alberto Elizondo is an individual residing in Cameron County, Texas.

7. Defendant City of Brownsville is a Texas municipal corporation located in Cameron County, Texas. It is a “person” subject to suit under 42 U.S.C. § 1983. It has been properly served in this case and has entered an appearance.

8. Defendant Jarrett Sheldon was the Brownsville Fire Chief during the events alleged. He is sued in his individual capacity for damages. No duplicative official-capacity damages claim are asserted against him. He has been properly served in this case and has entered an appearance.

9. Defendant Cesar De Leon was a Brownsville City Commissioner during material portions of the events. He is sued in his individual capacity for damages. He has been properly served in this case and has entered an appearance.

10. Defendant Estate of Ben Neece is sued based on the acts and omissions of Ben Neece while he served as a Brownsville City Commissioner. The Estate is sued only for relief legally available against it based on Neece’s individual conduct. The Estate has been properly served in this case and has entered an appearance.

11. Defendant Brownsville Firefighters Association Local 970 (“Local 970”) is an unincorporated association. Local 970 may be served through its president or authorized representative. Local 970 has been properly served in this case and has entered an appearance.

**III. Removal, Jurisdiction, and Venue**

12. Plaintiff originally filed this action in the 138th Judicial District Court of Cameron County, Texas, in Cause No. 2026-DCL-01820.

13. The Petition pleaded claims arising under 42 U.S.C. § 1983 and the United States Constitution. Defendants City of Brownsville and Sheldon filed a Notice of Removal on May 1, 2026.

14. The Notice of Removal identified federal-question jurisdiction under 28 U.S.C. § 1331 and removal jurisdiction under 28 U.S.C. § 1441.

15. The Notice of Removal also states that the 138th Judicial District Court of Cameron County is located within the Southern District of Texas, Brownsville Division.

16. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff’s claims arise under the Constitution and laws of the United States.

17. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3)–(4) because Plaintiff seeks redress for the deprivation of constitutional rights under color of state law.

18. To the extent any claim against Local 970 is properly joined and falls within the Court’s jurisdiction, supplemental jurisdiction exists under 28 U.S.C. § 1367.

19. Venue is proper in this Court under 28 U.S.C. § 1441(a) because this is the federal district and division embracing the place where the removed state-court action was pending.

20. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Brownsville and Cameron County, Texas.

21. The Southern District of Texas, Brownsville Division, is the proper federal venue because the underlying state action was pending in Cameron County, Texas, and the challenged events occurred there.

## IV. Applicable Pleading Standards

22. Plaintiff pleads a short and plain statement showing entitlement to relief under Fed. R. Civ. P. 8(a)(2).

23. Plaintiff may plead alternative or inconsistent theories under Fed. R. Civ. P. 8(d)(2)–(3).

24. At the pleading stage, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–57 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).

25. Plaintiff identifies the conduct attributed to each defendant and does not rely solely on collective references to "Defendants" unless "Defendants" is defined in the section where the reference appears.

## V. Factual Allegations

### A. Plaintiff's Employment and Public Service

26. Plaintiff began working for the City of Brownsville in approximately 1997.

27. Plaintiff served the City for more than nineteen years in positions including emergency medical technician, firefighter-paramedic, driver, lieutenant, and Fire Chief.

28. Plaintiff was elected to the Brownsville Independent School District Board of Trustees in 2014, and he is currently serving on the Brownsville Independent School District Board of Trustees as its current President of the Board.

29. Plaintiff became Brownsville Fire Chief in approximately May 2016.

30. As a BISD trustee, Plaintiff has acted as an elected public official concerning public education, public funds, and governmental affairs.

### B. Protected Opposition to Improper Conduct

31. During Plaintiff's tenure as Fire Chief and BISD trustee, Commissioners De Leon and Neece sought Plaintiff's assistance in matters involving BISD litigation and legal services. These matters included the following:

1. De Leon pressuring Plaintiff to use his position with BISD to handle a matter for his friend, Judge Elia Cornejo-Lopez, regarding her daughter and her class rank;

2. De Leon pressuring Plaintiff about awarding a contract to him for the supply of bananas to the BISD. De Leon called Plaintiff to a meeting where Plaintiff was introduced to a man from Mexico being escorted by De Leon who owned a banana plantation in Mexico. De Leon pressured Plaintiff to award the Mexican man a BISD contract to supply bananas to the school district wherein De Leon would participate;

3. De Leon pressuring Plaintiff for BISD legal work at $300 per hour and large payments from BISD for attending meetings in the future as their lawyer.

