# A

# Office of the Fire Chief

Brownsville Fire Department

Jarrett V. Sheldon, Fire Chief

1150 East Adams Street – 2nd Floor • Brownsville, Texas

Phone (956) 546-3195 • Fax (956) 546-8539


RECEIVED

OCT 17 2019

Brownsville Fire & Police Civil Service

By: [signature]

---

**TO:** **LT. CARLOS ELIZONDO**

**FROM:** **FIRE CHIEF JARRETT V. SHELDON**

**DATE:** **OCTOBER 17, 2019**

**RE:** **ORDER OF INDEFINITE SUSPENSION AND NOTICE OF APPEAL RIGHTS**

**CY:** **BECKY ANZALDUA, DIRECTOR, CITY OF BROWNSVILLE FIRE & POLICE CIVIL SERVICE COMMISSION**

---

**TO LT. CARLOS ELIZONDO:**

It has been brought to my attention that on September 20, 2019, the District Court that heard one set of the criminal charges against you entered a Judgment of Acquittal as to the criminal charges pertaining to that case. During the pendency of the criminal charges, the civil service disciplinary issues against you were abated pending disposition of the criminal charges.

Now that a disposition of one set of criminal charges has been resolved in your favor, the time has come for me to review the relevant materials and make a decision about your continued civil service and employment status within the Department with respect to those matters that were the subject of the criminal investigation and criminal charges as to which you were recently acquitted.

After a review of the contents of the criminal investigative materials, in addition to other administrative investigative materials brought to my attention, I have decided to impose of a disciplinary suspension against you at the level of INDEFINITE SUSPENSION. This INDEFINITE SUSPENSION shall be, and here is effective as of OCTOBER 18, 2019 at 12:01 A.M.

**TO THE BROWNSVILLE CIVIL SERVICE COMMISSION:**

My statement of the reasons for this decision are set forth in more detail below. The facts recited below are supported by evidence and are true.

**FACTS AND BACKGROUND HISTORY**

1. I was appointed Interim Fire Chief by then City Manager Charlie Cabler on September 7, 2017. At the time that I was appointed, I took over the reins of the Fire Department, and inherited all the duties and responsibilities that go with the position as Chief of the Fire Department.

2. In addition to the usual and customary duties of a department head, I was also made aware of and briefed about a continuing controversy involving former Fire Chief Carlos Elizondo and Deputy Fire Chief Ernesto Estrada.

3. I had been informed that then City Manager Cabler removed Carlos Elizondo from the position as Fire Chief on or about September 7, 2017, and Elizondo returned to his last classified position as a Lieutenant within the department, in accordance with civil service protocols.

4. I was also made generally aware of pending criminal investigations pertaining to Carlos Elizondo, the details of which were not fully known to me at the time. I was aware involved the manner and methods that the EMS ambulance service was being operated under the tenure of then Chief Elizondo and his Deputy Fire Chief.

5. After learning more about the facts and circumstances that led to the removal of Elizondo as Fire Chief, and after further consultation with City Manager Cabler, I decided to place Lt. Elizondo on Administrative Leave with Pay, until further notice.

6. I issued and served Lt. Carlos Elizondo an Administrative Leave with Pay Order on October 9, 2017.

7. The Administrative Leave with Pay Order required Lt. Elizondo to do the following things:

    1) To remain available for contact on an as needed basis;

    2) To not return to the Department;

    3) To not fulfill any of the official duties of your position except as instructed by the Human Resources Department; and,

    4) To turn in to your supervisor any keys, identification, cards, badges, or any other equipment that belonged to the City of Brownsville.

8. The purpose and intent of this Order was to remove any authority the Elizondo had as a Lieutenant and relieve him of his active duties. Elizondo's only obligation was to remain available for contact if needed.

9. Shortly thereafter, I was made aware that criminal theft and misappropriation charges had been made against Elizondo by one or more members of the firefighters' union. One of the main complainants against Elizondo was the new Fire Association President, Jorge Lerma.

10. I learned that an arrest warrant had been issued for Elizondo, and I later learned that he had been arrested and charged with theft and misappropriation of union funds.

11. Based on this information, I issued on top of the Administrative Leave Order a Temporary Suspension Order without Pay under the authority of Section 143.056, Texas Local Gov't Code. I had Lt. Elizondo served with a copy of this document and he went on a temporary suspension status without pay pending the disposition of the criminal theft and misappropriation charges against him.

1) The criminal case involving the theft and misappropriation charges that arose out of a complaint by the fire union remains pending as of the filing of this Order of Indefinite Suspension.

2) Therefore, this Order of Indefinite Suspension does not relate to or involve the facts connected with the criminal complaints by the fire union. Elizondo remains under a temporary suspension under Section 143.056, TLGC with respect to those charges.

3) I am reserving my authority under Section 143.056, TLGC to make civil service decisions about allegations of misconduct with respect to the union complaints when the criminal case involving those charges is concluded.

12. Around this time frame, I also removed from the appointed position as Deputy Fire Chief Ernesto Estrada and placed him back into his prior position as a firefighter.

1) Estrada had been appointed as Deputy Fire Chief by then Chief Elizondo under the provisions of civil service law and the Fire Department labor contract that allowed for such appointments.

2) As the new Fire Chief, I had the authority to remove the previously appointed Deputy Chief and appoint a new Deputy Chief, which I have done.

13. In November 2017, while reviewing a fire incident file involving a fire call, which included a policy violation allegation against a certain firefighter, I learned that Elizondo had accessed the Department's NFIR Emergency Response System (NFIR System) with respect to a specific incident.

14. I also noted that the incident call accessed by Elizondo was the same one I had been reviewing to evaluate an allegation of policy violation by a firefighter. That firefighter was Jorge Lerma, who was also the Fire Union President and who was complainant in Elizondo's criminal charges.

