**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **CARLOS ALBERTO ELIZONDO** | § | |
| **Plaintiff,** | § | **Civil No. 1:26-cv-00491** |
| **v.** | § | |
| | § | |
| **CITY OF BROWNSVILLE, et al.** | § | |
| **Defendant.** | § | **JURY DEMANDED** |

**DEFENDANT JARRETT SHELDON'S SECOND RULE 12(b)(6) MOTION TO DISMISS, INCLUDING BASED ON QUALIFIED IMMUNITY**

COMES NOW defendant Jarrett Sheldon ("Defendant" or "Chief Sheldon") and files his *Second Motion to Dismiss*, asking that the Court dismiss Plaintiff's claims against Chief Sheldon in their entirety, including based on his qualified immunity defense, pursuant to FED. R. CIV. P. 12 and would show as follows:

## I. SUMMARY

Plaintiff filed suit in state court asserting federal and state claims against the City of Brownsville ("City"), two former City Commissioner Defendants, Chief Sheldon (the current Brownsville Fire Chief), and the local firefighter's association. (Doc. 1-3). After removal, all defendants filed Rule 12(b)(6) motions to dismiss. After the parties briefed those motions, the Court held aa hearing on September 1, 2026 wherein the Court addressed various issues relating to the motions. Following that conference, the Court allowed Plaintiff to file an amended complaint and set deadlines for the defendants to file any motions.

Plaintiff filed his First Amended Complaint (Doc. 37), his live pleading. The amended complaint dropped all state law and official capacity claims against the City, Cesar de Leon, the Estate of Ben Neece, and Chief Sheldon ("City Defendants"), but seeks to add a federal conspiracy theory. As to Chief Sheldon, Plaintiff asserts: (a) First Amendment retaliation under 42 U.S.C.

§1983 (Count I); (b) malicious prosecution under Section 1983 (Count II); (c) fabrication or misrepresentation of evidence under Section 1983 (Count III); and (d) deprivation of liberty as a "stigma plus" claim under Section 1983 (Count IV); and (e) conspiracy under Section 1983 (Count V).

While Plaintiff adds a few more facts, the First Amended Complaint does not correct the deficiencies, and Plaintiff still fails to state a claim against Chief Sheldon upon which relief can be granted.

First, the applicable statute of limitations bar Plaintiff's claims. As Plaintiff conceded at the hearing, and his complaint provides, his claims are primarily based on events that occurred in 2019 or otherwise outside of the limitations period. The only claim Plaintiff could even arguably have filed within limitations is a malicious prosecution claim relating to the since set of charges dismissed in April 2025. However, that claim cannot proceed against Chief Sheldon as a matter of law, as such claims were not clearly established at the relevant time. *Espinal v. City of Houston*, 96 F.4th 741, 748–49 (5th Cir. 2024); *Green v. Thomas*, 129 F.4th 877, 885-86 (5th Cir. 2025).

And malicious prosecution is its own independent cause of action, and even if it were timely asserted and not barred by qualified immunity, it would not save Plaintiff's other claims. Plaintiff rightly conceded at the hearing he is unaware of any authority to suggest a malicious prosecution claim can be used to relate back and save other allegedly related civil rights claims—all of which accrued in 2019 or before. *See, e.g., Davis v. Warren*, 173 F.4th 566, 572 (5th Cir. 2026) (underlying civil rights claims such as unlawful arrest accrue and are held to ordinary limitations periods, notwithstanding a malicious prosecution claim that may not accrue until later—only the malicious prosecution claim would survive limitations).

Additionally, *res judicata* and collateral estoppel from a relevant state district court proceeding should also preclude Plaintiff's claims. Finally, even if limitations, *res judicata*, and collateral estoppel did not apply, Plaintiff fails to meet his burdens to state a plausible claim against Chief Sheldon outside of his qualified immunity defense, including overcoming both prongs of the defense. For these reasons, discussed in greater detail below and addressed at the hearing before the Court, the Court should dismiss all claims against Chief Sheldon with prejudice.

## II. STANDARD OF REVIEW

FED. R. CIV. P. 12(b)(6) requires the Court to dismiss a complaint when the plaintiff fails "to state a claim upon which relief may be granted." In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007), the Court confirmed that FRCP 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief…." "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, at 555. To survive a Rule 12(b)(6) motion under *Twombly*, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see* also *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("*Twombly* expounded the pleading standard for all civil actions...").

The plausibility standard is not akin to a "probability requirement," but it asks for more than a possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, at 678. Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *See Elsensohn v. St. Tammany*

*Parish Sheriff's Office*, 530 F.3d 368, 371-72 (5th Cir. 2008). As the Supreme Court has stated:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement. ... Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

*Iqbal*, at 678-79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, at 678. As set forth below, Plaintiff fails to meet the standard established in *Twombly*, *Iqbal*, or their progeny as to the claims and theories advanced against Chief Sheldon.

## III. ARGUMENTS & AUTHORITIES

### A. PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATION.

Limitations bars Plaintiff's claims, and a defendant can raise limitations in a 12(b)(6) motion. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 365-66 (5th Cir. 2003).

