**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| CARLOS ALBERTO ELIZONDO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:26-cv-00491 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BROWNSVILLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT BROWNSVILLE FIREFIGHTERS ASSOCIATION LOCAL 970's MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Brownsville Firefighters Association Local 970 (hereinafter "Union" or "Local 970"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Plaintiff's claims against it in their entirety.

## I. INTRODUCTION

On March 31, 2026, Plaintiff filed suit against the City of Brownsville and various City officials (the "City Defendants") and Local 970 in Texas state court. The City Defendants removed the case to this Court on May 1, 2026 (Doc. 1), and Local 970 timely consented to the removal. (Doc. 17). The Union and the City Defendants each filed motions to dismiss Plaintiff's Complaint. (Docs. 9-11, 18). After hearing oral argument on the respective motions, the Court granted Plaintiff leave to amend his Complaint. *See* Doc. 36. Plaintiff subsequently filed his First Amended Complaint ("FAC"), the operative pleading in this case. (Doc. 37).

## II. RELEVANT FACTUAL BACKGROUND

In the FAC, Plaintiff brings six claims alleging various federal civil rights and state tort actions against Defendants. The relevant facts as alleged in the FAC are as follows. Before his termination, Plaintiff was employed by the Brownsville Fire Department for approximately

nineteen years, at one point serving as the Chief of the Department. Doc. 37 ¶¶ 26-27. During his tenure as Fire Chief, Plaintiff also served as a Trustee for the Brownsville Independent School District ("BISD") Board of Trustees. *Id.* ¶ 28. Plaintiff currently serves as the President of the Board. *Id.* Plaintiff alleges that while he was Fire Chief, Defendants City Commissioners Cesar De Leon and Ben Neece took advantage of his position as a BISD Trustee, seeking to establish a quid pro quo arrangement in which Plaintiff would use his role to advance their private and professional interests. *Id.* ¶¶ 31-33. After Plaintiff refused to cooperate, Defendants began a campaign of retaliation, wrongfully accusing him of misconduct to initiate criminal proceedings against him and ultimately have him terminated from the Brownsville Fire Department. *Id.* ¶¶ 34-37.

Specifically, Plaintiff alleges that the City Defendants commissioned an audit to investigate his routing of non-emergency calls to a private ambulance company. He claims that, despite knowing that Plaintiff did not financially benefit from this arrangement and in fact had the City Manager's approval to route calls to the private ambulance company, the City Defendants, together with Local 970, used the results of the audit as a pretext to fire Plaintiff and initiate criminal proceedings against him. *Id.* ¶¶ 38-44. Plaintiff further alleges that Local 970's then-president, Jorge Lerma, "worked directly with [Fire Chief] Sheldon and the City of Brownsville, through the urging of [Commissioners] Neece and De Leon," to push charges of theft and misappropriation of union political action committee ("PAC") funds against Plaintiff. *Id.* ¶ 50. Plaintiff alleges that Lerma ultimately told Defendant Sheldon that he was mistaken about the identity of the individual who improperly used the Union's funds, but that Sheldon nonetheless failed to relay this information to the Cameron County District Attorney's office or the grand jury to exculpate Plaintiff. *Id.*; *see also id.* ¶ 54 ("City officials referred, supported, or ratified criminal allegations

against Plaintiff while failing to fairly disclose material information concerning City knowledge and authorization of the ambulance practices and Local 970's improper allegations of theft against Plaintiff.").

Plaintiff also alleges that, after being placed on administrative leave, he continued accessing the Fire Department's emergency-reporting system to "simply monitor emergency operations in anticipation of returning to work," having never been told that his access to the system was restricted or revoked. *Id.* ¶¶ 55-56. However, Chief Sheldon, with the encouragement of Local 970 and the other Defendants, referred Plaintiff to the DA's office to be prosecuted for computer security offenses. *Id.* ¶¶ 58-60. Plaintiff was ultimately charged with these offenses and tried. *Id.* ¶ 61. A jury acquitted Plaintiff of the charges in September 2019. *Id.* ¶¶ 62, 101.