4. Ben Neece pressuring Plaintiff to obtain a contract to represent BISD in legal matters.

5. Ben Neece pressuring Plaintiff to change his official report made involving a little girl whose foot had been run over. The little girl was the daughter of Ben Neece's girlfriend at the time. Neece wanted Plaintiff to change the report to state "that a certain city attorney, Mark Sossi, had been at the residence with Neece's girlfriend at the time of the accident." Neece told Plaintiff that he thought city attorney, Mark Sossi, was having an affair with his girlfriend who was also a city employee. Neece told Plaintiff that he wanted to get Mark Sossi fired for having a sexual relationship with another City of Brownsville employee. When Plaintiff told Neece he would not change his report, Neece became angry. On August 15, 2017, the Brownsville City Commission voted 5–2 to terminate Sossi's employment as City Attorney. The reporting from the time identifies the five votes for termination as the Mayor and Commissioners Rose Gowen, Ben Neece, Jessica Tetreau-Kalifa, and Cesar de Leon.

32. Those requests by De Leon and Neece sought to use Plaintiff's BISD position to advance the private professional interests of De Leon, Neece, or persons associated with their legal practices.

33. The requests included matters involving litigation against BISD and matters involving the daughter of a sitting state district judge. A recording was made of De Leon wherein he specifically refers to this.

34. Plaintiff refused to use his public office for private benefit and refused to manipulate BISD processes. As a result, Plaintiff was retaliated against by Neece, De Leon, the City of Brownsville, Sheldon and Local 970 who conspired to remove him.

35. Plaintiff communicated his opposition to improper influence, misuse of public office, and governmental corruption to De Leon and Neece and told them verbally that he could not do what they were asking him to do.

36. Plaintiff's speech and conduct concerned matters of public concern and were undertaken in his capacity as a citizen and elected public official, not merely as part of his ordinary Fire Department duties.

37. After Plaintiff refused to cooperate with them, De Leon, Neece, Sheldon, and the City of Brownsville, began efforts to remove him as Fire Chief and damage his professional reputation. All Parties knew their actions were wrongful but engaged in them anyway in conspiracy with each other.

**C. Audit and Ambulance Operations**

38. City officials including De Leon, Neece, and Cabler commissioned and used an audit concerning Brownsville Fire Department ambulance operations to retaliate against Plaintiff. Prior to the audit, City Manager, Charlie Cabler, had spoken with Plaintiff about the fact that the City of Brownsville did not have enough ambulances to handle both emergency and non-emergency calls for service in the City. Plaintiff was told by Cabler that non-emergency calls should be routed to certified private ambulance companies to alleviate pressure against Brownsville and take the less profitable non-emergency calls. Despite this having told Plaintiff this Cabler carried out requests by Neece and De Leon to hold a vote to commence an audit of these non-emergency calls by Neece and De Leon in order to place Plaintiff in a bad light and create a pretext for firing him.

39. The audit concerned the referral of certain non-emergency ambulance transports to private ambulance providers, including a Company called InterCity. The audit made no findings that Plaintiff benefited financially in any way from the referrals and the audit also determined that City Manager Cabler knew about the referrals and did not object to them. Despite the City's knowledge of Plaintiffs practice with non-emergency calls, the City of Brownsville pressed forward with a referral to the District Attorney's Office for prosecution of Plaintiff.

40. The Order of Indefinite Suspension issued by Sheldon describes ambulance practices, City ordinances, a City Manager directive, and Fire Department procedures involved. See Order at Exhibit A.

41. Public reports also stated that City Manager Charlie Cabler knew of the ambulance operation and that City leadership had allowed it to continue. See Public Reports at Exhibit B.

42. Public reports stated that an audit committee reviewed the operation and that approximately seventy non-emergency calls had been referred to InterCity. Id.

43. Plaintiff alleges that City leadership's prior knowledge, authorization, and tolerance of the ambulance practices were material facts.