15. Given the suspicious nature of this access under Elizondo's account password and given that Elizondo had no legitimate reason to be accessing the NFIR Emergency Reporting System, I conducted a more detailed review of the NFIRS access logs.

16. I discovered that Elizondo, even though under an Administrative Leave Order, as well as a Temporary Suspension Order, had been accessing the NFIR System on multiple occasions.

17. My own review of the NFIRS access log revealed that between the time Elizondo was placed on Administrative Leave and Temporarily Suspended, the NFIR System had been accessed no less than 47 times under his account password between October 10, 2017 through December 1, 2017.

1) The criminal investigative materials provided to me reflect a more detailed statement of the times of access under Elizondo's NFIRS account, and links access incidents to IP addresses associated with Elizondo or as to which Elizondo had access, such as that of his in-laws.

2) Incorporated into this Notice and Order is a redacted version of access data developed as part of the criminal investigation by the District Attorney's Office. *See Appendix "A"*.

18. Given that unauthorized access to the NFIRS systems qualified as an act classified as a felony or Class A or Class B Misdemeanor, and given that this type of disregard of the department rules was the type of behavior by Elizondo that created controversy around him, I brought this new information to the attention of the assigned criminal investigator at the District Attorney's office.

1) It appeared to me that Elizondo was accessing the NFIR System for his own personal purposes and not for any legitimate Fire Department purpose.

2) It was also apparent that Elizondo was not going to abide by the Leave and Suspension Orders he was given.

3) Therefore, I took the additional step of revoking Elizondo's account to the NFIR System at this time.

19. Because of the potential criminal liability associated with the unauthorized access to the NFIR System, I also provided to the District Attorney Office the NFIRS access logs reflecting the all the times when Elizondo had accessed the NFIR System. These relevant NFIRS access logs were provided to the District Attorney's Office in December 2017.

20. It was my understanding that this new content would be incorporated into the already existing criminal investigation. Because of this, I was not able to take any immediate civil service action against Elizondo because of the pendency of the existing criminal case, as well as the ongoing criminal investigation pertaining to Elizondo's manipulation of the department's ambulance system.

21. Because of uncertainty about, and lack of control over, the investigation and processing of the criminal complaints and criminal charges by the District Attorney's Office, on or about April 18, 2018, I filed a Statement and Notice with the Texas Attorney General, pursuant to Section 143.056(h), TLGC to abate the usual 180-day notice period, given the ongoing the criminal investigations and criminal charges.

1) There is no question that the Statement and Notice related to criminal activity that was being actively investigated, or which had already been charged, and I did not want to take any civil service action that would interfere with the criminal investigation or criminal case.

22. On or about June 4, 2018, I served Lt. Elizondo with a Chapter 614, Texas Gov't Code Notice of the Allegation of Misconduct dated June 4, 2018, which included an Order to provide me with a detailed written response about why he was accessing the NFIR System.

1) With that Notice and Order, I also provided Elizondo with a detailed redacted log of the NFIRS Reporting Log reflecting each instance that he had accessed the NFIR System during your period of disciplinary suspension and under your account.

2) A copy of the redacted log provided to Lt. Elizondo is attached as an Appendix to this Notice and Order and incorporated for purpose of itemizing each instance of unauthorized access to the NFIR Emergency Reporting System that is alleged in this disciplinary charge. *See Appendix A.*

3) I had delayed service of the redacted log to Elizondo because I did not want the implementation of my civil service process to interfere with the pending criminal investigation. I advised the District Attorney's Office that I was going to serve the redacted NFIRS log as part of my civil service process and got no objection to this.

23. Lt. Elizondo did not cooperate with receipt of the Chapter 614 Notice and Order dated June 4, 2019. I was forced to serve him on two separate occasions. Even though I properly served Lt. Elizondo with the with the Notice and Order to Respond, he failed to respond to my Order at all.

1) This failure to respond constitutes insubordination and conduct prejudicial to good order.

24. I then decided to serve Lt. Elizondo with a 2nd Chapter 614 Notice and Order to Respond, dated June 18, 2018. In the 2nd Chapter 614 Notice and Order, I pointed out that he had failed to respond to the Notice and Order dated June 4, 2019.

1) As before, Elizondo attempted to evade service of the Notice and Order. I had to retain the services of a process server to assure that he was served with the Notice and Order and would not claim ignorance of the Order.

2) Lt. Elizondo's failure to cooperate in accepting service of my order constituted insubordination and conduct prejudicial to good order.

25. Finally, on or about June 29, 2019, Lt. Elizondo submitted to me a written response to the Chapter 614 Notice and Order to Respond. However, his response consisted of a one-line response denying the allegations of misconduct as not true.

1) His response was incomplete and inadequate in that it did not provide me with any explanation about why he was continuing to access the NFIR System after having been place on Administrative Leave.

2) Consequently, I consider your failure to timely and properly respond to a directive to be insubordination and conduct prejudicial to good order.

26. On or about June 27, 2018, Lt. Elizondo was criminally indicted with an eleven-count felony indictment of computer security breach by a Cameron County Grand Jury in a case styled and numbered State v Elizondo, Case No. 2018-DCR-01325.

27. In response to this new felony indictment, I again placed Lt. Elizondo under a Temporary Suspension Order without pay dated July 5, 2018, pursuant to my authority under Section 143.056, TLGC.

28. Between the months of July 2018 and September 2019, Lt. Elizondo's status with the Department was one of Temporary Suspension without pay under Section 143.056, TLGC. From a civil service point of view, I was on a stand-by status with respect to Lt. Elizondo pending disposition of the two criminal cases against him.

29. In mid-September 2019, I was advised by the District Attorney's Office that the criminal case against Elizondo for breach of computer security was set to go to trial on n September 17, 2019 I was put on notice as a witness in that trial.

30. I later learned that the criminal jury in the computer breach criminal case had acquitted Elizondo of the criminal charges on or about September 19, 2019. I also later learned that the District Court had entered a Judgement of Acquittal on September 20, 2019.