Limitations bars Plaintiff's claims. A defendant can raise limitations in a 12(b)(6) motion. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 365-66 (5th Cir. 2003). The statute of limitations for federal claims brought under Section 1983 is determined by the general statute of limitations governing personal injuries in the forum state. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). Chief Sheldon contends that a one-year limitations period applies to Plaintiff's malicious prosecution claims, as Texas law specifically provides for a one-year malicious prosecution limitations period in TEX. CIV. PRAC. & REM. CODE § 16.002. Otherwise, Texas' two-year statute

of limitations applies to Plaintiff's federal theories. *See Piotrowski*, at 576 (citing *Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir.1989)).

Plaintiff admits that his claims against Chief Sheldon are based on alleged actions *during his employment with the City*. (Doc. 37, generally). Plaintiff also makes clear that his claims are even narrower as they are based on alleged actions by former Commissioners Cesar de Leon and Ben Neece *that occurred while they were both in office*. (Doc. 37, ¶¶ 31, 36-66, 71-73, 91, 99, 106-107, 110, 114-117, 120).

Plaintiff admits that the City terminated him on October 17, 2019, approaching seven (7) years prior to Plaintiff filing suit. (Doc. 37, ¶ 63 and Exhibit A thereto). Plaintiff appealed the termination to the City's Civil Service Commission, which held a two-day hearing on November 21-22, 2019, and upheld Plaintiff's termination. (Doc. 9-2 (Exhibit 1).[1] Plaintiff appealed that decision to state district court. *See Carlos Elizondo v. City of Brownsville*, Cause No. 2019-DCL-07015-1; 445th Judicial District, Cameron County, Texas. The district court granted the City's summary judgment on February 9, 2022, disposing of Plaintiff's claims. (Doc. 9-3 (Exhibit 2).

The Court may consider the foregoing proceedings and exhibits for purposes of this motion as the Court can take judicial notice of Plaintiff's appeal and the public records filed therein. Defendants ask that the Court judicial notice of those proceedings and the public records submitted therein. "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *see also Funk v. Stryker Corp.*, 631 F. 3d 777, 783 (5th Cir. 2011). A court may "take judicial notice of the public

[1] At the September 1, 2026 hearing, the Court advised defendants that they could rely on or refer to their prior motions to dismiss. Consistent with the Court's invitation, while significant portions of the briefing remain herein, to avoid duplicate submission of exhibits and other materials, Chief Sheldon incorporates the briefing in the City Defendants' prior Motions to Dismiss and the exhibits submitted with same herein by reference.

records in ... prior state court proceedings." *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. Appx. 888, 892 (5th Cir. 2020) (citation omitted). The Court may also properly take judicial notice of "the fact that a judicial action was taken[.]" *Gray v. Beverly Enters.-Mississippi, Inc.*, 390 F.3d 400, 407 n.7 (5th Cir. 2004) (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998)).

Cesar de Leon served as a City Commissioner from 2017 until July 2, 2019, which is established by Brownsville Resolution No. 2019-061 and Commission Minutes from July 2, 2019, when John Cowen, Jr. was sworn into the At-Large "A" position Cesar de Leon previously held. (Doc. 9-4 (Exhibit 3) and 9-5 (Exhibits 4)).[2]

Ben Neece, who served as the City's municipal judge for 32 years, served as a Commissioner from 2017 until June 29, 2021, which is established by Brownsville Resolution No. 2021-042 and Commission Minutes from June 21, 2021, when Pedro Cardenas was sworn into the District 4 position Ben Neece previously held. (Doc. 9-6 (Exhibit 5) and 9-7 (Exhibit 6)).[3]

Most of Plaintiff's factual allegations relate to his October 17, 2019 termination—a date the Court can take judicial notice of based on the state court case and its pleadings. Limitations precludes all claims relating to the termination. Moreover, Plaintiff's improper generalized allegations confirm that his claims are based on facts that occurred when *both of the Commissioner*

---

[2] For purposes of Rule 12, a court may consider "matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019); *Reynolds v. City of Commerce, Tex.*, No. 3:19-CV-01577-E, 2021 WL 268819, at *2 (N.D. Tex. Jan. 27, 2021), *aff'd*, 853 Fed. Appx. 978 (5th Cir. 2021). This includes that courts can take judicial notice of city ordinances and resolutions. *H. B. Zachry Co. v. Waller Creek, Ltd.* (*In re Waller Creek, Ltd.*), 867 F.2d 228, 238 n.14 (5th Cir. 1989) (taking judicial notice of city ordinance as a legislative fact). The City of Brownsville Code of Ordinances, including its municipal charter, is available on the City's website (www.brownsvilletx.gov) and on Municode Codification at: https://library.municode.com/tx/brownsville/codes/code_of_ordinances/392422?nodeId=PTICH_ARTVADPR_S13CO

[3] Chief Sheldon asks that the Court take judicial notice of the resolutions and ordinances relating to the ending of Commissioners Cesar de Leon's and Ben Neece's terms in office. Copies were previously submitted produced for the Court's convenience.