The following month, in October 2019, Chief Sheldon terminated Plaintiff's employment. *Id.* ¶ 63. Plaintiff alleges that all Defendants encouraged and authorized Chief Sheldon's decision. *Id.* ¶ 64. With respect to the Union's involvement in the alleged retaliation, Plaintiff alleges the following:

> Local 970, through its officers and representatives, including Lerma, supplied complaints and information concerning the PAC account and supported the resulting criminal and employment consequences. They did this knowing that the alleged theft and misappropriation charges were not viable because of a determination that another union member had made the alleged purchases and withdrawals.
>
> Local 970's participation was not limited to neutral labor representation. Its representatives communicated accusations to investigators and prosecutors and supported the effort that resulted in criminal charges against Plaintiff.
>
> Local 970 acted jointly with City officials regarding the audit, the suspension, the criminal charges, the dismissal, or otherwise reached an understanding with them, to advance criminal and employment consequences against Plaintiff.

*Id.* ¶¶ 75-77.

## III. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a claim must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When considering a Rule 12(b)(6) motion, a court's review is confined to the defendant's conduct as alleged in the complaint, which must be viewed "in the light most favorable to the plaintiff." *Barber v. Rounds*, 169 F.4th 577, 581 (5th Cir. 2026) (citing *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015)). However, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, "something beyond the mere possibility of [relief] must be alleged..." *Twombly,* 550 U.S. at 557-58 (internal citations omitted).

## IV. ARGUMENT

Plaintiff's FAC asserts six causes of action: First Amendment retaliation (Count I), Fourth Amendment malicious prosecution and unlawful seizure (Count II), fabrication or material misrepresentation of evidence (Count III), Fourteenth Amendment liberty interest (stigma plus claim) (Count IV), federal conspiracy (Count V), and malicious prosecution under Texas state law (Count VI). *See generally* Doc. 37. Plaintiff asserts Count II, Count V, and Count VI against the Union.

Each of these claims must be dismissed pursuant to Rule 12(b)(6), as the allegations in the FAC, taken as true, do not state a claim for relief against the Union. As an initial matter, the

allegations based on the computer security breach prosecution, which terminated in Plaintiff's favor more than six (6) years ago, are unquestionably barred by the applicable statute of limitations and therefore cannot form the basis of any of Plaintiff's claims against the Union.

Further, each of the claims against the Union is fatally compromised by Plaintiff's own allegations. The FAC alleges that after Local 970 initially believed Plaintiff was responsible for misappropriating the PAC funds, the Union later learned that another individual had made the transactions, and the Union **communicated that information** to Chief Sheldon. Plaintiff specifically alleges that it was Chief Sheldon who failed to relay that information to prosecutors. If the Union corrected the mistaken identification and provided the exculpatory information, as Plaintiff himself alleges, Plaintiff's own pleading confirms that any continuation of the prosecution resulted from decisions made by City officials or prosecutors – not Local 970. Thus, on their face, these allegations defeat Plaintiff's theories of malicious prosecution, conspiracy, and causation.

Plaintiff's allegations also insulate Local 970, a private actor, from liability under § 1983. Plaintiff attempts to advance a "joint action" theory of liability, alleging that the Union engaged in state action by "conspiring" with City officials to violate his constitutional rights. But, like the factually deficient initial Complaint, the FAC fails to include any allegations regarding **what** Local 970 supposedly did after learning Plaintiff was not responsible for the misappropriation of PAC funds, **who** within Local 970 allegedly continued the prosecution efforts, **how** Local 970 allegedly procured further proceedings after disclosing the exculpatory information, or **why** responsibility should remain with the Union once the alleged error was corrected. As such, Plaintiff fails to state any claims for relief against the Union, and the FAC must be dismissed in its entirety as to Local 970.

**A. Plaintiff's FAC Fails to State a Claim Against the Union for Malicious Prosecution and Unlawful Seizure Under § 1983.**

In Count II of his FAC, Plaintiff asserts a claim for Fourth Amendment malicious prosecution and unlawful seizure, pursuant to 42 U.S.C. § 1983, against the City of Brownsville and Local 970. Doc. 37 ¶¶ 96-103. Plaintiff alleges that these Defendants "caused criminal proceedings to be initiated or maintained by supplying false, materially misleading, and incomplete information to investigators and prosecutors," and that, as a result, Plaintiff was "arrested, subjected to criminal process, required to defend felony charges, and deprived of liberty." *Id.* ¶¶ 97, 100.