44. Defendants, City of Brownsville (hereinafter "Brownsville"), Jarrett Sheldon (hereinafter "Sheldon"), Cesar De Leon (hereinafter "De Leon"), Ben Neece (hereinafter "Neece") and Brownsville Firefighters Association Local 970 (hereinafter "Local 970") nevertheless treated those practices as evidence of criminal misconduct and used the audit as a pretext for unjustified, adverse employment action and criminal referrals against Plaintiff.

**D. Demotion, Leave, and Criminal Accusations**

45. On September 7, 2017, City Manager Charlie Cabler removed Plaintiff from the Fire Chief position and returned him to the classified position of lieutenant.

46. On October 9, 2017, Sheldon placed Plaintiff on administrative leave with pay.

47. Sheldon's Order states that Plaintiff was directed not to return to the Department, not to perform official duties except as instructed by Human Resources, and to return City property.

48. On or about October 17, 2017, Plaintiff's home was searched, and Plaintiff surrendered to Cameron County District Attorney investigators who arrested him.

49. Plaintiff was charged with theft by a public servant and misapplication of fiduciary property concerning Brownsville Firefighters Association funds.

50. Local 970's then-president, Jorge Lerma, was identified as a principal complainant concerning the union's political-action-committee funds. On behalf of Local 970 he worked directly with Sheldon and the City of Brownsville, through the urging of Neece and De Leon, to push the Theft and misappropriation of union funds charges against Plaintiff. Despite learning from Lerma that a mistake had been made and that another union member named Marco Longoria was the individual who's credit/ATM Card was the one responsible for the disputed transactions, Sheldon never relayed this information to the DA's Office or the grand jury to exculpate Plaintiff. The Card information showed that the disputed transactions were associated with the credit/ATM Card issued to Marco Longoria. Despite all of this information, Sheldon, Neece, De Leon, the City of Brownsville, and Local 970 maintained that the theft and misappropriated funds were Plaintiff's fault.

51. Public reports described the accusations and quoted Plaintiff's counsel as disputing the allegations and asserting that Plaintiff was innocent. See Exhibit B.

52. The City publicly associated Plaintiff's suspension and employment status with the felony accusations.

53. De Leon, Neece, Cabler, Sheldon and Local 970 used their governmental positions and influence with City administration to advance the campaign against Plaintiff.

54. City officials referred, supported, or ratified criminal allegations against Plaintiff while failing to fairly disclose material information concerning City knowledge and authorization of the ambulance practices and Local 970's improper allegations of theft against Plaintiff.

**E. Computer-System Allegations**

55. After Plaintiff was placed on administrative leave, he continued accessing the Fire Department's emergency-reporting system to simply monitor emergency operations in anticipation of returning to work.

56. Plaintiff had not received any notice that his system access was restricted or had been revoked.

57. Sheldon's Order of Dismissal against Plaintiff states that Plaintiff's account was accessed on multiple occasions between October 10 and December 1, 2017. See Exhibit A.

58. The Order further states that Sheldon reviewed access logs, consulted City administration, revoked Plaintiff's access, and provided the logs to the Cameron County District Attorney's Office.

59. The access logs did not establish whether Plaintiff had authorization, whether revocation had been communicated, or whether Plaintiff possessed criminal intent.

60. Sheldon nevertheless presented the access allegations as criminal misconduct and used them to support disciplinary action and prosecution. Sheldon was encouraged to take this course of action by De Leon, Neece, the City of Brownsville and Local 970.

61. Plaintiff was charged with computer-security offenses and tried in September 2019.

62. A jury found Plaintiff not guilty on all charges submitted at trial.

**F. Indefinite Suspension and Termination**

63. On October 17, 2019, Sheldon issued an Order of Indefinite Suspension effective October 18, 2019.

64. Sheldon's Order expressly states that he reviewed criminal-investigative materials and other administrative materials and consulted with City Manager Cabler before making the employment decision. All Defendants encouraged and authorized Sheldon's actions.

65. The Order relied on the ambulance-operation allegations and computer-access allegations.

66. The Order also imposed indefinite suspension after Plaintiff had been acquitted of the computer-related charges.

67. Sheldon's individualized conduct included reviewing and selecting investigative information, consulting City administration, referring computer-access information to prosecutors, and issuing the Order of Indefinite Suspension.