31. I was aware that under the provisions of Section 143.056(a), TLGC, I as Fire Chief had a period of thirty (30) days from final disposition of the specified criminal to pursue civil service discipline. In addition, under Section 143.056(g), TLGC acquittal or dismissal of an indictment or complaint does not negate the charges that may be brought against a civil servant by the Department.

32. With the assistance of legal counsel, I was able to obtain a copy of the criminal investigative file from the District Attorney Office. After a review of the contents of that file, and after consultation with my superiors in Administration, I am convinced that the existing evidence supports this Notice and Order of Indefinite Suspension, as stated above and as further detailed below.

33. The criminal investigation revealed, and I find, that the NFIR System had been accessed under Elizondo's account password from a non-departmental computer, on numerous occasions, as reflected in the NFIRS access log between October 2017 and December 2017.

34. A redacted copy of the NFIRS access incidents had previously been provided to Elizondo in connection with the Chapter 614 Notice and Order to Respond. Attached as Appendix A to this Indefinite Suspension Order is a log of all the access incidents attributable to Elizondo.

35. These access incidents by Elizondo would not be for a lawful department purpose and were unauthorized and illegal.

36. I have considered Elizondo's claim that because his NFIRS account had not been revoked or frozen, he did not know that using it was a violation of law or policy. I do not find this claim credible, given that any reasonable firefighter placed on Administrative Leave, and Temporary Suspension, and ordered to turn over to the Department keys, badges, and radios, would know that use of a sensitive account password under these circumstances was prohibited. Any claim to the contrary by Elizondo is not reasonable nor credible.

1) In addition, as stated above, that one of Elizondo's first unauthorized accesses to the NFIR System involved a possible policy violation by Jorge Lerma, the primary complainant against Elizondo on behalf of the Fire Association, demonstrates that this access was for personal reasons, not any lawful department reason.

37. In addition, the criminal investigation was able to identify the access points to numerous IP addresses, many of which were tied to Elizondo's personal computer, but also to an IP address from a computer located at the home of his in-laws.

38. In addition, the criminal investigation revealed, and I find, that Elizondo had downloaded and saved into the non-departmental computer at least seven specific NFIR ERS reports, which were the incidents that the District Attorney ultimately went to trial on.

39. Access to and use of the NFIR System for other than legitimate fire department purposes is unlawful and a violation of state and federal law and City policy.

40. The NFIR System gives individuals seeking access to the system a specific Privacy Advisory warning about improper access and utilization of the data contained in the system and further advising that civil and criminal penalties apply for unauthorized use of data maintained within the system.

41. In summary, with respect to the NFIR System access incidents specified in this Notice and Order, I find that:

1) That the NFIR recording system accurately and reliably records the use of a specific access codes whenever a user gains access to the system;

2) Elizondo logged into the NFIR System under an access code assigned to him on numerous occasions without authorization to do so;

3) That Elizondo was on Admin Leave and Temporary Suspension at the times that access to the NFIR System occurred;

4) That with respect to each NFIRS access incident, Lt. Elizondo also necessarily disregarded the warning at each access advising you that unauthorized access to the NFIR System data constituted a violation of civil and criminal law.

42. In addition, from a review of the contents of the criminal investigative file, I also find that during your tenure as Fire Chief, Elizondo gave preferential treatment to a private ambulance company known as InterCity in various ways, in violation of City Ordinance and Department policy and practice, as more fully explained below.

43. The criminal investigative materials reflect the following pattern of conduct taken by Elizondo as Fire Chief which gave preferential treatment to InterCity in violation of City rules, regulations, policies and practices:

1) Elizondo allowed InterCity to operate without a license, in violation of the applicable City Ordinance pertaining to emergency vehicles, in violation of the City Manager's directive pertaining to the City Ordinance, Department's established practices prohibiting inter-city point to point operations by private for-profit ambulance services and in violation of the Department SOP pertaining to EMS vehicles;

2) Elizondo entered into an unauthorized and bogus "Mutual Aid Agreement" with InterCity, in disregard of the fact that InterCity was a private for-profit entity and not the proper subject for a Mutual Aid Agreement; and,

3) Elizondo personally or through staff redirected ambulance calls that pertained to Brownsville EMS to InterCity via the City's dispatch system.

4) Elizondo gave InterCity city-issued radios and other equipment and had them stationed at Fire Department EMS facilities in violation of City and Department policy.

44. I find that between the time frame of December 2016 and April 2017, Elizondo generally allowed InterCity to operate without a license, in violation Chapter 42, Article IV, Section 127 of the Brownsville Code of Ordinances.

1) Allowing such operation also violated the City Manager's Directive dated April 28, 2014, as well as the BFD SOP dated 5/30/2014

45. I also find that Elizondo entered into an unauthorized and bogus "Mutual Aid Agreement" with InterCity, in disregard of the fact that InterCity was a private for-profit entity and not the proper subject for a Mutual Aid Agreement.

1) The use of a "Mutual Aid Agreement" is limited to agreement with neighboring municipalities, either with the existing EMS service, or with a Non-Profit EMS Service with whom the municipality has an Inter-Local Agreement. At no time has a Mutual Aid Agreement been allowed or utilized with a private, for-profit ambulance company like InterCity.

46. In addition, as reflected in the investigative materials provided to me, Elizondo personally or through staff redirected ambulance calls that pertained to Brownsville EMS to InterCity via the City's dispatch system. Attached as Appendix "B" to this Order of Indefinite Suspension is a log reflecting series of directives to Brownsville Police Department Dispatch originating with Elizondo himself, or indirectly through then Deputy Chief Estrada or other supervisory personnel redirecting calls from BEMS to InterCity.