*defendants* were in office—meaning the events Plaintiff relies on occurred on or before July 2, 2019, when Commissioner de Leon ended his service as a commissioner. And under no circumstance could Plaintiff's allegations have occurred after June 29, 2021, when Commissioner Neece ended his term. Plaintiff filed suit on March 31, 2026, well beyond the longest two-year limitations period for any of his claims, which precludes his claims against Chief Sheldon.

While Texas law may set limitations, federal law determines when a cause of action under § 1983 accrues. *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993) (per curiam) (citing *Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980)). And "under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016) (citation modified) (quoting *Gartrell*, 981 F.2d at 257). The claim thus accrues "when the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted the injury.'" *Id.*

As to Chief Sheldon, Plaintiff alleges the following facts as to Chief Sheldon: (a) Chief Sheldon terminated Plaintiff on October 17, 2019 (Doc. 37, ¶¶ 40, 46, 63), including preparing a notice outlining the bases (Eoc. 37-1 (Exhibit A)); (b) ordered Plaintiff not to perform official duties unless otherwise instructed by Human Resources (Doc. 37, ¶ 47); encouraged criminal proceedings to be "push[ed]," which occurred in 2017 and 2019 (Doc. 37, ¶ 50); and reviewed (unspecified) investigative materials, consulted (unspecified) City administration, referred computer-access allegations to prosecutors, and terminated Plaintiff despite knowing (unspecified) exculpatory information (Doc. 37, ¶ 74).

For Plaintiff's First Amendment retaliation claim (Count 1), he alleges retaliatory actions that occurred when *both* De Leon and Neece were in office—therefore July 2, 2019 at the latest. Plaintiff further notes that the alleged retaliatory actions by Chief Sheldon was taking employment

actions and "referring computer-access accusations"—all of which occurred in 2019 or prior. Therefore, limitations bar Plaintiff's First Amendment claims, which accrued in 2019 or before.

Regarding Plaintiff's fabrication and misrepresentation of evidence (Count 3), any such accrual also occurred in 2019 or before, as Plaintiff acknowledges that he was arrested, charged, and criminal proceedings commenced in 2019. Therefore, limitations bars Plaintiff's Count 3.

Regarding Plaintiff's stigma plus claim (Count 4), Plaintiff judicially admits that "[t]he accusations were made in connection with Plaintiff's employment discipline and termination" and that in response he "suffered a tangible alteration of legal status through demotion, suspension, termination, arrest, and loss of employment benefits." (Doc. 37, ¶¶ 115-116). As such, Plaintiff's stigma plus claims would have accrued, if at all, at the time of his 2019 termination and are barred by limitations.

Plaintiff may argue that limitations for his malicious prosecution claims (Count 2) [4] did not accrue until the criminal charges resulted in his favor. As discussed below, Plaintiff is not saved by the delayed limitations period on his malicious prosecution claims. At the hearing in this case, Plaintiff suggested that all his theories should be saved by the malicious prosecution limitations for his second set of criminal charges—essentially that he can now litigate more than seven (7) years back because of one set of criminal charges being dismissed in 2025. When asked for any authority to support such argument, Plaintiff's counsel could identify none. And none exists. Malicious prosecution, a claim that did not exist in this Circuit until 2022, is its own independent cause of action, with its own limitations period. A malicious prosecution claim timely asserted does not allow a Plaintiff to piggyback other claims that would have been barred, as a matter of

[4] Plaintiff also titles his "Count 2" malicious prosecution claim to include unlawful arrest. Any arrest theory asserted outside of malicious prosecution would have accrued when he was arrested—which Plaintiff admits occurred in 2019.

law. *See, e.g., Davis v. Warren*, 173 F.4th 566, 572 (5th Cir. 2026) (noting underlying civil rights claims such as unlawful arrest accrue and are held to ordinary limitations periods, notwithstanding a malicious prosecution claim that may not accrue until later—only the malicious prosecution claim would survive limitations). In *Harris v. Rivera*, No. 3:11-CV-3013-D, 2013 WL 246709, at *6 (N.D. Tex. Jan. 23, 2013) the district court also discussed this issue, noting that in *Wallace v. Kato,* 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007);

> The Court declined to hold that, in circumstances where a § 1983 claim accrues *before* a criminal conviction is set aside (at which point the plaintiff would be able to file a malicious prosecution claim), the statute of limitations on the already-accrued § 1983 claim is tolled until the criminal conviction is set aside. *Id.* at 394–95. Instead, it held that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 397.

*Harris*, at *6. At best, Plaintiff can argue his second set of charges—the use of Association funds brought by the Association—could survive limitations only on a singular malicious prosecution claim. All his other claims fail.

Chief Sheldon asks the Court to take judicial notice that the first set of Plaintiff's criminal charges (computer security breach relating to his City employment) terminated on September 20, 2019—before Plaintiff's termination and well beyond any limitations period. *See The State of Texas vs. Carlos A. Elizondo*, Cause No. 2019-DCR-1547-A, 107th Judicial District, Cameron County, Texas; and (Doc. 9-8 (Exhibit 7). Plaintiff also concedes that the criminal charges the City Defendants were involved in were dismissed in September 2019. (Doc. 37, ¶ 101). Therefore, Plaintiff cannot assert a malicious prosecution claim as to the first set of criminal charges relating to computer security breaches, as limitations ran on any such claims in 2021. Not only is this

beyond limitations, but the cause of action did not exist at that time, providing another reason Plaintiff fails to state a claim on this theory.