Specifically, Plaintiff alleges that Commissioners Neece and De Leon, the Brownsville City Commission, City Manager Charlie Cabler, and Chief Sheldon "conspired, under the direction of Neece and De Leon to retaliate against Plaintiff and create false and materially misleading arrest warrant affidavits and failed to correct the facts on alleged misspending and failed to correct the fact that the City had not instructed Plaintiff to not log into his computer, and as a result a grand jury indicted Plaintiff based on that fraud." *Id.* ¶ 103. Plaintiff claims Local 970 maliciously initiated two criminal proceedings against him: (1) felony computer security breach charges and (2) felony theft by a public servant and misapplication of fiduciary property charges. *Id.* ¶¶ 101-103.

Plaintiff's § 1983 malicious prosecution claim against Local 970 is fatally deficient for several reasons, which are addressed in turn below.

1. <u>The Allegations Based on the Computer Security Breach Prosecution are Time-Barred.</u>

First, the FAC alleges that the computer security breach prosecution, one of the two prosecutions the Union allegedly maliciously initiated against Plaintiff, terminated in Plaintiff's

favor through acquittal in September 2019. *Id.* ¶ 101. This allegation clearly establishes that the malicious prosecution claim is time-barred.

The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (citing *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993)). Texas has a two-year statute of limitations for personal injury claims. *Id.* (citing *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)). Because Plaintiff filed his Complaint in March 2026, more than **six years** after he was acquitted of the computer security breach charges, his malicious prosecution claim cannot rest on that allegation. Accordingly, this claim must be dismissed with prejudice as to the computer security breach prosecution. *See Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.").

2. The Allegations in the FAC Fail to Establish State Action on the Part of the Union.

The allegations based on the felony theft and misappropriation prosecution, while timely, do not save Plaintiff's claim against the Union. To state a claim for relief under § 1983, a plaintiff must plead two allegations: first, that some person has deprived him of a federal right, and second, that the person who deprived him of that right acted under color of state or territorial law. *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020). While private action may be deemed state action for purposes of § 1983, it is only so "where the challenged conduct may be 'fairly attributable to the State.'" *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)).

Plaintiff's FAC proceeds on the theory that the Union, a private entity, is liable under § 1983 based on joint action with the City and its officials. *See* Doc. 37 ¶ 77 ("Local 970 acted jointly with City officials regarding the audit, the suspension, the criminal charges, the dismissal, or otherwise reached an understanding with them, to advance criminal and employment consequences against Plaintiff."). To sustain a §1983 claim against a private entity on a joint action theory, the plaintiff must allege facts showing "an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." *Polacek v. Kemper County*, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010).

Here, Plaintiff's allegations are insufficient to state a claim against the Union. The conclusory, formulaic recitations to the joint action standard fail to satisfy the *Twombly-Iqbal* pleading standard. While the FAC repeatedly uses buzzwords such as "conspired" and "acted jointly," Plaintiff never identifies **who** allegedly made the agreement, **when** the agreement was formed, **what** was said, or **what** role Local 970 supposedly played. Nor does Plaintiff set forth any facts demonstrating a meeting of the minds between the Union and the City actors. Without these critical underlying facts, the Union cannot be held liable for state action. *See Woodard v. Tex. Dep't of Fam. & Prot. Servs.*, 2026 U.S. Dist. LEXIS 216107, *49 (E.D. Tex. Aug. 19, 2026) ("'[I]t is not enough merely to recite that there was an agreement or that defendants conspired or acted in concert, for these are *conclusions*, not *facts*.'") (emphasis in original) (quoting *Polacek*, 739 F. Supp. 2d at 952).

Indeed, the **only** specific factual allegations leveled against the Union are that representatives of Local 970 "supplied complaints and communicated with investigators concerning the PAC account and supported the criminal and employment consequences when they

knew their initial allegations against Plaintiff were wrong." Doc. 37 ¶ 123. According to Plaintiff, Local 970 and its representatives:

a. characterized ordinary or disputed account transactions as criminal misappropriation without a sufficient factual basis;

b. failed to provide investigators and prosecutors with material information concerning the authorization, purpose, context, and documentation of the challenged transactions;

c. failed to disclose information concerning the administration and oversight of the PAC account and the absence of reliable evidence establishing that Plaintiff unlawfully converted association funds;

d. relied on speculation and incomplete records while presenting the allegations as established criminal misconduct; and

e. continued to support the investigation and prosecution despite information that undermined the accusations including knowledge that another individual in the union made the alleged improper charges on the union credit card.