68. The remaining theft and misapplication charges were dismissed in April 2025.

69. The criminal proceedings therefore ended through an acquittal as to the computer-related charges and dismissal as to the remaining charges.

70. Plaintiff filed this action on March 31, 2026, within one year of the April 2025 dismissal.

**G. Individual Conduct of De Leon, Neece, Sheldon, and Local 970**

71. De Leon personally participated in the pressure campaign directed at Plaintiff and used his position as a City Commissioner to influence City administration concerning Plaintiff.

72. Neece personally participated in the same campaign and used his position as a City Commissioner to influence City administration concerning Plaintiff.

73. De Leon and Neece caused or encouraged scrutiny, audit activity, employment action, and criminal referrals through the City of Brownsville after Plaintiff refused to use his BISD position for their illegal, private professional requests.

74. Sheldon personally reviewed investigative materials, consulted City administration, referred computer-access allegations to prosecutors, and terminated Plaintiff through the Order of Indefinite Suspension, despite knowing exculpatory evidence.

75. Local 970, through its officers and representatives, including Lerma, supplied complaints and information concerning the PAC account and supported the resulting criminal and employment consequences. They did this knowing that the alleged theft and misappropriation charges were not viable because of a determination that another union member had made the alleged purchases and withdrawals.

76. Local 970's participation was not limited to neutral labor representation. Its representatives communicated accusations to investigators and prosecutors and supported the effort that resulted in criminal charges against Plaintiff.

77. Local 970 acted jointly with City officials regarding the audit, the suspension, the criminal charges, the dismissal, or otherwise reached an understanding with them, to advance criminal and employment consequences against Plaintiff.

**VI. Municipal Liability**

78. Plaintiff incorporates paragraphs 1 through 77 as if recited herein in their entirety.

79. The City is not sued under a respondeat-superior theory.

80. Plaintiff's injuries were caused by City policy, decisions of final policymakers, customs, practices, and ratification.

81. The City Commission possessed final policymaking authority for the City within its lawful sphere.

82. City administration and the Fire Chief possessed delegated final policymaking authority concerning Fire Department administration and employment discipline, subject to applicable law.

83. City policymakers authorized, approved, or ratified the use of the audit, criminal referrals, public employment actions, and termination against Plaintiff.

84. The City maintained or tolerated practices permitting its officials and administrators to use audits, internal investigations, disciplinary proceedings, and criminal referrals to retaliate against employees or public officials who resisted improper demands.

85. The City failed to require neutral review, disclosure of material exculpatory information, separation of political influence from employment investigations, or adequate supervisory review before criminal referrals were made. This is further evidenced by the firing during this time period of Mark Sossi, the City Attorney, who upon information and belief warned the City not to take the actions they did against Plaintiff.

86. The City's policies, customs, practices, decisions, and ratification were moving forces behind Plaintiff's constitutional injuries. A municipality is liable for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision making channels. In this case, the City of Brownsville is liable because it sanctioned the custom, practice and/or policy or procedure of allowing its city council members to pressure employees for personal financial gain. In this case, the City of Brownsville, is liable because it sanctioned the custom, practice and/or policy or procedure of using City resources to further the illegal personal financial gain of its councilmembers by pressuring employees with improper investigations, criminal referrals, and employment retaliation for not conforming with the illegal requests of its Councilmembers. Defendants' actions were a customary practice and/or policy or procedure that was sanctioned by the City of Brownsville out of which deprived Plaintiff of his civil rights by statute and by both the Texas and United States Constitutions. The City of Brownsville has actual or constructive knowledge of this practice, custom, and/or policy or procedure and sufficiently numerous prior incidents of City Councilmembers engaging in this type of activity and harassment establishes custom and accession to that custom by the City's policy makers. The City of Brownsville's unspoken policy of using city resources and authority over its employees, to further its councilmembers' personal financial gain is a decision that reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory rights will follow the decision. In the alternative, the City of Brownsville is liable under §1983 for failure to adopt and enforce polices precluding its Councilmembers and Administrators from retaliating against other employees for failure to engage in the personal financial gain of its Councilmembers because such failure to adopt such a policy is one of intentional choice. This action involves deliberate indifference by the City of Brownsville.