1) This practice was in violation of in violation Chapter 42, Article IV, Section 127 of the Brownsville Code of Ordinances, as well as in violation of the City Manager's Directive dated April 28, 2014, as well as the BFD SOP dated 5/30/2014.

2) I would also point out that the redirection of this calls away from Brownsville EMS, the exclusive public sector provider, over to InterCity, a private for-profit provider, diverted revenues generated from these calls away from the City and over to InterCity.

47. I would point out as well that the activity sanctioned by Elizondo was sufficiently suspicious that Brownsville PD Dispatch Supervisors began monitoring and documenting requests to redirect EMS calls to InterCity between the months of December 2016 and May or June 2017.

1) Investigative brought to my attention also reflect that concerns about the re-routing of BEMS calls to InterCity reflects that the District Attorney's Office was looking into the practice of rerouting calls and that grand jury subpoenas were issued in June 2017 to investigate the practice.

2) Sometime in early June 2017, Police Chief Rodriguez advised Elizondo and Estrada to stop diverting calls to InterCity as this was illegal and in violation of the City's EMS ordinance. Rodriguez also advised Elizondo that Brownsville PD dispatch would no longer honor requests by Elizondo or other Fire Department personnel to redirect EMS calls to InterCity.

3) By letter dated June 14, 2017, Elizondo responded to Police Chief Rodriguez advising Chief Rodriguez in so many words that it was none of the Chief's business how he (Elizondo) chose to run the fire service, that any concerns that Rodriguez had should be raised with the City Manager not directly to him (Elizondo) and that it was within his (Elizondo's discretion to decide whether or how to use 3rd party providers.

48. The criminal investigation reveals, and I find as true that Elizondo gave InterCity city-issued radios and other equipment and had them stationed at Fire Department EMS facilities in February 2017, in violation of City and Department policy.

1) Under Elizondo's tenure, he began treating InterCity as it if were an extension of the Fire Department. However, InterCity was a private for-profit entity.

2) The Brownsville Fire Department was, and is, a public sector, civil service and collective bargaining entity. The Fire Department had an exclusive right to handle the EMS calls within the City.

3) It was a violation of civil service law, and the collective bargaining rights of the Department for then Chief Elizondo to utilize the services of InterCity, a private, for-profit entity, as an extension of the City's EMS program.

49. Based on the facts set out above, which I find to be true, Lt. Elizondo is responsible for violations of one or more of the rules, regulations, policies, and directives set out in more detail below.

**LISTING OF RULES VIOLATED BY YOUR MISCONDUCT**

The rules, regulations, and policies applicable to the factual findings I have made above are in violation of one or more of the following rules, regulations, and policies, as more specifically set forth below:

**BROWNSVILLE CIVIL SERVICE COMMISSION RULES AND REGULATIONS:**

**RULE 24. ADOPTION OF RULES RELATING TO DISCIPLINE [§143.008; §143.051, TLGC]**

**B.** The rules adopted herein which prescribe cause for removal or suspension of a fire fighter or police officer fall within one or more of the following subject matter areas specified by §143.051, TLGC, specifically:

**3.** Acts of incompetency;

**4.** Neglect of duty;

**6.** Acts showing lack of good moral character;

**8.** Conduct prejudicial to good order;

**12.** Violation of any applicable fire/police department rule or special order.

**RULE 30. ACTS SHOWING LACK OF GOOD MORAL CHARACTER [§143.051(6), TLGC]**

**A.** A civil servant is expected to refrain from engaging in any actions, whether on-duty, or off-duty, that exhibit or reveal a lack of good moral character on the part of the civil servant. Failure to abide by this standard of conduct and behavior may subject the civil servant to disciplinary action.

**RULE 32. CONDUCT PREJUDICIAL TO GOOD ORDER [§143.051(8), TLGC]**

**A.** A civil servant is expected to refrain from engaging in any actions, whether on-duty, or off-duty, that would qualify as conduct prejudicial to good order. Failure to abide by this standard of conduct and behavior may subject the civil servant to disciplinary action.

**RULE 36. VIOLATION OF ANY APPLICABLE FIRE OR POLICE DEPARTMENT RULE OR SPECIAL ORDER [§143.051(12), TLGC]**

**A.** A civil servant shall not violate any applicable fire or police department rule or special order.

**B.** The Commission hereby adopts by reference the rules and regulations of each respective department as its own for purposes of enforcement of such rules and special orders.

**C.** A civil servant who violates a rule or special order of his or her respective department may be subject to disciplinary action.

**<u>CITY OF BROWNSVILLE CODE OF ORDINANCES</u>**

**CHAPTER 42 EMERGENCY SERVICES**

Sec. 42-127. - License required for operation.

(1) No person shall operate any ambulance upon the public streets of the city in rendering transport service until such ambulance has been certified for such usage by the state department of health (where applicable), the fire chief and the director of public health, and the owner of such ambulance and the persons operating same shall have complied with all rules and regulations prescribed by the city and have complied with the statutes of the state pertaining to the operation of ambulances and are the holders of valid permits for such purposes.

(2) No person shall operate any emergency ambulance upon the public streets of the city in rendering emergency service in response to emergency calls until such ambulance has been certified for such usage by the fire chief, the director of public health and the state department of health (where applicable); and the owner of such ambulance and the person operating the same have complied with all rules and regulations prescribed by the city and

with the statutes of the state pertaining to the operation of ambulances, and are the holders of valid permits for such purpose.

(3) The health department will assist the fire/EMS department with non-emergency bedridden medical transfers.

(Ord. No. 2007-1471, § 1, 3-20-2007

**DIRECTIVE BY CITY MANAGER CABLER DATED APRIL 28, 2014 [CITY CHARTER, ART. V, SECS. 20 & 21]**

Administrative Directive by City Manager Charlie Cabler to Fire Chief Leonardo Perez dated April 28, 2014 providing an interpretation of Brownsville Ordinance Chapter 42, Article IV, Section 42.127 pertaining to transport services within the City limits of the City of Brownsville, Texas and setting enforcement guidelines.