Plaintiff's second set of criminal charges related to his alleged use of Brownsville Firefighters' Association funds and included theft by a public servant and misappropriation of fiduciary property charges. Those charges existed as of 2019, when the Thirteenth Court of Appeals considered appellate issues related to same. *Elizondo v. State*, No. 13-18-00309-CR, 2019 WL 3820413, at *1 (Tex. App.—Corpus Christi-Edinburg, Aug. 15, 2019). In fact, Plaintiff concedes those charges commenced in 2017. (Doc. 37, ¶¶ 48-49).

Therefore, the allegations of retaliation, withholding of evidence, and related allegations occurred outside of the limitations period for even the second set of charges. Plaintiff judicially admits that those charges were advanced by the Association (Local 970) (Doc. 37, ¶¶ 48-50). Plaintiff does not allege any basis that clearly established law would have required Chief Sheldon to involve himself in a process in which a District Attorney advanced charges and a grand jury indicted. Plaintiff's malicious prosecution claim relating to the second set of charges also fails for the other reasons stated herein. This includes that qualified immunity exists for any malicious prosecution claim because the law regarding malicious prosecution claims was not clearly established at times for any potential alleged actions. *Espinal v. City of Houston*, 96 F.4th 741, 748–49 (5th Cir. 2024); *see also Green v. Thomas*, 129 F.4th 877, 885-86 (5th Cir. 2025).

Finally, the limitations for a federal Section 1983 conspiracy claim (Count 5), which Plaintiff adds in his First Amended Complaint, is also governed by a two-year limitations period, that accrues based on the alleged overt acts of the defendants. *Harris*, 2013 WL 246709, at *8 (citing *Piotrowski*, 237 F.3d at 576 and *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987)). As noted above, to the extent the Court concludes that Plaintiff alleges any overt acts by Chief Sheldon

regarding a conspiracy, those occurred in 2019 or before. Therefore, Plaintiff's newly added Section 1983 conspiracy claim also fails based on limitations, as do all other claims. The Court should dismiss all City Defendants based on limitations.

**B. *RES JUDICATA*/COLLATERAL ESTOPPEL.**

If any of Plaintiff's claims survive limitations, *res judicata* and collateral estoppel should then bar Plaintiff's claims. *Res judicata* and collateral estoppel are defenses that can be resolved through a Rule 12(b)(6) motion. *Smith v. Waste Mgmt., Inc.,* 407 F.3d 381, 386–87 (5th Cir.2005).

The preclusive effect of a prior judgment is determined by the law of the state that issued the decision. *Cox v. Nueces Cnty., Tex.*, 839 F.3d 418, 420–21 (5th Cir. 2016) ("Because the claimed preclusive effect arises from a state-court judgment, we apply Texas law to determine whether *res judicata* is applicable."). In Texas, a party seeking to invoke *res judicata* must prove the following three elements: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); *see also Merrill v. McKinney ISD*, No. 4:24-CV-442, 2025 WL 1688327, at *4 (E.D. Tex. June 16, 2025).

Chief Sheldon asks the Court to take judicial notice of the civil service commission proceeding that adjudicated Plaintiff's termination—*In re Civil Service Appeal of Carlos Elizondo vs. City of Brownsville, Texas*. This proceeding included a two-day evidentiary hearing that included testimony and exhibits and resulted in a finding that "the factual allegations contained in the Notice and Order of Indefinite suspension are true and that these facts constitute violations of the rules, regulations, and policies as specified in the Notice and Order of Indefinite Suspension dated October 17, 2019." (Doc. 9-2 (Exhibit 1)). To answer the Court's inquiry at the hearing,

yes, the parties introduced exhibits at that proceeding—the City 48 exhibits and Plaintiff, by and through his counsel, 4 exhibits.

Chief Sheldon also asks the Court to take judicial notice of the district court proceeding that considered Plaintiff's appeal and held against Plaintiff. *See Carlos Elizondo v. City of Brownsville*, Cause No. 2019-DCL-07015-1; 445th Judicial District, Cameron County, Texas. Plaintiff did not appeal the final judgment entered in that case. (Doc. 9-3 (Exhibit 2)).

There is no dispute of a final judgment. And while Chief Sheldon was not a named party to the prior state court proceeding, he was the Fire Chief who terminated Plaintiff and therefore should stand in privity with the City of Brownsville for claims relating to the termination, factual basis and Plaintiff's arguments as to reasons to support the termination, and other matters asserted in this case.

Plaintiff not only could have but was required to bring **all** claims he asserts here in the prior state court proceeding, which commenced as his appeal of the civil service commission decision to uphold the termination. A state court decision reviewing an administrative proceeding can serve as *res judicata* for federal claims. *See, e.g., Hughes v. Arveson*, 924 F. Supp. 735 (M.D. La. 1996) (federal claims arose out of the same transaction as those litigated on the state level).