*Id.* ¶ 128.

None of these allegations is sufficient to transform the Union into a state actor. Courts have squarely rejected the argument that a private actor may be held liable for § 1983 malicious prosecution under the joint action theory by virtue of furnishing information to the state that is later used in a criminal prosecution – even where the private actor deliberately gives false information to authorities. *See Polacek*, 739 F. Supp. 2d at 953 (collecting cases); *Dubash v. City of Houston*, Case No. 4:23-cv-3556, 2024 U.S. Dist. LEXIS 179049, at *39 (S.D. Tex. Aug. 26, 2024) (quoting *Kahermanes v. Marchese*, 361 F. Supp. 168, 171 (E.D. Pa. 1973)) ("'The deliberate giving of false information by an individual to a police officer to cause the arrest of another does not give rise to a cause of action under the Civil Rights Acts.'"). Because Plaintiff has not plausibly pleaded state action on the part of the Union, he fails to state a claim under § 1983.

3. Plaintiff Fails to Plausibly Plead the Causation Element of a § 1983 Malicious Prosecution Claim.

Even assuming *arguendo* that the Union's alleged conduct satisfies the state action requirement, Plaintiff nonetheless fails to state a claim against the Union. A plaintiff asserting a § 1983 malicious prosecution claim must plead facts sufficient to prove "an unlawful Fourth Amendment seizure and substantiate the following six elements: '(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.'" *Santander v. Salazar*, 133 F.4th 471, 482 (5th Cir. 2025) (quoting *Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023) (internal citation omitted)).

Here, critically, Plaintiff concedes that Local 970's then-president Lerma told the City that it was mistaken about its belief that Plaintiff misappropriated the PAC funds. *See* Doc. 37 ¶ 50 ("*Despite learning from Lerma that a mistake had been made* and that another union member named Marco Longoria was the individual whose credit card/ATM card was the one responsible for the disputed transactions, *Sheldon never relayed this information to the DA's office*.") (emphasis added). Therefore, to the extent that the Union could be said to have initiated Plaintiff's prosecution, Plaintiff himself admits that the Union corrected its misunderstanding, and that it was the City that declined to relay this information to the prosecutor, ultimately resulting in a grand jury indictment of Plaintiff.

Given that Local 970 informed Chief Sheldon that another individual was responsible for misappropriating the Union's funds, Plaintiff's own allegations suggest that any failure to disclose that information to prosecutors occurred **after** the Union's involvement, breaking the chain of causation and insulating Local 970 from liability. *See Wilson v. Stroman*, 33 F.4th 202, 208 (5th

Cir. 2022) ("[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."). Therefore, Plaintiff cannot satisfy the causation element as to the Union, and this claim must be dismissed.

**B. Plaintiff Fails to State a Claim for Federal Conspiracy Against the Union.**

Plaintiff next brings a claim against the City Defendants and the Union for civil conspiracy pursuant to §1983. Doc. 37 ¶¶ 119-124. To prevail on a §1983 conspiracy claim, a plaintiff must establish "'(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.'" *Armstrong*, 60 F.4th at 280 (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)).

Plaintiff alleges that Commissioners De Leon and Neece, Chief Sheldon, other City officials, and Local 970 representatives "reached an agreement or understanding to remove Plaintiff, damage his reputation, and justify the removal through criminal accusations and disciplinary proceedings." Doc. 37 ¶ 120. With respect to Local 970's involvement in the purported conspiracy, Plaintiff alleges as follows:

> Local 970 representatives supplied complaints and communicated with investigators concerning the PAC account and supported the criminal and employment consequences when they knew their initial allegations against Plaintiff were wrong. Defendants, Neece, De Leon, the Brownsville city commission/council, City Manager Charlie Cabler, Sheldon and Local 970 conspired, under the direction of Neece and De Leon to create false and materially misleading arrest warrant affidavits and failed to correct the facts on alleged misspending and failed to correct the fact that the City had not instructed Plaintiff to not log into his computer, and as a result a grand jury indicted Plaintiff based on that fraud. Plaintiff is informed and believes, and thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

*Id.* ¶ 123.