87. Plaintiff pleads municipal liability under Monell v. Department of Social Services, 436 U.S. 658, 690–94 (1978), Pembaur v. City of Cincinnati, 475 U.S. 469, 480–84 (1986), and Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

## VII. Claims for Relief

### Count One: First Amendment Retaliation Under 42 U.S.C. § 1983

88. Plaintiff incorporates paragraphs 1 through 87 as if recited verbatim herein.

89. Plaintiff engaged in protected speech and conduct concerning a verbal refusal to engage in governmental corruption, misuse of public office, improper influence, and abuse of

governmental authority. Plaintiff specifically told both Neece and De Leon that he could not do what they were asking because it involved corruption.

90. De Leon and Neece knew of Plaintiff's protected activity and refusal to engage in corruption and opposed it.

91. De Leon and Neece retaliated by pressuring City administration, promoting and voting on investigations, using the audit as a pretext, supporting criminal referrals, and participating in Plaintiff's removal.

92. Sheldon retaliated by using the challenged allegations, referring computer-access accusations, issuing disciplinary orders, and terminating Plaintiff, despite knowing exculpatory information.

93. The adverse actions would chill a person of ordinary firmness from opposing governmental corruption or refusing improper demands.

94. Plaintiff's protected activity was a substantial or motivating factor in the adverse actions. Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002).

95. The City is liable because final policymakers authorized, approved, or ratified the retaliation, and because municipal policy, custom, or deliberate indifference caused the retaliation. Defendants, Neece, De Leon, the Brownsville city commission/council, City Manager Charlie Cabler, and Sheldon, conspired, under the direction of Neece and De Leon to create false and materially misleading arrest warrant affidavits and failed to correct the facts on alleged misspending and failed to correct the fact that the City had not instructed Plaintiff to not log into his computer, and as a result a grand jury indicted Plaintiff based on that fraud. Plaintiff is informed and believes, and thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

**Count Two: Fourth Amendment Malicious Prosecution and Unlawful Seizure Under 42 U.S.C. § 1983**

96. Plaintiff incorporates paragraphs 1 through 95 as if recited verbatim herein.

97. Defendants, defined in paragraph 103 below for this section, caused criminal proceedings to be initiated or maintained by supplying false, materially misleading, and incomplete information to investigators and prosecutors.

98. Defendants omitted material facts concerning City knowledge and authorization of ambulance practices, the lack of clear notice revoking Plaintiff's computer access, the inability of access logs to identify the physical user, and Plaintiff's noncriminal explanation for his conduct.

99. Defendants acted for the improper purpose of retaliating against Plaintiff and removing him from public employment.

100. Plaintiff was arrested, subjected to criminal process, required to defend felony charges, and deprived of liberty.

101. The computer-related prosecution terminated in Plaintiff's favor through acquittal in September 2019.

102. The remaining prosecution for theft and misappropriation terminated in Plaintiff's favor through dismissal in April 2025.

103. Plaintiff pleads this claim against the City based on its policies, decisions, customs, and ratification and Local 970 who initiated the malicious prosecution. Defendants, Neece, De Leon, the Brownsville city commission/council, City Manager Charlie Cabler, and Sheldon, conspired, under the direction of Neece and De Leon to retaliate against Plaintiff and create false and materially misleading arrest warrant affidavits and failed to correct the facts on alleged misspending and failed to correct the fact that the City had not instructed Plaintiff to not log into his computer, and as a result a grand jury indicted Plaintiff based on that fraud. Espinal v. City of Houston, 96 F.4th 741 (2024). The malicious motive of Defendants listed herein led them to withhold relevant information or otherwise misdirect the grand jury by omission and/or commission. Id. Plaintiff is informed and believes, and thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

**Count Three: Fabrication or Material Misrepresentation of Evidence Under 42 U.S.C. § 1983**

105. Plaintiff incorporates paragraphs 1 through 103 as if recited verbatim herein.

106. Defendants Neece, De Leon, the Brownsville city commission/council, City Manager Charlie Cabler, and Sheldon knowingly fabricated, manipulated, or materially misrepresented evidence concerning ambulance referrals, PAC funds, and computer-system access.