**FIRE DEPARTMENT SOP REGARDING OUT OF TOWN AMBULANCE SERVICE [ISSUED 5/30/2014]**

Limiting out of town transfers by BEMS to Cameron County and establishing conditions under which another EMS provider may or must be called.

**ADMINISTRATIVE LEAVE ORDER TO ELIZONDO BY FIRE CHIEF DATED 10/9/2017**

On October 9, 2017, you were placed on Administrative Leave with Pay pending the results of an outside investigation. In the October 9, 2017 Order, you were required to do the following:

1) You were Ordered to remain available for contact;

2) You were Ordered to not return to the Department;

3) You were Ordered to not fulfill any of the official duties of your position except as instructed by the Human Resources Department; and,

4) You were Ordered at that time to turn in to your supervisor any keys, identification, cards, badges, or any other equipment that belonged to the City of Brownsville.

**FIRE CHIEF'S NOTICE AND ORDER TO RESPOND TO ELIZONDO DATED JUNE 4, 2019**

Ordering Lt. Elizondo to provide a detailed response to the reasons why he was accessing the NFIR System while under Administrative Leave and Temporary Suspension Orders.

**FIRE CHIEF'S NOTICE AND ORDER TO RESPOND TO ELIZONDO DATED JUNE 18, 2019**

Advising Lt. Elizondo of his failure to respond to the Order dated June 4, 2019 and again Ordering him to provide a detailed written response to the reasons why he was accessing the NFIR System while under Administrative Leave and Temporary Suspension Orders.

**BROWNSVILLE FIRE DEPARTMENT RULES & REGULATIONS**

**2 / 1.00 OBEDIENCE TO ORDERS**

Members shall be governed by the following general rules of conduct. Violations by any member of the departmei1t of any of these rules of conduct may be considered sufficient cause for dismissal, demotion, suspension, or other disciplinary action.

1.01 GENERAL ORDERS: Obedience to the orders of a superior in rank must be faithfully observed, and any member offending in this regard shall be held strictly accountable.

1.02 KNOWLEDGE OF RULES: The members of the department shall read and become familiar with all Rules and Regulations. relating to the department. No plea of ignorance of the Rules and Regulations will be accepted as an excuse.

1.03 ABIDE BY LAWS: Members of the department shall abide by the laws of the United States and State of Texas, the Ordinances of the City of Brownsville, and the General Orders and Rules of Conduct of the City of Brownsville Fire Department.

1.04 OBEY LAWFUL ORDERS: Members shall obey all lawful orders and directions given by superior officers. Such obedience shall be prompt and willing.

1.05 INSUBORDINATION: The failure or deliberate refusal of any member to obey any lawful order given by any superior authority of any superior officer by obvious disrespect or by disputing his orders shall likewise be deemed insubordination.

1.06 UNLAWFUL ORDERS PROHIBITED: No commanding, supervisory or acting officer shall knowingly or willfully issue any order which is in violation of any law, ordinm1ce, or departmental rule.

1.13 PERFORMANCE OF DUTY: Members shall perform all lawful duties as may be required of them by competent authority regardless whether such duties are specifically assigned to them in ai1y rules or duty manuals.

1.19 CONDUCT OUTSIDE WORK: Conduct outside work of a criminal, or immortal nature is prohibited by this department and will be considered just cause for disciplinary action.

**2 / 2.00 RELATIONSHIPS**

2.01 CONDUCT AND BEHAVIOR: Members, whether on or off duty, shall be governed by the ordinary and reasonable rules of good conduct and behavior, and shall not commit any act tending to b1ing reproach or discredit upon themselves and department.

2.15 GIVING OUT INFORMATION: No information relative to the business or affairs of the Fire Department shall be furnished persons not connected therewith, except as authorized by the Chief of the Fire Department.

**2 / 4.00 ATTENTION TO DUTY**

4.11 TESTIFYING IN DEPARTMENTAL INVESTIGATIONS: Any member who, when so directed by competent authority, refuses to answer questions or render statements, material, and so forth, relevant in any department personnel investigation shall be subject to disciplinary action

**2 / 5.00 RESTRICTION ON ACTIVITIES**

5.07 SECURITY OF FIRE INFORMATION: Members shall not divulge any fire information nor make information contained in fire records available to any person or agency except as provided by department procedure, by law or by competent authority. Members shall treat as confidential the official business of the department.

5.27 CITY COMPUTER AND INTERNET USE: No personal use of city computers, computer components, and Internet access is permitted. This applies to all members at all city work sites. Violation of this policy is grounds for disciplinary action or termination.

**3 / 3.00 PUBLIC RELATIONS**

3.06 PROGRAM OF PUBLIC RELATIONS:

A. The personal conduct of each member of the department is the primary factor in promoting a program of desirable public relations. The exercise of tact, patience and courtesy shall be strictly observed under all circumstances.

B. Superior Officers shall by example demonstrate and shall instruct subordinates in proper deportment and desirable attitudes in their dealings with the public.

C. Members of the department shall carefully avoid behavior which would tend to bring adverse criticism of the department. Their conduct, whether on or off duty, shall be such as to merit the respect and confidence of the people.

**ADDITIONAL CONSIDERATIONS RELATING TO LEVEL OF DISCIPLINE IMPOSED**

As the current Fire Chief of the Brownsville Fire Department, I am required daily to not only carry out the purpose of the Department, but to oversee the personnel that carry out that goal. Because the Department is both a civil service, and a collective bargaining department, the process and procedure for investigating and making personnel decisions is unusually technical and involved. That is especially true here, with former Chief Elizondo, and now Lt. Elizondo.