In *Cox*, cited *supra*, the Fifth Circuit affirmed a district court's dismissal, on *res judicata* grounds, of First Amendment retaliation claims that arose out of two civil service employees' county employment. As the Fifth Circuit noted, "[i]t has been well established for more than twenty years that plaintiffs in Texas are required to bring, in the initial suit, *all possible claims arising out of the same 'transaction.'*" *Cox*, 839 F.3d at 421 (citing *Barr v. Resolution Tr. Corp.*, 837 S.W.2d 627, 630–31 (Tex. 1992)) (emphasis added). "A subsequent suit will be barred if it

arises out of the same subject matter of a previous suit and which through the exercise of diligence[] could have been raised in a prior suit." *Id.*

Relevant to this case, *Cox* expressly rejected an argument that *res judicata* does not apply to substantive claims when the state court proceeding is a substantial evidence review of a civil service commission's decision—the exact situation before this Court. *Cox*, at 421. Plaintiff's Cameron County district court matter, which he initiated, included a substantial evidence review appeal, but that did not preclude Plaintiff asserting his other claims. Rather, Plaintiff was required to do so. As the Fifth Circuit confirms "*Texas precedent makes clear that constitutional claims can and should be brought in state-court reviews of civil service commission findings*." *Cox, at* 421 (emphasis added).

Indeed, Plaintiff had to raise *all claims* in his state court proceeding that arose from allegations related to his employment and termination, including that the internal audit and criminal charges against him were improperly initiated and prosecuted to support his termination, and any other matters that relate to his employment, the investigations into Plaintiff's conduct, and the criminal proceedings that commenced. *Id.* Plaintiff cannot now, approaching seven years later, seek to relitigate his termination, the alleged reasons for termination to include his allegations that investigations and criminal proceedings were wrongfully initiated to support the termination, and his claimed entitlement to pay and benefits relating to his employment—relief he seeks here.

All Plaintiff's claims arise from the same subject matter relating to Plaintiff's termination, the alleged initiation of and participation in the criminal charges to allegedly support the termination, the alleged due process entitlements relating to his termination and criminal proceedings, and all other facts that support Plaintiff's claims before the Court. The Court should dismiss Plaintiff's claims, as such claims and relief are barred by *res judicata* and collateral

estoppel. *Cox, at* 421*; see also Cooper v. City of Dallas*, 2008 WL 3380554 (N.D. Tex. Aug. 11, 2008) (res judicata foreclosed federal claims when employee did not raise all claims related to the transaction in an employment appeal to the Dallas Civil Service Commission).

### C. Plaintiff's Pleading Fails to State a Viable Claim Against Chief Sheldon or Overcome His Qualified Immunity.

Chief Sheldon asserts his qualified immunity through this motion to dismiss. *Iqbal*, 556 U.S. at 672-75 (qualified immunity raised in a motion to dismiss) and *Carswell v. Camp*, 37 F.4th 1062 (5th Cir. 2022) (Fifth Circuit approving same). Importantly, *Plaintiff bears the burden of negating* Chief Sheldon's qualified immunity defense. *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). Plaintiff fails to plead facts against Chief Sheldon sufficient to establish a constitutional violation, much less to show that Chief Sheldon violated a clearly established right based on "controlling authority."

#### 1. Qualified Immunity Standard of Review

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that the plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212

(5th Cir. 1989). The Court may consider the two prongs of the qualified immunity analysis in either order. *Pearson v. Callahan*, 555 U.S. 223 (2009).

For a right to be "clearly established," that right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639-40. In *Harlow*, the Supreme Court explained that a key question is "whether that law was clearly established at the time an action occurred," because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. If officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

According to the *en banc* Fifth Circuit, to be clearly established, the law must meet the following test:

> When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that "every 'reasonable official would understand that what he is doing violates [the law].'" To answer that question in the affirmative, we must be able to point to controlling authority—or a "robust 'consensus of persuasive authority'"—that defines the contours of the right in question with a high degree of particularity.
>
> Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established. This is true even when the circuit split developed after the events in question. As the Supreme Court explained, "if judges thus disagree on a constitutional question, it is unfair to subject [government officials] to money damages for picking the losing side of the controversy."

*Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011, *en banc*) (internal citations omitted). Clearly established law is not determined "at a high level of generality." *Ashcroft*, 563 U.S. at 742. Rather, the critical analysis is "whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (emphasis in original).

The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question *beyond debate*. *White v. Pauly*, 580 U.S. 73, 79 (2017). That is, the clearly established law must be particularized to the facts of the case. *Id.* Thus, failure to identify a case where an employee or official acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.*; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

Even "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the official could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

If multiple defendants are alleged to have acted in unison, the Court must address the actions of each *individually* to determine whether qualified immunity applies. *Cass v. City of Abilene*, 814 F.3d 721, 730-31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999). "[Q]ualified immunity claims should be addressed separately for each individual defendant." *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) (quoting *Kitchen v. Dallas County*, 759 F.3d 468, 480 (5th Cir. 2014)).