This count is based on the same set of facts as Plaintiff's ill-pleaded § 1983 malicious prosecution claim – in essence, that the Union conspired to have Plaintiff terminated and criminally prosecuted by supplying false information to the City that the Plaintiff misappropriated union PAC funds. Plaintiff essentially repackages his malicious prosecution claim as a civil conspiracy claim, but the underlying allegations against the Union are the same. *See generally id.* at 10-13. And again, Plaintiff's allegations – that the Union, based on a mistaken belief, accused Plaintiff of criminal misconduct and subsequently told a City official of its mistake – are not sufficient to bring Local 970 into the ambit of state action. While the FAC alleges in conclusory fashion that the Union conspired with the City to have Plaintiff terminated and criminally prosecuted, it does not allege any facts establishing a specific agreement between Local 970 and any City official, communications supporting such an agreement, dates or circumstances surrounding the alleged conspiracy, or any overt acts committed by Local 970 after it disclosed the exculpatory information to Chief Sheldon.

Indeed, far from demonstrating the requisite "meeting of the minds" between Local 970 and the City, *see Polacek*, 739 F. Supp. 2d at 952, Plaintiff's FAC tacitly acknowledges that the Union in fact did **not** participate in any agreement to violate Plaintiff's civil rights. Rather, the Union explicitly told the City that its initial belief that Plaintiff misappropriated the PAC funds was incorrect. Accordingly, this claim against the Union must also be dismissed for failure to state a claim under Rule 12(b)(6).[1]

[1] As explained above, to the extent that any part of Plaintiff's civil conspiracy claim rests on the allegations surrounding the computer security breach prosecution, such allegations are time-barred and cannot form the basis of the claim.

**C. Plaintiff Fails to Plausibly Plead the Causation Element of his Texas State Malicious Prosecution Claim.**

Finally, Plaintiff seeks to assert a state law claim against Local 970 for malicious prosecution. *See* Doc. 37 ¶¶ 125-137. Plaintiff alleges that the Union "initiated, procured, and/or materially assisted in the initiation and continuation of criminal proceedings against Plaintiff concerning alleged withdrawals or expenditures from Local 970's [PAC] account." *Id.* ¶ 127.[2] This claim suffers from the same fatal defects as Plaintiff's § 1983 malicious prosecution claim and must be dismissed.

Under Texas law, there are seven elements for a malicious prosecution claim: (1) commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff. *Brown v. NationsBank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999) (citing *Richey v. Brookshire Grocery Co.,* 952 S.W.2d 515, 517 (Tex. 1997)).

The second element, causation, is "particularly difficult to establish," as the defendant's "'explicit direction to prosecute an individual must be the determining factor in the official's decision to commence the prosecution.'" *Matthews v. Green*, No. 23-10178, 2024 U.S. App. LEXIS 2732, at *13-14 (5th Cir. Feb. 6, 2024) (quoting *Dangerfield v. Ormsby*, 264 S.W.3d 904, 910-11 (Tex. App.—Fort Worth 2008)). The allegations of the FAC fall far short of meeting this standard.

---

[2] Plaintiff appears to bring his state malicious prosecution claim based solely on the theft and misappropriation prosecution. *See* Doc. 37 ¶ 136.

Nowhere in the FAC does Plaintiff plausibly allege that Local 970's conduct was the determining factor in the prosecutor's decision to initiate or continue criminal proceedings against him. Nor could he. Again, Plaintiff alleges that the Union told Chief Sheldon of its mistaken belief that Plaintiff misappropriated its funds, and that the Chief failed to relay this information to the DA. Thus, on its face, the FAC fails to satisfy the causation element, and this claim must be dismissed under Rule 12(b)(6).

## CONCLUSION

For the reasons stated above, the Court must dismiss Plaintiff's First Amended Complaint against Local 970 in its entirety.

Respectfully Submitted,

*/s/Tamara Y. Imam*
Tamara Y. Imam (*Admitted Pro Hac Vice*)
Mark J. Murphy (*Admitted Pro Hac Vice*)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1620 Eye Street, NW, Suite 700
Washington, DC 20006
timam@mooneygreen.com
mmurphy@mooneygreen.com

*/s/Matt Bachop*
Matt Bachop
Deats Durst & Owen, P.L.L.C.
2901 Bee Caves Rd., Ste. L
Austin, TX 78746
mbachop@ddollaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, a copy of the foregoing Motion to Dismiss was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

*/s/ Tamara Y. Imam*
Tamara Imam