107. Defendants omitted material facts that undermined probable cause and the asserted disciplinary grounds and which mislead officials at the DA's office and the Grand Jury.

108. Defendants used the false or materially misleading evidence to initiate or maintain criminal proceedings and to obtain Plaintiff's termination.

109. Sheldon's personal participation is established by his review and use of investigative materials, consultation with City administration, referral of access information to prosecutors, and issuance of the Order of Indefinite Suspension.

110. De Leon and Neece's personal participation is established by their pressure campaign, influence over City administration, and participation in the audit, referral, and termination effort.

111. The knowing use of fabricated or materially misleading evidence to cause a deprivation of liberty violated clearly established constitutional rights. See Cole v. Carson, 935 F.3d 444, 452–53 (5th Cir. 2019) (en banc).

112. The City is liable because final policymakers authorized, approved, or ratified the conduct, and because municipal policies and customs were moving forces behind it. Defendants, Neece, De Leon, the Brownsville city commission/council, City Manager Charlie Cabler, and Sheldon, conspired, under the direction of Neece and De Leon to create false and materially misleading arrest warrant affidavits and failed to correct the facts on alleged misspending and failed to correct the fact that the City had not instructed Plaintiff to not log into his computer, and as a result a grand jury indicted Plaintiff based on that fraud. Plaintiff is informed and believes, and thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

**Count Four: Fourteenth Amendment Liberty Interest (Stigma Plus Claim)**

113. Plaintiff incorporates paragraphs 1 through 112 as if cited verbatim herein.

114. Defendants Neece, De Leon, the Brownsville city commission/council, City Manager Charlie Cabler, and Sheldon publicly disseminated or caused the dissemination of stigmatizing accusations that Plaintiff committed felony offenses and engaged in dishonesty or illegality.

115. The accusations were made in connection with Plaintiff's employment discipline and termination.

116. Plaintiff suffered a tangible alteration of legal status through demotion, suspension, termination, arrest, and loss of employment benefits.

117. Plaintiff was not afforded a constitutionally adequate opportunity to clear his name from the accusations before they were used to terminate him. Elizondo requested, through the civil-service appeal and related proceedings, an opportunity to refute the specific public accusations, but the proceeding did not provide a meaningful public forum to clear his name because exculpatory information was withheld by the City of Brownsville, including information regarding the alleged theft of Union PAC funds and the fact that the City did not specifically disallow private ambulance companies to take non-emergency calls. Defendants therefore denied him the process required to contest the stigmatizing charges. Plaintiff seeks damages for the independent constitutional injury caused by the public accusations and associated employment action. Plaintiff does not seek appellate review of any state civil-service judgment. Plaintiff is informed and believes, and thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

**Count Five: Federal Conspiracy Under 42 U.S.C. § 1983**

119. Plaintiff incorporates paragraphs 1 through 118 as if fully cited verbatim herein.

120. De Leon, Neece, Sheldon, City officials, and Local 970 representatives reached an agreement or understanding to remove Plaintiff, damage his reputation, and justify the removal through criminal accusations and disciplinary proceedings.

121. The agreement is supported by the sequence and coordination of the pressure campaign, audit, criminal complaints, public accusations, computer-access referral, disciplinary proceedings, and termination.

122. Overt acts included pressuring Plaintiff to misuse his BISD position, commissioning or using the audit, supplying or supporting PAC-fund accusations, referring computer-access allegations, withholding material exculpatory information, publicly associating Plaintiff with felony misconduct, and terminating Plaintiff. There are recordings of this pressure against Plaintiff by De Leon in recorded transcripts of conversations between Plaintiff and Cesar De Leon.