During his tenure as Fire Chief, Elizondo chose to pursue a course of action with the ambulance service that proved to be controversial and in my view illegal in that it did not comply with the City's existing Ordinances, nor with the City Manager's Directive and the Department SOP pertaining to utilization of outside EMS services. Elizondo created, and is solely responsible for, the general belief that his preferential treatment for InterCity was motivated by considerations of personal gain or ownership in that company, or at least an unreasonable bias in favor of InterCity. He demonstrated a willingness to bend, if not break, all the applicable rules, policies, and practices having to do with the use of outside, private-sector ambulance services.

After he was placed on Administrative Leave and then on Temporary Suspension, he continued to demonstrate an unwillingness to abide by the rules, regulations of the Department and the directives of supervisory personnel. His unauthorized access to the NFIR System was completely unjustified.

Elizondo continued to demonstrate his contempt for following directives when he ignored a directive to provide an explanation for accessing the NFIR System, and only after receiving a second directive providing an incomplete and inadequate response, as explained in more detail above.

I have serious and significant concerns about being able to reintegrate Elizondo back into the Department as a Fire Lieutenant. The position of Fire Lieutenant is a supervisory one, and it requires a highly skilled and mature individual to fulfill these functions. While I do not question Elizondo's intelligence, his recent history with the Department, first as Fire Chief, but then also as a Lieutenant under Admin Leave orders, as well as under Temporary Suspension orders, convinces me that Elizondo will continue to have a disruptive effect within the Department. I believe he will continue to do what he has demonstrated he will do, which is to bend or break the Departments rules, regulations, and practices when it serves his needs. He has demonstrated that he has no leadership ability. For the reasons set out above in the recitation of relevant facts, and for the reasons explained here, I find that an INDEFINITE SUSPENSION is justified against Carlos Elizondo for the reasons explained above.

**NOTICE OF APPEAL RIGHTS**

Elizondo is hereby notified that pursuant to Sections 143.010 and 143.052(d), Texas Local Government Code ("TLGC"), that he has ten (10) days from receipt of this Notice and Statement

to appeal this disciplinary action by filing a Notice of Appeal with the Civil Service Director. The appeal must comply with the requirements of Section143.010, TLGC.

In addition, Elizondo is hereby advised that pursuant to Section 143.057, TLGC, he may request a hearing before an independent third-party hearing examiner instead of a hearing before the Civil Service Commission on his appeal. If he elects to appeal to a hearing examiner instead of to the Civil Service Commission, he will waive all rights to appeal to a district court, except as provided by Section 143.057(j), TLGC.

**NOTICE OF FILING WITH CIVIL SERVICE COMMISSION**

Please be advised that a copy of this Order of Indefinite Suspension has been timely filed with the Civil Service Commission and it shall also serve as the written statement filed with the Civil Service Commission giving the reasons for the disciplinary suspension imposed against Lt. Carlos Elizondo in this matter.

Respectfully submitted,

Jarrett V. Sheldon
Fire Chief
Brownsville Fire Department

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Notice and Order of Indefinite Suspension and Statement to the Brownsville Civil Service Commission, including Appendix "A" and "B", has been delivered to Carlos Elizondo in accordance with the requirement of Chapter 143, Texas Local Gov't Code. In addition, I certify that true and a copy of this document has been delivered to Carlos Elizondo to his last known home address and to his personal email address as indicated below.

Carlos Elizondo
2994 Vanessa Dr.
Brownsville, Texas 78520

By U.S. Mail, postage prepaid
By Email: drcaem5@gmail.com

JARRETT V. SHELDON
FIRE CHIEF
CITY OF BROWNSVILLE, TEXAS

| APPENDIX "A"<br>UNAUTHORIZED NFIRS ACCESS INCIDENTS<br>CARLOS ELIZONDO ACCOUNT PASSWORD | | | | |
|---|---|---|---|---|
| # | CALL DATE | APPROX. CALL TIME | INCIDENT NUMBER | BREACH DATE |
| 1 | 10/10/2017 | 4:35pm | 2017-07104 | 10/10/2017 |
| | | | | 10/10/2017 |
| 2 | 10/11/2017 | 7:46am | 2017-07117 | 10/11/2017 |
| | | | | 10/11/2017 |
| 3 | 10/10/2017 | 7:51pm | 2017-07109 | 10/11/2017 |
| | | | | 10/11/2017 |
| 4 | 10/11/2017 | 4:10pm | 2017-07126 | 10/11/2017 |
| | | | | 10/11/2017 |
| | | | | 10/11/2017 |
| | | | | 10/11/2017 |
| | | | | 10/11/2017 |
| 5 | 10/29/2017 | 9:04pm | 2017-07573 | 10/29/2017 |
| | | | | 10/29/2017 |
| 6 | 10/29/2017 | 10:03am | 2017-07562 | 10/29/2017 |
| | | | | 10/29/2017 |
| 7 | 11/4/2017 | 12:34pm | 2017-07709 | 11/4/2017 |
| | | | | 11/4/2017 |
| | | | | 11/4/2017 |
| 8 | 11/4/2017 | 8:05pm | 2017-07720 | 11/9/2017 |
| | | | | 11/9/2017 |
| 9 | 11/9/2017 | 4:34pm | 2017-07828 | 11/9/2017 |
| | | | | 11/9/2017 |
| | | | | 11/9/2017 |
| | | | | 11/9/2017 |
| | | | | 11/13/2017 |
| | | | | 11/13/2017 |
| | | | | 11/13/2017 |
| 10 | 11/10/2017 | 1:22pm | 2017-07858 | 11/10/2017 |
| | | | | 11/10/2017 |
| | | | | 11/10/2017 |
| | | | | 11/10/2017 |
| 11 | 11/10/2017 | 9:53am | 2017-07852 | 11/10/2017 |
| | | | | 11/10/2017 |
| 12 | 11/10/2017 | 12:43pm | 2017-07857 | 11/10/2017 |
| | | | | 11/10/2017 |
| 13 | 11/9/2017 | 11:40am | 2017-07820 | 11/10/2017 |