**2. Plaintiff Fails to Allege Any Controlling Authority to Overcome Chief Sheldon's Qualified Immunity**

Chief Sheldon's qualified immunity requires that Plaintiff meet *Plaintiff's* burden to cite "controlling authority" that clearly, and specifically, addresses Chief Sheldon's conduct and each claim at issue. *Morgan*, at 371-72. "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732-33 (5th Cir. 2016)). Plaintiff has not met this burden—he cites to *no* controlling authority addressing Plaintiff's allegations against Chief Sheldon with requisite specificity.

In *Jones v. Hosemann*, 812 Fed. Appx. 235 (5th Cir. 2020) the Fifth Circuit addressed a former government employee asserting Section 1983 race discrimination claims and noted "[i]t is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The Plaintiff must plead that *each defendant individually engaged in actions that caused the unconstitutional harm*." *Id.*, at 238-39 (emphasis added).

Plaintiff's allegations are insufficient even if qualified immunity did not apply but are even more deficient in the context of a qualified immunity analysis. Plaintiff's factual allegations against Chief Sheldon fail to meet the pleadings standards of *Iqbal* and *Twombly*, much less satisfy Plaintiff's burdens to adequately address Chief Sheldon's qualified immunity defense. Therefore, even if Plaintiff had asserted his Section 1983 claims within the statute of limitations, and they were not barred by *res judicata* and collateral estoppel, the Court should still dismiss Plaintiff's claims against Chief Sheldon under FRCP 12(b)(6).

**a. PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS.**

In addition to the other reasons discussed above, Plaintiff also fails to state a plausible First Amendment retaliation claim for the first qualified immunity prong. For a First Amendment

retaliation claim, Plaintiff must sufficiently allege that (1) he was "engaged in constitutionally protected activity," (2) Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) adverse actions were substantially motivated against his exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

To attempt to save his First Amendment claim, in addition to his prior allegations of refusing to engaged in conduct, Plaintiff now seeks to allege that he told the two Commissioner Defendants that he voiced opposition and told Defendants he could not do what they were asking to do. (Doc. 37, ¶ 35). But nowhere does Plaintiff allege any facts that Chief Sheldon was ever aware of such, and Plaintiff certainly does not allege Chief Sheldon had knowledge and used that to inform any decisions he made. This alone negates Plaintiff's First Amendment claim against Chief Sheldon.

Further, Plaintiff continues to base his First Amendment retaliation claims on his alleged actions in refusing to engage in conduct, which fails to allege protected First Amendment activity to support a retaliation claim. *See, e.g., Boisseau v. Town of Walls, Miss.,* 138 F. Supp. 3d 792, 802 (N.D. Miss. 2015) (rejecting a plaintiff's act of refusing to "fix" a DUI charge as First Amendment-protected activity.) And Plaintiff adding that as part of his refusal he told the two Commissioner Defendants that he opposed their requests (again, information Plaintiff does not even allege or imply that Chief Sheldon knew off) does not transform this case into one involving protected public speech.

Moreover, for the theories that relate to the initiation of criminal charges, to prevail on his claim Plaintiff carries the burden of affirmatively negating probable cause. *Nieves v. Bartlett*, 587 U.S. 391, 403-404 (2019). Probable cause requires only "a probability or substantial chance of

criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n. 13 (1983). Probable cause "exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Spiller v. City of Texas City Police Dept.*, 130 F.3d 162, 165 (1997). A "fair probability" that the suspect has committed a crime is enough to establish probable cause. *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999). The likelihood that he has done so "***need not reach [even] the fifty percent mark***." *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024) (emphasis added).

Plaintiff's complaint and attachments show that there was at least "arguable" basis for the criminal charges. Plaintiff admits that in October 2017 he "was directed not to return to the Department, not to perform official duties except as instructed by Human Resources, and to return City property." (Doc. 37, ¶ 47). Plaintiff was not to perform any duties. But Plaintiff then admits that "after Plaintiff was placed on administrative leave, he continued accessing the Fire Department's emergency reporting system...." (Doc. 37, ¶¶ 55, 57). Further, he attaches Exhibit A to his complaint, which contains a detailed discussion of the background facts leading to Plaintiff being charged for improperly accessing and utilizing a legally protected, confidential, and limited access software application, on at least 47 occasions—while admittedly told to not perform any job duties. (Doc. 37-1, ¶¶ 7-21). Plaintiff's own admissions show at least "arguable" probable cause—which again does not even need to reach a fifty percent probability mark.

The same applies to the financial crimes, which: (a) were advanced based on information from someone with knowledge of the Association's finances, which supported probable cause; and (b) were expressly excluded from being involved in any of the City-related matters—*see, e.g.,* Doc. 37-1, ¶11(2).

At best, Plaintiff suggests that for both the computer and the financial charges, the defendants (collectively, and impermissibly) should have addressed potentially defensive arguments for why Plaintiff may not have ultimate guilt for the charges—such as addressing criminal intent and the like. But that is not required by defendants and moreover is not required for a probable cause determination. *Hall v. Trochessett*, 105 F.4th 335, 342 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1173, 221 L. Ed. 2d 255 (2025) ("A defense that may be raised in future proceedings does not vitiate probable cause at the time of arrest.) As the Supreme Court noted more than 47 years ago, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The only question is whether probable cause for the charges existed. Plaintiff's own amended complaint and attachments thereto establish probable cause for the criminal charges against him, and he certainly does not negate probable cause based on same.