123. Local 970's participation is pleaded separately from the City defendants. Local 970 representatives supplied complaints and communicated with investigators concerning the PAC account and supported the criminal and employment consequences when they knew their initial allegations against Plaintiff were wrong. Defendants, Neece, De Leon, the Brownsville city commission/council, City Manager Charlie Cabler, Sheldon and Local 970 conspired, under the direction of Neece and De Leon to create false and materially misleading arrest warrant affidavits and failed to correct the facts on alleged misspending and failed to correct the fact that the City had not instructed Plaintiff to not log into his computer, and as a result a grand jury indicted Plaintiff based on that fraud. Plaintiff is informed and believes, and thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

124. The conspiracy caused the constitutional injuries pleaded above.

**Count Six: Malicious Prosecution under Texas State Law against Local 970**

125. Plaintiff incorporates paragraphs 1 through 124 as if fully cited verbatim herein.

126. Defendant Brownsville Firefighters Association Local 970 ("Local 970") is an unincorporated nonprofit association and is legally distinct from the City of Brownsville and the individual Defendants. At all relevant times, Local 970 acted through its officers, agents, employees, and authorized representatives, including its then-president and other representatives responsible for investigating and reporting the alleged PAC-fund transactions.

127. Local 970 initiated, procured, and/or materially assisted in the initiation and continuation of criminal proceedings against Plaintiff concerning alleged withdrawals or

expenditures from Local 970's political-action-committee account. Local 970 did so by investigating Plaintiff, collecting and presenting allegations concerning the account to law-enforcement authorities, requesting or encouraging criminal investigation and prosecution, and supplying information that was communicated to the Brownsville Police Department and/or the Cameron County District Attorney's Office.

128. Local 970's representatives knew, or acted with reckless disregard for whether, the allegations against Plaintiff were false, materially incomplete, and unsupported by probable cause. In particular, Local 970 and its representatives:

a. characterized ordinary or disputed account transactions as criminal misappropriation without a sufficient factual basis;

b. failed to provide investigators and prosecutors with material information concerning the authorization, purpose, context, and documentation of the challenged transactions;

c. failed to disclose information concerning the administration and oversight of the PAC account and the absence of reliable evidence establishing that Plaintiff unlawfully converted association funds;

d. relied on speculation and incomplete records while presenting the allegations as established criminal misconduct; and

e. continued to support the investigation and prosecution despite information that undermined the accusations including knowledge that another individual in the union made the alleged improper charges on the union credit card.

129. Local 970 did not merely provide truthful information in response to a neutral inquiry. It actively pursued, encouraged, and/or procured criminal proceedings against Plaintiff for the improper purpose of blaming Plaintiff for the association's financial discrepancies, protecting Local 970's institutional reputation, and assisting the campaign to remove Plaintiff from public employment and damage his professional reputation.

130. Local 970 acted with malice. Its conduct was motivated, in whole or in part, by an improper purpose, including hostility toward Plaintiff, the desire to shift responsibility for disputed PAC transactions, the desire to protect Local 970's reputation, and the desire to assist other Defendants in retaliating against Plaintiff and justifying adverse employment action against him. Alternatively, malice is established by Local 970's knowing or reckless presentation of materially false and incomplete information for the purpose of causing criminal proceedings against Plaintiff.

131. As a result of Local 970's conduct, criminal proceedings were commenced and maintained against Plaintiff, including felony allegations and charges concerning theft by a public servant and/or misapplication of fiduciary property. Plaintiff was arrested, prosecuted, required to defend himself for years, and subjected to substantial restrictions, humiliation, and reputational harm.

132. The criminal proceedings terminated in Plaintiff's favor. The computer-security-breach charges resulted in a jury verdict of not guilty in September 2019, and the remaining theft-by-public-servant and misapplication-of-fiduciary-property charges were dismissed in April 2025.

The favorable terminations were not caused by any compromise or admission of guilt by Plaintiff and were not inconsistent with his innocence.

133. The information known to Local 970, together with the material information Local 970 failed to disclose, did not establish probable cause for Plaintiff's arrest or prosecution. Local 970's conduct was a substantial and proximate cause of the initiation, continuation, and resulting harm of the criminal proceedings.

134. Plaintiff is innocent of the criminal conduct alleged and was damaged by Local 970's malicious prosecution, including loss of liberty, attorney's fees and defense expenses, loss of employment and income, damage to his professional reputation, humiliation, mental anguish, emotional distress, and other actual damages recoverable under Texas law.

135. Local 970 is liable for the acts and omissions of its officers, agents, employees, and authorized representatives who acted within the course and scope of their actual or apparent authority and in furtherance of Local 970's interests.