| APPENDIX "A"<br>UNAUTHORIZED NFIRS ACCESS INCIDENTS<br>CARLOS ELIZONDO ACCOUNT PASSWORD | | | | |
|---|---|---|---|---|
| | | | | 11/10/2017 |
| | | | | 11/10/2017 |
| 15 | 11/10/2017 | 1:30pm | 2017-07859 | 11/10/2017 |
| | | | | 11/10/2017 |
| | | | | 11/10/2017 |
| | | | | 11/10/2017 |
| 16 | 11/10/2017 | 3:21pm | 2017-07862 | 11/10/2017 |
| | | | | 11/10/2017 |
| | | | | 11/10/2017 |
| | | | | 11/10/2017 |
| | | | | 11/10/2017 |
| 17 | 11/10/2017 | 2:14pm | 2017-07861 | 11/10/2017 |
| | | | | 11/10/2017 |
| 18 | 11/1/2017 | 8:44pm | 2017-07643 | 11/10/2017 |
| | | | | 11/10/2017 |
| 19 | 11/11/2017 | 9:14pm | 2017-07896 | 11/11/2017 |
| | | | | 11/11/2017 |
| 20 | 11/11/2017 | 8:24pm | 2017-07894 | 11/11/2017 |
| | | | | 11/11/2017 |
| 21 | 11/11/2017 | 8:45pm | 2017-07895 | 11/11/2017 |
| | | | | 11/11/2017 |
| 22 | 11/13/2017 | 7:44am | 2017-07918 | 11/13/2017 |
| | | | | 11/13/2017 |
| 23 | 11/9/2017 | 00:41am | 2017-07812 | 11/13/2017 |
| | | | | 11/13/2017 |
| 24 | 11/6/2017 | 11:24pm | 2017-07764 | 11/13/2017 |
| | | | | 11/13/2017 |
| 25 | 11/6/2017 | 7:12pm | 2017-07759 | 11/13/2017 |
| | | | | 11/13/2017 |
| 26 | 11/6/2017 | 11:25am | 2017-07751 | 11/13/2017 |
| | | | | 11/13/2017 |
| 27 | 11/6/2017 | 12:33pm | 2017-07752 | 11/13/2017 |
| | | | | 11/13/2017 |
| 28 | 11/6/2017 | 8:38am | 2017-07747 | 11/13/2017 |
| | | | | 11/13/2017 |
| 29 | 11/6/2017 | 2:52am | 2017-07743 | 11/13/2017 |
| | | | | 11/13/2017 |
| 30 | 11/5/2017 | 9:16pm | 2017-07741 | 11/13/2017 |
| | | | | 11/13/2017 |

| APPENDIX "A"<br>UNAUTHORIZED NFIRS ACCESS INCIDENTS<br>CARLOS ELIZONDO ACCOUNT PASSWORD | | | | |
|---|---|---|---|---|
| 31 | 11/13/2017 | 9:52am | 2017-07922 | 11/13/2017 |
| | | | | 11/13/2017 |
| | | | | 11/13/2017 |
| | | | | 11/13/2017 |
| | | | | 11/13/2017 |
| 32 | 11/14/2017 | 5:18pm | 2017-07955 | 11/14/2017 |
| | | | | 11/14/2017 |
| | | | | 11/14/2017 |
| | | | | 11/14/2017 |
| | | | | 11/14/2017 |
| | | | | 11/14/2017 |
| 33 | 11/14/2017 | 5:54pm | 2017-07956 | 11/14/2017 |
| | | | | 11/14/2017 |
| 34 | 11/14/2017 | 8:10pm | 2017-07962 | 11/14/2017 |
| | | | | 11/14/2017 |
| 35 | 11/14/2017 | 6:40pm | 2017-07960 | 11/14/2017 |
| | | | | 11/14/2017 |
| 36 | 11/15/2017 | 5:13pm | 2017-07980 | 11/15/2017 |
| | | | | 11/15/2017 |
| 37 | 11/15/2017 | 5:12pm | 2017-07979 | 11/15/2017 |
| | | | | 11/15/2017 |
| 38 | 11/15/2017 | 6:57pm | 2017-07987 | 11/15/2017 |
| | | | | 11/15/2017 |
| | | | | 11/15/2017 |
| | | | | 11/15/2017 |
| 39 | 11/15/2017 | 6:45pm | 2017-07985 | 11/15/2017 |
| | | | | 11/15/2017 |
| 40 | 11/15/2017 | 6:54pm | 2017-07986 | 11/15/2017 |
| | | | | 11/15/2017 |
| 41 | 11/15/2017 | 8:43pm | 2017-07988 | 11/15/2017 |
| | | | | 11/15/2017 |
| 42 | 11/19/2017 | 9:02am | 2017-08077 | 11/19/2017 |
| | | | | 11/19/2017 |
| | | | | 11/19/2017 |
| 43 | 11/19/2017 | 5:33am | 2017-08076 | 11/19/2017 |
| | | | | 11/19/2017 |
| 44 | 11/19/2017 | 5:21am | 2017-08075 | 11/19/2017 |
| | | | | 11/19/2017 |
| 45 | 3/3/2016 | 6:48pm | 2016-01529 | 11/19/2017 |