For all reasons discussed above in this section, Plaintiff fails to allege protected activity for a violation of the First Amendment and therefore fails to meet his burden to overcome the first prong of Chief Sheldon's qualified immunity defense.

Moreover, Plaintiff fails to cite any controlling authority to show that Plaintiff's purported protected activity was actionable and clearly established as it applies to Chief Sheldon. Importantly, at the hearing held in this case, the Court asked Plaintiff's counsel to identify the authority Plaintiff relied on to establish clearly established law in this case. Plaintiff raised two cases: *Keenan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002) and *Cole v. Carson*, 935 F.3d 444, 452-53 (5th Cir. 2019). Plaintiff cites the same two cases in his amended complaint (page 15), adding no others. Neither case comes close to satisfying Plaintiff's burden on the second prong of the

qualified immunity analysis. *Keenan* involved several officers engaged in a felony traffic stop and deadly conduct charges against Keenan. *Keenan*, at 256. *Cole* involved a deadly force incident in which officers shot a suspect and then allegedly lied about it, and the case involved whether warnings were required for deadly force. Neither dictates anything relating to this case and satisfies the Supreme Court and Fifth Circuit's standards for clearly established law. Therefore, Plaintiff fails to meet his burden as to the second prong of the qualified immunity defense.

**b. PLAINTIFF DOES NOT ADEQUATELY ALLEGE A VIOLATION, MUCH LESS SHOW THAT MALICIOUS PROSECUTION LAW WAS CLEARLY ESTABLISHED AT THE RELEVANT TIMES.**

Plaintiff does not dispute that he engaged in the conduct that he was indicted for regarding the computer access charges. (Doc. 37 and Exhibits A and B therefore). Plaintiff's admitted use of computer systems after Plaintiff was suspended and placed on leave (and told to turn in his keys, identification cards, badges, and any other equipment belonging to the City and to not fulfill any of the official duties of his position) alone establishes probable cause for the first set of charges. And probable cause negates his malicious prosecution claims.

Moreover, Plaintiff fails to allege a constitutional violation because for both sets of criminal charges, as grand juries indicted Plaintiff and those indictments break the causation chain for any alleged lack of probable cause. The Court can take judicial notice of this fact. "If facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010). In *Cuadra*, the Fifth Circuit affirmed a district court's dismissal of Section 1983 claims against a school district and several school district personnel after indictment following a student drop out

report. *Id*., at 808. In doing so, the Fifth Circuit rejected the plaintiff's generalized allegations of "taint." *Id*., at 813.

Here, Plaintiff alleges that Defendants failed to raise potentially defensive arguments to negate Plaintiff's criminal guilt—but as discussed above, that is not considered for probable cause determination and there certainly is no clearly established law cited otherwise. Accordingly, Plaintiff fails to establish a constitutional violation for any malicious prosecution claim. *Espinal*, 96 F.4th at 748–49.

Furthermore, for qualified immunity purposes, even if Plaintiff had alleged sufficient facts against any individual defendant, qualified immunity still precludes his malicious prosecution claims because the law regarding malicious prosecution claims was not clearly established at the relevant times and therefore qualified immunity bars the claims. *Espinal,* 96 F.4th at 748–49.

In *Espinal*, the Fifth Circuit explained that "[f]rom 2003 to 2021, our court "explicitly denied the possibility of a constitutional malicious prosecution claim." 96 F.4th at 748 (citations omitted). Then, in 2023, following *Thompson v. Clark*, 596 U.S. 36, 42 (2022), the Fifth Circuit "reinstated" the malicious prosecution standard. *Id*. *Espinal* found that even if the plaintiff in that case had adequately alleged influence of the grand juries' indictments (which the plaintiff had not), Espinal was arrested and indicted in 2020, when constitutional malicious prosecution claims did not exist in the Fifth Circuit. Id. Therefore, the defendants were entitled qualified immunity from the malicious prosecution claims. *Id*.

*Espinal* dictates the same result in this case. As noted above, Plaintiff concedes the first set of charges ended in a jury verdict in September 2019. *See The State of Texas vs. Carlos A. Elizondo*, Cause No. 2019-DCR-1547-A, 107th Judicial District, Cameron County, Texas; *see also* Doc. 9-8 (Exhibit 7). Also cited *supra*, the second set of charges included indictments in at least

2019, as indicated by Plaintiff's appeal of those charges. *Elizondo v. State*, No. 13-18-00309-CR, 2019 WL 3820413, at *1 (Tex. App.—Corpus Christi-Edinburg, Aug. 15, 2019). Therefore, any allegations Plaintiff can make as to any malicious prosecution theories occurred in 2019 or before.

Plaintiff cannot meet his burden to show that the clearly established prong of Chief Sheldon's qualified immunity defense is satisfied for his malicious prosecution claims. As a matter of law, the law regarding malicious prosecution claims was not clearly established at the relevant time for any even potentially alleged actions by Defendants. *Espinal*, 96 F.4th at 748–49; *see also Green v. Thomas*, 129 F.4th 877, 885-86 (5th Cir. 2025) (finding qualified immunity based on lack of clearly established law for 2020 arrest and indictment); and *Reyes v. Greer*, 686 F. Supp. 3d 524 (S.D. Tex. 2023) (finding qualified immunity on the clearly established prong for malicious prosecution claims based on 2021 charges and indictment). The Court should dismiss Plaintiff's malicious prosecution claims against Chief Sheldon as a matter of law.

### c. Plaintiff Does Not Plead a Stigma Plus Due Process Claim.

Plaintiff also fails to state a plausible "stigma plus" due process claim and therefore fails to overcome the first prong of Chief Sheldon's qualified immunity defenses on that theory. A plaintiff bringing stigma plus claim must establish "the infliction of a stigma on the person's reputation by a state official" plus "an infringement of some other interest." *Adams v. Walker*, No. CV 20-2794, 2025 WL 1370453, at *3 (E.D. La. May 12, 2025) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 935-36 (5th Cir. 1995)).

For the infringement of other interest requirement, Plaintiff alleges that he "suffered a tangible alternation of legal status through demotion, suspension, termination, arrest, and loss of employment benefits" and that such was "made in connection with Plaintiff's employment discipline and termination." (Doc. 37, ¶¶ 115-116). The Fifth Circuit rejects that such employment

allegations support the infringement element of a stigma plus claim. "Neither harm to reputation nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries." *Does 1-7 v. Abbott*, 945 F.3d 307, 313 (5th Cir. 2019) (quoting *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996) (citing *Siegert v. Gilley*, 500 U.S. 226, 233–35 (1991))).

Additionally, as discussed above, the Brownsville Civil Service Commission held a two-day hearing consisting of numerous witnesses testifying (Plaintiff declined despite the Commission's request) and exhibits offered to address the issues Plaintiff claims he was denied due process on.[5] The Court can take judicial notice of the hearing at which the Plaintiff had the opportunity for a name-clearing opportunity. *See Carlos Elizondo v. City of Brownsville*, Cause No. 2019-DCL-07015-1; 445th Judicial District, Cameron County, Texas. The existence of the evidentiary hearing at which Plaintiff's termination and related issues were addressed negates Plaintiff's stigma plus claim, as the hearing constitutes due process and provided Plaintiff with any desired name clearing hearing.

For these reasons, in addition to the other deficiencies, Plaintiff fails to allege a qualifying infringement of other interest and fails to state a stigma plus due process claim to establish a violation under the first prong of Chief Sheldon's qualified immunity defenses. Moreover, Plaintiff fails to cite any controlling authority to show that Plaintiff's alleged infringement was actionable and clearly established for qualified immunity purposes.

#### d. SECTION 1983 CIVIL CONSPIRACY.

Plaintiff's federal conspiracy claims against Chief Sheldon fails for the same reasons discussed above on the substantive claims upon which he bases his alleged conspiracy theory.

---

[5] Plaintiff concedes his stigma plus claim is based on allegations that "were publicly disseminated in connection with Plaintiff's termination." (Doc. 1-3, ¶ 6.29).

"[T]o prevail on a section 1983 conspiracy claim, a plaintiff must establish: (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). To avoid dismissal, a plaintiff first must show "an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995); *see also Morales v. Carrillo*, No. EP-19-CV-217-PRM, 2021 WL 664854, at *10 (W.D. Tex. Feb. 19, 2021) ("the Court must first identify a violation of clearly established federal law"). For the reasons above, including but not limited to limitations, res judicata, collateral estoppel, and failure as to qualified immunity, Plaintiff also fails to allege a federal conspiracy claim.

## IV. CONCLUSION AND PRAYER

For the foregoing reasons, the Court should dismiss Plaintiff's claims against Chief Jarrett Sheldon in their entirety, including based on his qualified immunity defense.

WHEREFORE, PREMISES CONSIDERED, Jarrett Sheldon prays that the Court dismiss Plaintiff's claims against him in their entirety and with prejudice, enter judgment that Plaintiff take nothing against Jarrett Sheldon, assess costs against Plaintiff, and award Jarrett Sheldon all other relief to which he may show himself entitled.

Respectfully submitted,

*/s/ Kevin M. Curley*
**KEVIN M. CURLEY**
kevin@txmunicipallaw.com
*Attorney-In-Charge*
State Bar No. 24047314
Southern District Admission 3/1/2007
**MESSER FORT, PLLC**
6371 Preston Road, Suite 200
Frisco, TX 75034
972.668.6400 – Telephone
**ATTORNEY FOR DEFENDANT JARRETT SHELDON**

**CERTIFICATE OF SERVICE**

A copy of the foregoing was provided to all counsel of record in accordance with the Federal Rules of Civil Procedure by ECF filing on the 9th day of October 2026.

*/s/ Kevin M. Curley*
**KEVIN M. CURLEY**