136. Plaintiff brings this claim under Texas common law. The claim accrued when the criminal proceedings favorably terminated in April 2025, and this action was filed within the applicable limitations period under Tex. Civ. Prac. & Rem. Code § 16.002(a).

137. By reason of Local 970's malicious prosecution, Plaintiff seeks actual and compensatory damages, pre- and post-judgment interest, costs of court, and all other relief available under Texas law. Plaintiff further seeks exemplary damages against Local 970 to the extent authorized by law because Local 970 acted with malice or fraud as defined by Tex. Civ. Prac. & Rem. Code § 41.003 and Tex. Civ. Prac. & Rem. Code § 41.001.

## VIII. Qualified Immunity

138. Plaintiff incorporates paragraphs 1 through 137 as if fully cited verbatim herein.

139. Plaintiff pleads specific conduct by each individual defendant.

140. De Leon and Neece had no objectively reasonable basis to retaliate against Plaintiff for opposing misuse of public office or refusing improper and illegal demands for personal financial gain.

141. Sheldon had no objectively reasonable basis to use materially incomplete investigative materials, refer disputed allegations as criminal conduct, or terminate Plaintiff after his acquittal without fairly accounting for exculpatory facts.

142. The right to be free from retaliation for protected speech, the right not to be deprived of liberty through fabricated evidence, and the right not to be subjected to retaliatory governmental use of criminal process were clearly established to the extent alleged herein. See Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002); Cole v. Carson, 935 F.3d 444, 452–53 (5th Cir. 2019).

143. Plaintiff therefore pleads the malicious-prosecution claim against the City as well for its conduct in the conspiracy.

## IX. Damages and Relief

144. Plaintiff suffered loss of employment, income, benefits, retirement opportunities, liberty, professional reputation, emotional distress and injury, humiliation and shock, and other damages.

145. Plaintiff seeks back pay, lost benefits, lost retirement credit, compensatory damages, and other relief permitted by law.

146. Plaintiff seeks punitive damages against the individual defendants for malicious or recklessly indifferent conduct under 42 U.S.C. § 1983. Plaintiff does not seek punitive damages against the City.

147. Plaintiff seeks attorney's fees and costs under 42 U.S.C. § 1988.

148. Plaintiff seeks pre- and post-judgment interest and all other appropriate relief.

149. Plaintiff seeks appropriate declaratory or prospective relief against the City and any current official legally capable of providing such relief. Plaintiff does not assert duplicative official-capacity claims against former officials.

## X. Jury Demand

150. Plaintiff demands trial by jury on all issues so triable.

## XI. Prayer

WHEREFORE, Plaintiff Carlos Alberto Elizondo requests that the Court:

A. enter judgment for Plaintiff on his claims under 42 U.S.C. § 1983;

B. award compensatory damages against the City and the individual defendants as permitted by law;

C. award punitive damages against the individual defendants;

D. award back pay, lost benefits, and lost retirement benefits or service credit;

E. award reasonable attorney's fees and costs under 42 U.S.C. § 1988;

F. award pre- and post-judgment interest;

G. grant appropriate declaratory and prospective relief; and

H. grant all other relief to which Plaintiff is entitled.

Respectfully submitted,

**BARRERA, SANCHEZ & ASSOCIATES, P.C.**
10113 N. 10th Street, Suite A
McAllen, Texas 78504
Telephone: 956-287-7555
Facsimile: 956-287-7711

By: /s/ Marcus C. Barrera
**Marcus C. Barrera**
Texas Bar No. 00790271
Federal Bar No. 18209
marcus@bsmlawyers.com
melissa@bsmlawyers.com

Counsel for Plaintiff Carlos Alberto Elizondo

**CERTIFICATE OF SERVICE**

I certify that this First Amended Complaint will be served through the Court's electronic filing system on all counsel of record and by any additional method required by Fed. R. Civ. P. 5.

/s/ Marcus C. Barrera
Marcus C. Barrera

**EXHIBIT LIST**

**Exhibit A:** Order of Indefinite Suspension and Notice of Appeal Rights issued by Jarrett Sheldon on October 17, 2019.

**Exhibit B:** Available news reports concerning the facts of the case.