| APPENDIX "A"<br>UNAUTHORIZED NFIRS ACCESS INCIDENTS<br>CARLOS ELIZONDO ACCOUNT PASSWORD | | | | |
|---|---|---|---|---|
| | | | | 11/19/2017 |
| | | | | 11/19/2017 |
| | | | | 11/19/2017 |
| 46 | 12/24/2013 | 4:53pm | 2013-0046009 | 11/19/2017 |
| | | | | 11/19/2017 |
| 47 | 12/11/2013 | 6:37am | 2013-0045790 | 11/19/2017 |
| | | | | 11/19/2017 |
| 48 | 11/19/2017 | 10:54pm | 2017-08087 | 11/20/2017 |
| | | | | 11/20/2017 |
| | | | | 11/20/2017 |
| | | | | 11/23/2017 |
| | | | | 11/23/2017 |
| 49 | 11/22/2017 | 10:20pm | 2017-08155 | 11/23/2017 |
| | | | | 11/23/2017 |
| 50 | 11/21/2017 | 9:50pm | 2017-08135 | 11/23/2017 |
| | | | | 11/23/2017 |
| 51 | 1/11/2017 | 5:09am | 2017-00257 | 11/23/2017 |
| | | | | 11/23/2017 |
| 52 | 11/23/2017 | 1:13am | 2017-08160 | 11/23/2017 |
| | | | | 11/23/2017 |
| 53 | 11/22/2017 | 8:38pm | 2017-08154 | 11/23/2017 |
| | | | | 11/23/2017 |
| 54 | 11/21/2017 | 11:07pm | 2017-08137 | 11/23/2017 |
| | | | | 11/23/2017 |
| 55 | 12/7/2016 | 10:15am | 2016-08116 | 11/23/2017 |
| | | | | 11/23/2017 |
| | | | | 11/23/2017 |

| APPENDIX "B"<br>CALLS CANCELLED AND RE-DIRECTED TO INTERCITY | | | | | | |
|---|---|---|---|---|---|---|
| # | Date of Service | Time Received | Call # | Incident # | Name of BFD Official Authorizing the Call Transfer | Call Transfer Directive |
| 1 | 12/8/2016 | 13:29 | C16182128 | E16-21237 | EMS Lt.<br>Isaac Briones | Intercity |
| 2 | 12/16/2016 | 17:13 | C16186313 | E16-21700 | Fire Chief<br>Carlos Elizondo | Intercity |
| 3 | 12/16/2016 | 17:47 | C16186336 | E16-21699 | Fire Chief<br>Carlos Elizondo | Intercity |
| 4 | 12/16/2016 | 18:28 | C16186359 | E16-21693 | Deputy Chief<br>Ernesto Estrada | Intercity |
| 5 | 12/21/2016 | 17:15 | C16188977 | E16-22008 | Fire Chief<br>Carlos Elizondo | Intercity |
| 5 | 12/21/2016 | 17:15 | C16188978 | E16-22009 | Fire Chief<br>Carlos Elizondo | Intercity |
| 7 | 12/21/2016 | 17:18 | C16188979 | E16-22001 | Deputy Chief<br>Ernesto Estrada | Intercity |
| 8 | 1/10/2017 | 14:52 | C17004806 | E17-00668 | Med 7<br>Hugo Javier Solis | Intercity |
| 9 | 1/10/2017 | 16:12 | C17004863 | E17-00665 | Med 7<br>Hugo Javier Solis | Mutual Aid |
| 10 | 1/10/2017 | 17:06 | C17004901 | E17-00678 | Med 7<br>Ramon Santillana Jr. | Intercity |
| 11 | 1/13/2017 | 17:32 | C17006593 | E17-00917 | Deputy Chief<br>Ernesto Estrada | Intercity |
| 12 | 1/13/2017 | 18:43 | C17006632 | E17-00918 | Deputy Chief<br>Ernesto Estrada | Intercity |
| 13 | 1/31/2017 | 9:40 | C17016061 | E17-02112 | EMS Lt.<br>Isaac Briones as U113 | Intercity |
| 14 | 2/15/2017 | 14:26 | C17024528 | E17-03146 | EMS Capt.<br>Edward Guerrero | Intercity |

| APPENDIX "B" CALLS CANCELLED AND RE-DIRECTED TO INTERCITY | | | | | | |
|---|---|---|---|---|---|---|
| # | Date of Service | Time Received | Call # | Incident # | Name of BFD Official Authorizing the Call Transfer | Call Transfer Directive |
| 15 | 2/15/2017 | 15:03 | C17024550 | E17-03147 | EMS Capt. Edward Guerrero | Intercity |
| 16 | 2/24/2017 | 11:41 | C17029218 | E17-03782 | EMS Lt. Isaac Briones | Intercity |
| 17 | 2/24/2017 | 13:25 | Brownsville EMS Lt. Briones advises BPD Dispatcher that InterCity has been issued a portable radio and will be responding to emergency and non-emergency transfers as Transfer Unit #1 | | | |
| 18 | 2/25/2017 | 11:42 | Deputy Chief Estrada advises BPD Dispatcher that InterCity will be assisting with emergency and non-emergency calls as Transfer Unit #1 and Transfer Unit #2. Deputy Chief also instructs dispatcher to send InterCity to all calls and to try to not send BEMS to calls unless InterCity ambulances get busy. | | | |
| 19 | 2/25/2017 | 16:25 | Brownsville EMS Del Angel contacts BPD Dispatcher to advise that InterCity has added a third unit. Del Angel instructs dispatcher to dispatch Transfer Units #1, #2, and #3 to all calls. Del Angel also advises Dispatcher to not send BEMS to calls unless it is necessary. | | | |
| 20 | 4/7/2017 | 17:05 | C17052236 | E17-06727 | Deputy Chief Ernesto Estrada | Intercity |
| 21 | 4/7/2017 | 17:12 | C17052242 | E17-06728 | Deputy Chief Ernesto Estrada | Intercity |
| 22 | 4/20/2017 | 13:48 | C17059010 | E17-07557 | Fire Chief Carlos Elizondo | Intercity |
| 23 | 4/20/2017 | 14:46 | C17059053 | E17-07558 | Fire Chief Carlos Elizondo | Intercity |
| 24 | 4/20/2017 | 15:39 | C17059093 | E17-07556 | Fire Chief Carlos Elizondo | Intercity |

RECEI...
OCT 17 2019
Brownsville Fi...
Civil Servi...
By: