**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED
OCT 23 2026
Nathan Ochsner, Clerk

| | | |
|---|---|---|
| **CARLOS ALBERTO ELIZONDO** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **CITY OF BROWNSVILLE, JARRETT SHELDON, INDIVIDUALLY AND AS FIRE CHIEF FOR THE CITY OF BROWNSVILLE, CESAR DE LEON, INDIVIDUALLY AND AS A BROWNSVILLE CITY COMMISSIONER, THE ESTATE OF BEN NEECE, INDIVIDUALLY AND AS A BROWNSVILLE CITY COMMISSIONER, AND THE BROWNSVILLE FIREFIGHTERS ASSOCIATION LOCAL 970** | § | **CIVIL ACTION NO. 1:26-CV-00491** |

**PLAINTIFF CARLOS ALBERTO ELIZONDO'S RESPONSE IN OPPOSITION TO DEFENDANT JARRETT SHELDON'S SECOND RULE 12(b)(6) MOTION TO DISMISS, INCLUDING BASED ON QUALIFIED IMMUNITY**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Carlos Alberto Elizondo ("Plaintiff" or "Elizondo") files this Response in Opposition to Defendant Jarrett Sheldon's Second Rule 12(b)(6) Motion to Dismiss, Including Based on Qualified Immunity (Doc. 40) (the "Motion"), and respectfully shows the Court as follows.

## I. SUMMARY OF THE RESPONSE

1. Of all the defendants, Chief Sheldon is the one the First Amended Complaint (Doc. 37) ("FAC") most directly ties to the suppression of the truth. The FAC alleges that Sheldon worked directly with Local 970's president to push felony theft charges against Elizondo. FAC ¶ 50. It alleges that Sheldon then learned from that same Union president that "a mistake had been made" and that the disputed transactions were tied to another union member's card. *Id.* Yet Sheldon "never relayed this information to the DA's Office or the grand jury to exculpate Plaintiff." *Id.* The prosecution continued until April 2025. FAC ¶ 68.

2. The Motion raises the same grounds as the other City Defendants' motions. None warrants dismissal of the claims arising from the PAC-fund prosecution.

1. **Limitations.** Claims that challenge the validity of a prosecution, including fabrication of evidence, accrue when the prosecution ends in the plaintiff's favor. *McDonough v. Smith*, 588 U.S. 109 (2019); *Thompson v. Clark*, 596 U.S. 36, 39 (2022). The PAC-fund prosecution ended in April 2025, and Plaintiff sued within one year. FAC ¶ 70. Plaintiff does not pursue Sheldon on claims based solely on the 2019 termination or the computer-access prosecution, and does not oppose dismissal of Count IV (stigma-plus) as to him.

2. **Res judicata.** Sheldon's own Order of Indefinite Suspension, the decision reviewed in the earlier state proceeding, states that it "does not relate to or involve the facts connected with the criminal complaints by the fire union." Doc. 37-1 at 4, ¶ 11(2). Sheldon relies on that same paragraph for the proposition that the financial charges "were expressly excluded from being involved in any of the City-related matters." Mot. at 19. Claims arising from charges his own order excluded, and that had not accrued when the state court ruled in 2022, are not barred.

3. **Qualified immunity.** Long before 2017, the Fifth Circuit held that an officer who "deliberately conceals exculpatory evidence" cannot claim qualified immunity, "for such activity violates clearly established constitutional principles." *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988). Fabricating or materially misrepresenting evidence to bring charges was likewise clearly unlawful. *Cole v. Carson*, 935 F.3d 444, 452–53 (5th Cir. 2019) (en banc). And *Espinal v. City of Houston*, 96 F.4th 741, 748–49 (5th Cir. 2024), on which Sheldon relies, cannot shield his continued suppression of the Marco Longoria information after the Supreme Court decided *Thompson* in April 2022, while the prosecution remained pending for three more years.

3. The Motion should be denied except as to the matters Plaintiff does not contest.

## II. NATURE AND STAGE OF THE PROCEEDING

4. Plaintiff filed this action in the 138th Judicial District Court of Cameron County, Texas, on March 31, 2026, and the City and Sheldon removed it on May 1, 2026. FAC ¶¶ 2, 12–13. After a hearing on Defendants' first motions to dismiss on September 1, 2026, the Court granted Plaintiff leave to amend (Doc. 36), and Plaintiff filed the FAC on September 18, 2026 (Doc. 37). On October 9, 2026, Sheldon filed the present Motion (Doc. 40), and the City, De Leon, and the Estate of Neece filed separate motions (Docs. 41, 42). Local 970 filed its motion on October 16, 2026 (Doc. 44). No scheduling order has been entered and no discovery has occurred.

5. Sheldon was the Brownsville Fire Chief during the events alleged and is sued in his individual capacity. FAC ¶ 8. The FAC asserts against him First Amendment retaliation (Count I),

Fourth Amendment malicious prosecution (Count II), fabrication or material misrepresentation of evidence (Count III), stigma-plus (Count IV), and conspiracy (Count V), all under 42 U.S.C. § 1983. FAC ¶¶ 88–124; Mot. at 1–2.

**III. STATEMENT OF THE ISSUES**

1. Whether claims challenging the theft and misapplication prosecution, which terminated in Plaintiff's favor in April 2025, are timely when Plaintiff sued on March 31, 2026.

2. Whether a 2022 state-court judgment reviewing Sheldon's termination order, which expressly excluded the PAC-fund charges, bars claims arising from those charges that had not yet accrued.

3. Whether the FAC plausibly alleges that Sheldon personally participated in the PAC-fund prosecution and suppressed exculpatory information from the District Attorney and grand jury.

4. Whether the conduct alleged violated clearly established law, including Sheldon's continued suppression after *Thompson v. Clark* was decided in April 2022.

5. Whether the FAC plausibly alleges the absence of probable cause and that the grand jury was tainted.

6. Each issue is reviewed under the standards set out in Part V.

**IV. STATEMENT OF FACTS AS PLEADED**

7. The following facts are drawn from the FAC and its exhibits, which are part of the pleading for all purposes. Fed. R. Civ. P. 10(c); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Exhibit A is Sheldon's own October 17, 2019 Order of Indefinite Suspension (Doc. 37-1) ("Ex. A"). Exhibit B is a collection of contemporaneous news reports (Doc. 37-2) ("Ex. B").

**A. The campaign against Elizondo.**

8. Elizondo was Brownsville's Fire Chief and an elected BISD trustee. FAC ¶¶ 28–29. City Commissioners De Leon and Neece pressured him to use his BISD office for their private benefit, and he refused, telling them "he could not do what they were asking because it involved corruption." FAC ¶¶ 31, 35, 89. The FAC alleges that he was then "retaliated against by Neece, De Leon, the City of Brownsville, Sheldon and Local 970 who conspired to remove him," FAC ¶ 34, and that "De Leon, Neece, Sheldon, and the City of Brownsville, began efforts to remove him

as Fire Chief and damage his professional reputation," with "[a]ll Parties kn[owing] their actions were wrongful." FAC ¶ 37.

9. On September 7, 2017, the City Manager removed Elizondo as Fire Chief and appointed Sheldon interim chief. FAC ¶ 45; Ex. A, Doc. 37-1 at 3, ¶¶ 1, 3. Sheldon was "briefed about a continuing controversy involving former Fire Chief Carlos Elizondo" when he took over. Ex. A, Doc. 37-1 at 3, ¶ 2. On October 9, 2017, "after further consultation with City Manager Cabler," Sheldon placed Elizondo on administrative leave. *Id.* ¶¶ 5–6; FAC ¶ 46.

**B. Sheldon works with the Union to push the PAC-fund charges and uses them against Elizondo.**

10. On or about October 17, 2017, Elizondo was arrested on charges of theft by a public servant and misapplication of fiduciary property concerning Local 970's PAC funds. FAC ¶¶ 48–49. The Union's president, Jorge Lerma, "worked directly with Sheldon and the City of Brownsville, through the urging of Neece and De Leon, to push the Theft and misappropriation of union funds charges against Plaintiff." FAC ¶ 50. Sheldon immediately put the charges to use: "[b]ased on this information," he imposed a temporary suspension without pay "pending the disposition of the criminal theft and misappropriation charges." Ex. A, Doc. 37-1 at 4, ¶ 11.

11.1Sheldon's relationship with Lerma was not arm's-length. While Lerma was the "primary complainant against Elizondo on behalf of the Fire Association," Sheldon was simultaneously "reviewing" an "allegation of policy violation" against Lerma himself. Ex. A, Doc. 37-1 at 4, ¶¶ 13–14; *id.* at 7, ¶ 36(1).

**C. Sheldon learns the accusation is false and buries it.**

12. The disputed PAC transactions were associated with a credit/ATM card issued to another union member, Marco Longoria. FAC ¶ 50. Sheldon learned this directly: "Despite learning from Lerma that a mistake had been made and that another union member named Marco Longoria was the individual who's [sic] credit/ATM Card was the one responsible for the disputed transactions, Sheldon never relayed this information to the DA's Office or the grand jury to exculpate Plaintiff." *Id.* "Despite all of this information, Sheldon, Neece, De Leon, the City of Brownsville, and Local 970 maintained that the theft and misappropriated funds were Plaintiff's fault." *Id.*

13. The FAC alleges that Sheldon terminated Plaintiff "despite knowing exculpatory evidence," FAC ¶ 74; that he and others "conspired . . . to . . . create false and materially misleading arrest warrant affidavits and failed to correct the facts on alleged misspending," so that "a grand jury indicted Plaintiff based on that fraud," FAC ¶ 103; that their "malicious motive . . . led them to withhold relevant information or otherwise misdirect the grand jury by omission

and/or commission," *id.*; and that Sheldon "knowingly fabricated, manipulated, or materially misrepresented evidence concerning . . . PAC funds" and "omitted material facts that undermined probable cause . . . and which mislead officials at the DA's office and the Grand Jury." FAC ¶¶ 106–107.

**D. Sheldon's termination order excludes the PAC-fund charges, and the prosecution ends.**

14. On October 17, 2019, Sheldon issued the Order of Indefinite Suspension. FAC ¶ 63. In it, Sheldon wrote that the Order "does not relate to or involve the facts connected with the criminal complaints by the fire union," that Elizondo "remains under a temporary suspension . . . with respect to those charges," and that Sheldon was "reserving [his] authority . . . to make civil service decisions about allegations of misconduct with respect to the union complaints when the criminal case involving those charges is concluded." Ex. A, Doc. 37-1 at 4, ¶ 11(1)–(3).

15. The theft and misapplication charges were dismissed in April 2025. FAC ¶¶ 68, 102. Sheldon remains the Fire Chief. Mot. at 1. Elizondo sued on March 31, 2026. FAC ¶ 70.

## V. STANDARDS OF REVIEW

**A. Rule 12(b)(6).**

16. A complaint survives a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Plausibility "is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and [are] rarely granted." *Lormand*, 565 F.3d at 232 (citation omitted).

17. Limitations, res judicata, and collateral estoppel are affirmative defenses, Fed. R. Civ. P. 8(c)(1), and support dismissal only where "it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (cited at Mot. at 4). The Court may take judicial notice of the existence of another court's judgment, but not of factual findings in that proceeding for their truth. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830–31 (5th Cir. 1998) (cited at Mot. at 6); Fed. R. Evid. 201(b).

**B. Qualified immunity at the pleading stage.**

18. Once a defendant invokes qualified immunity, the plaintiff bears the burden to show it does not apply. Mot. at 14. At the motion-to-dismiss stage, that burden is met when the complaint pleads specific facts that allow the court to draw the reasonable inference that the

defendant is liable and that defeat a qualified-immunity defense with equal specificity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). The plaintiff need not plead legal authority in the complaint; the clearly-established question is a legal one addressed in briefing. If the Court finds the FAC insufficiently specific, the proper course is to order a tailored reply under Rule 7(a). *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995) (en banc).

19. A right is clearly established when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (cited at Mot. at 15). A case directly on point is not required. *White v. Pauly*, 580 U.S. 73, 79 (2017) (cited at Mot. at 16). Officials "can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). In an obvious case, general constitutional principles give fair warning without a prior case involving similar facts. *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (per curiam). The analysis turns on the conduct alleged, not on the label attached to the cause of action. *Anderson*, 483 U.S. at 640.

## VI. ARGUMENT AND AUTHORITIES

### A. The claims arising from the PAC-fund prosecution are timely.

20. Section 1983 borrows Texas's two-year personal-injury limitations period. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); Mot. at 4. Sheldon's contention that a one-year period governs malicious prosecution, Mot. at 4, is foreclosed by *Owens v. Okure*, 488 U.S. 235, 249–50 (1989), which requires § 1983 claims to borrow the general personal-injury period rather than the period for a specific intentional tort. The point is academic: Plaintiff sued within one year of the April 2025 dismissal. FAC ¶ 70.

21. Sheldon's broader argument is that all of Plaintiff's claims rest on events that occurred while the Commissioners were in office and therefore accrued by 2019 or 2021. Mot. at 6–7. That confuses the timing of a defendant's conduct with the accrual of the plaintiff's claim. A claim accrues when the plaintiff has "a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Claims that challenge the integrity of a criminal prosecution are not complete until the prosecution ends in the plaintiff's favor. *McDonough*, 588 U.S. 109; *Thompson*, 596 U.S. at 39. And Sheldon is not a former Commissioner. He was the Fire Chief throughout the prosecution and remains so today, Mot. at 1, so the Commissioners' terms of office say nothing about when his own conduct ended.

22. Plaintiff does not argue that a timely malicious-prosecution claim can "relate back and save other allegedly related civil rights claims." Mot. at 2. Each claim has its own accrual rule:

- **Count II (malicious prosecution).** Sheldon concedes that a malicious-prosecution claim based on the PAC-fund charges "could survive limitations." Mot. at 9. The "unlawful seizure" in Count II is the seizure pursuant to legal process that is an element of that claim, *Thompson*, 596 U.S. at 42–43; *Manuel v. City of Joliet*, 580 U.S. 357, 368–69 (2017), not a free-standing false-arrest claim governed by *Wallace*. *Cf.* Mot. at 8 n.4.

- **Count III (fabrication of evidence).** Sheldon argues this claim accrued when Plaintiff was "arrested, charged, and criminal proceedings commenced." Mot. at 8. *McDonough* holds the opposite: a fabricated-evidence claim challenging a criminal prosecution does not accrue until the prosecution terminates in the accused's favor. 588 U.S. 109. Count III is timely insofar as it concerns the PAC-fund prosecution. FAC ¶¶ 106–107.

- **Count V (conspiracy).** Sheldon argues the conspiracy claim accrued with each overt act. Mot. at 10 (citing *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987)). But a § 1983 conspiracy is actionable only for the deprivation it causes, *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (cited at Mot. at 25), and where that deprivation is a malicious or fabricated prosecution the claim cannot accrue before the prosecution ends. *McDonough*, 588 U.S. 109. The FAC also alleges that Sheldon "never relayed" the Longoria information to the District Attorney or the grand jury, FAC ¶ 50, a suppression that continued as long as the prosecution did.

- **Count I (First Amendment).** Insofar as Count I rests on retaliatory use of the PAC-fund prosecution, it requires the absence of probable cause, *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006), and accrues on favorable termination under *McDonough*'s reasoning. Plaintiff does not pursue Count I against Sheldon for the 2019 termination or the computer-access referral as independent adverse actions; those events remain admissible as background evidence. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

23. Sheldon also asserts that Plaintiff "was arrested, charged, and criminal proceedings commenced in 2019." Mot. at 8. The FAC alleges the arrest and PAC-fund charges came in October 2017. FAC ¶¶ 48–49. Either way, accrual turns on the April 2025 termination of the prosecution.

24. Plaintiff does not pursue Sheldon on any claim based on the computer-access prosecution, which ended in an acquittal in September 2019. FAC ¶ 101. Count IV is addressed in Part VI.F.

**B. Res judicata and collateral estoppel do not apply; Sheldon's own order excluded the PAC-fund charges.**

25. Texas res judicata requires "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); Mot. at 11.

26. **The decisive fact is in Sheldon's own words.** The civil service appeal and the state-court judgment reviewed Sheldon's October 17, 2019 Order of Indefinite Suspension. Mot. at 11–12. Sheldon wrote in that Order that it "does not relate to or involve the facts connected with the criminal complaints by the fire union," and that he was "reserving [his] authority . . . to make civil service decisions about allegations of misconduct with respect to the union complaints when the criminal case involving those charges is concluded." Ex. A, Doc. 37-1 at 4, ¶ 11(2)–(3). His Motion embraces the point, arguing that the financial charges "were expressly excluded from being involved in any of the City-related matters." Mot. at 19 (citing Doc. 37-1, ¶ 11(2)). Sheldon cannot carve the PAC-fund charges out of the termination proceeding and then argue that claims arising from those charges were part of that proceeding's "transaction." A proceeding that the decision-maker himself said did not involve those charges could not have adjudicated them.

27. **The claims could not have been raised.** The state court entered judgment on February 9, 2022. Mot. at 5. The PAC-fund prosecution was then pending and did not end until April 2025. FAC ¶¶ 68, 102. Claims challenging that prosecution had not accrued, *McDonough*, 588 U.S. 109, and a claim that has not accrued is not one that "could have been raised" in an earlier suit. *Barr v. Resolution Tr. Corp.*, 837 S.W.2d 627, 630–31 (Tex. 1992). A prior judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955).

28. **No privity on these claims.** Sheldon acknowledges he "was not a named party to the prior state court proceeding," and argues privity because "he was the Fire Chief who terminated Plaintiff." Mot. at 12. Texas recognizes privity only where the nonparty controlled the prior action, had its interests represented by a party, or is a successor in interest. *Amstadt*, 919 S.W.2d at 653. Whatever the merit of Sheldon's argument as to claims about the termination, which Plaintiff no longer pursues against him, his role as the official who terminated Plaintiff does not make him the City's privy as to claims arising from charges his termination order excluded. Sheldon is sued in his individual capacity for personal damages, FAC ¶ 8, and asserts personal defenses the City did not represent in a substantial-evidence review.

29. ***Cox* is distinguishable.** *Cox v. Nueces County*, 839 F.3d 418, 421 (5th Cir. 2016), on which Sheldon relies, Mot. at 12–13, involved claims arising from the reviewed employment actions themselves. Plaintiff does not contest *Cox*'s application to the termination-based claims; he no longer pursues them against Sheldon.

30. **No collateral estoppel.** Issue preclusion requires that the facts at issue were "fully and fairly litigated" and "essential to the judgment" in the first action. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). Sheldon identifies no issue decided in the civil service appeal concerning the PAC-fund prosecution or his suppression of the Longoria information. None could have been decided, because the Order under review excluded those charges. Ex. A, Doc. 37-1 at 4, ¶ 11(2).

**C. Counts II and III state claims against Sheldon that overcome qualified immunity.**

**1. The FAC pleads Sheldon's personal involvement with specificity.**

31. Sheldon characterizes the FAC as alleging that he "encouraged criminal proceedings to be 'push[ed]'" and terminated Plaintiff "despite knowing (unspecified) exculpatory information." Mot. at 7. The exculpatory information is not unspecified. The FAC identifies it precisely: the disputed transactions were tied to "the credit/ATM Card issued to Marco Longoria," and Sheldon learned this "from Lerma." FAC ¶ 50. The FAC identifies to whom Sheldon withheld it: "the DA's Office or the grand jury." *Id.* And it identifies Sheldon's role in the charges: Lerma "worked directly with Sheldon . . . to push" them. *Id.*

32. Sheldon's own Order corroborates his involvement. He used the Union's charges to impose a temporary suspension without pay "pending the disposition of the criminal theft and misappropriation charges," and kept Elizondo in that status for two years while expressly reserving action on the charges until the criminal case concluded. Ex. A, Doc. 37-1 at 4, ¶ 11. He knew who the complainant was, describing Lerma as "the primary complainant against Elizondo on behalf of the Fire Association," while he was simultaneously evaluating a policy-violation allegation against Lerma himself. *Id.* at 4, ¶¶ 13–14; *id.* at 7, ¶ 36(1). These are allegations of what Sheldon "individually" did, Mot. at 17 (quoting *Jones v. Hosemann*, 812 F. App'x 235, 238–39 (5th Cir. 2020)), not group pleading.

33. Sheldon argues that Plaintiff "does not allege any basis that clearly established law would have required Chief Sheldon to involve himself in a process in which a District Attorney advanced charges and a grand jury indicted." Mot. at 10. That misframes the claim. Plaintiff does not allege that Sheldon was a bystander with an abstract duty to intervene. He alleges that Sheldon *did* involve himself: he worked with the complainant to push the charges, used them to suspend Elizondo without pay, and then, after learning the accusation rested on the wrong

man's card, kept that fact from the prosecutor and the grand jury while the prosecution he had helped advance continued. FAC ¶¶ 50, 103, 106–107.

**2. The grand jury was tainted by the information Sheldon withheld.**

34. Sheldon argues that the grand jury's indictment broke the chain of causation. Mot. at 21 (quoting *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010)). The chain is broken "only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Cuadra*, 626 F.3d at 813 (citation omitted); *see also Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988); *Buehler v. City of Austin*, 824 F.3d 548, 554 (5th Cir. 2016).

35. This is the paradigm case for that exception. Sheldon notes that *Cuadra* "rejected the plaintiff's generalized allegations of 'taint.'" Mot. at 22. The FAC's allegations are not generalized. It names the withheld fact, the official who knew it, how he learned it, and the decision-makers who never received it. FAC ¶ 50. It alleges that the defendants' "malicious motive . . . led them to withhold relevant information or otherwise misdirect the grand jury by omission and/or commission," FAC ¶ 103, and that they "omitted material facts that undermined probable cause . . . and which mislead officials at the DA's office and the Grand Jury." FAC ¶ 107. A grand jury that never learned that the accused transactions were made with another man's card was not presented with "all the facts." *Cuadra*, 626 F.3d at 813.

36. Sheldon recasts this as a complaint that he "failed to raise potentially defensive arguments to negate Plaintiff's criminal guilt." Mot. at 22; *see id.* at 20 (citing *Hall v. Trochessett*, 105 F.4th 335, 342 (5th Cir. 2024)). Evidence that a different person made the transactions is not a "defense" such as lack of intent. It negates the factual basis of the charge. Probable cause cannot rest on an accusation the official knows was made against the wrong person. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *Winfrey v. Rogers*, 901 F.3d 483, 494–95 (5th Cir. 2018) (probable cause assessed as if omitted material facts had been included). Sheldon's probable-cause argument is otherwise directed to the computer-access charges, Mot. at 18–21, which Plaintiff does not pursue against him.

**3. Deliberately concealing exculpatory evidence and fabricating evidence were clearly unlawful long before 2017.**

37. Sheldon contends that Plaintiff identified only *Keenan* and *Cole* and that neither is factually similar. Mot. at 20–21. A case on all fours is not required. *Hope*, 536 U.S. at 741; *White*, 580 U.S. at 79. The question is whether a reasonable fire chief in 2017 would have understood that concealing from the prosecutor and grand jury the fact that a felony accusation he helped

advance rested on the wrong man's card, while the prosecution continued, was unlawful. Fifth Circuit precedent answered that question decades earlier.

- **Concealment of exculpatory evidence.** In 1988 the Fifth Circuit held that an officer "cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means or deliberately conceals exculpatory evidence, for such activity violates clearly established constitutional principles." *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988). That is what the FAC alleges here. FAC ¶ 50.

- **Fabrication and material misrepresentation.** The Fifth Circuit has long recognized a due process right not to have officials deliberately fabricate evidence and use it to bring false charges, and in *Cole v. Carson* held that officers alleged to have done so in 2010 were not entitled to qualified immunity. 935 F.3d at 452–53 (en banc); FAC ¶¶ 111, 142. Sheldon dismisses *Cole* as a deadly-force case, Mot. at 21, but its fabrication holding does not depend on the use of force. Count III alleges that Sheldon "knowingly fabricated, manipulated, or materially misrepresented evidence concerning . . . PAC funds" and used it "to initiate or maintain criminal proceedings." FAC ¶¶ 106, 108.

- **Seizure procured by false information or material omissions.** Since *Franks*, it has been clearly established that a seizure procured through deliberately or recklessly false statements or material omissions violates the Fourth Amendment. 438 U.S. at 155–56; *Winfrey*, 901 F.3d at 494–95.

38. If any doubt remained, this is an obvious case. No reasonable official could believe it lawful to keep a man under felony prosecution while hiding from the prosecutor that the transactions charged against him were made with someone else's card. *Taylor v. Riojas*, 592 U.S. at 8–9.

**4. *Espinal* does not shield Sheldon.**

39. Sheldon relies on *Espinal*, 96 F.4th at 748–49, and *Green v. Thomas*, 129 F.4th 877, 885–86 (5th Cir. 2025), for the proposition that the Fifth Circuit did not recognize a free-standing constitutional malicious-prosecution claim before 2022, so the law was not clearly established "at the relevant times." Mot. at 22–23. Plaintiff acknowledges those decisions. They do not require dismissal here, for three reasons.

40. *First*, *Espinal* addresses only the malicious-prosecution label. It does not reach Count III (fabrication), Count V (conspiracy), or the clearly established prohibition on deliberately concealing exculpatory evidence recognized in *Geter*.

41. *Second*, qualified immunity turns on whether the conduct was clearly unlawful, not on the name of the cause of action. *Anderson*, 483 U.S. at 640. Even during the period *Espinal* describes, causing a seizure through legal process procured by false statements or material omissions violated the clearly established Fourth Amendment rule of *Franks*. The en banc Fifth Circuit, in ending the free-standing malicious-prosecution claim, itself recognized that the initiation of charges without probable cause may give rise to claims under explicit constitutional protections, including the Fourth Amendment where the accused is seized. *Castellano v. Fragozo*, 352 F.3d 939, 953–54 (5th Cir. 2003) (en banc).

42. *Third*, and unique to Sheldon, the conduct alleged did not stop in 2017. A Fourth Amendment malicious-prosecution claim reaches "the commencement *or continuance*" of a criminal proceeding. *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (emphasis added). The FAC alleges that Sheldon "never relayed" the Longoria information to the District Attorney, FAC ¶ 50, and the prosecution continued until April 2025. FAC ¶ 68. The Supreme Court decided *Thompson* on April 4, 2022, and the Fifth Circuit applied it in *Armstrong* in 2023. Whatever the state of the law in 2017, Sheldon's continued suppression of exculpatory information for the three years after *Thompson*, while the prosecution he helped bring remained pending, falls outside the window *Espinal* addressed. Mot. at 22–23 (describing *Espinal*, *Green*, and *Reyes v. Greer* as involving 2020 and 2021 conduct). At a minimum, when Sheldon's suppression ended and what he did after April 2022 are fact questions that cannot be resolved against Plaintiff on the pleadings.

**D. Count I states a First Amendment retaliation claim against Sheldon.**

43. A retaliation claim requires protected activity, an injury that would chill a person of ordinary firmness, and a causal connection. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); Mot. at 18.

44. **Protected speech.** Sheldon argues that the FAC alleges only that Elizondo refused to "engage[] in conduct." Mot. at 18. The FAC alleges speech. Elizondo "communicated his opposition to improper influence, misuse of public office, and governmental corruption to De Leon and Neece," FAC ¶ 35, and "specifically told both Neece and De Leon that he could not do what they were asking because it involved corruption." FAC ¶ 89. Speech opposing the corrupt use of public office is a matter of significant public concern. *Lane v. Franks*, 573 U.S. 228, 241 (2014). Elizondo spoke as an elected BISD trustee about BISD contracts, litigation, and legal work, outside his duties as a fire department employee. FAC ¶¶ 30–33, 36; *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Sheldon's case, *Boisseau v. Town of Walls*, 138 F. Supp. 3d 792, 802 (N.D. Miss. 2015), as Sheldon describes it, concerned a refusal to "fix" a charge, Mot. at 18, not an express verbal objection to official corruption.

45. **Sheldon's participation in the retaliation.** Sheldon argues that "nowhere does Plaintiff allege any facts that Chief Sheldon was ever aware of" the speech. Mot. at 18. The FAC alleges that Sheldon was among those who "conspired to remove" Elizondo because he refused the Commissioners' demands, FAC ¶ 34; that "De Leon, Neece, Sheldon, and the City of Brownsville, began efforts to remove him" after he refused, and that "[a]ll Parties knew their actions were wrongful," FAC ¶ 37; that Sheldon worked to push the PAC-fund charges "through the urging of Neece and De Leon," FAC ¶ 50; and that he joined an agreement with them "to remove Plaintiff, damage his reputation, and justify the removal through criminal accusations." FAC ¶ 120. Sheldon arrived as interim chief already "briefed about a continuing controversy involving former Fire Chief Carlos Elizondo." Ex. A, Doc. 37-1 at 3, ¶ 2. A participant who knowingly joins a scheme to retaliate against protected speech, at the urging of the officials whose demands were refused, may be held liable for acts in furtherance of that scheme. *See Pfannstiel*, 918 F.2d at 1187. Whether Sheldon knew why the Commissioners wanted Elizondo prosecuted is a question of intent that may be alleged generally, Fed. R. Civ. P. 9(b), and that the FAC's allegations make plausible. *Iqbal*, 556 U.S. at 679.

46. **Probable cause.** Insofar as Count I rests on the PAC-fund prosecution, the FAC pleads the absence of probable cause for the reasons in Part VI.C.2. *See Hartman*, 547 U.S. at 265–66; *Nieves v. Bartlett*, 587 U.S. 391, 403–04 (2019) (cited at Mot. at 18). Sheldon's argument that Plaintiff's "own admissions show at least 'arguable' probable cause," Mot. at 19, concerns the computer-access charges, which Plaintiff does not pursue against him.

47. **Clearly established law.** By 2017 it was clearly established that officials may not use criminal process to punish a citizen for protected speech. *Keenan*, 290 F.3d at 258; *Hartman*, 547 U.S. at 256, 265–66. Sheldon dismisses *Keenan* as a case about "a felony traffic stop and deadly conduct charges," Mot. at 21, but that is the point: *Keenan* establishes that officials may not wield criminal enforcement against a citizen because of his speech. Speech exposing public corruption was by then "obviously" a matter of public concern. *Lane*, 573 U.S. at 241.

**E. Count V states a § 1983 conspiracy claim against Sheldon.**

48. Sheldon argues that the conspiracy claim fails because the underlying claims fail. Mot. at 25 (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)). Because the FAC states underlying violations arising from the PAC-fund prosecution (Parts VI.C–D), that argument fails. The FAC pleads the participants, including Sheldon, FAC ¶ 120; the object, "to remove Plaintiff, damage his reputation, and justify the removal through criminal accusations and disciplinary proceedings," *id.*; Sheldon's direct coordination with the complainant, FAC ¶ 50; and overt acts including "supplying or supporting PAC-fund accusations" and "withholding material exculpatory information." FAC ¶ 122. That is enough to raise "a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556

(2007). The prohibition on conspiring to bring and maintain false charges by concealing exculpatory evidence was clearly established for the reasons in Part VI.C.3.

**F. Count IV.**

49. Count IV (stigma-plus) rests on stigmatizing charges used in connection with Plaintiff's 2019 termination and the related civil service proceeding. FAC ¶¶ 115–117; Mot. at 23–24. Plaintiff does not oppose dismissal of Count IV as to Sheldon.

## VII. ALTERNATIVE REQUEST FOR A *SCHULTEA* REPLY OR LEAVE TO AMEND

50. If the Court concludes that the FAC does not plead facts with enough specificity to address qualified immunity, Plaintiff requests that the Court order a Rule 7(a) reply tailored to the defense. *Schultea*, 47 F.3d at 1433–34. Alternatively, Plaintiff requests leave to amend under Rule 15(a)(2), which directs that leave be "freely give[n] when justice so requires." Courts ordinarily afford a plaintiff an opportunity to cure pleading deficiencies before dismissing with prejudice. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). If required, Plaintiff can plead additional facts concerning when and how Sheldon learned of the Longoria card information, Sheldon's communications with Lerma, the Brownsville Police Department, and the District Attorney's Office regarding the PAC-fund charges, and Sheldon's conduct regarding those charges after April 2022. Any dismissal of the claims arising from the PAC-fund prosecution should be without prejudice.

## VIII. CONCLUSION AND PRAYER

51. Sheldon asks the Court to treat this case as a stale challenge to his 2019 termination decision. The claims that remain against him arise instead from what he did with the PAC-fund charges: he worked with the complainant to push them, used them to suspend Elizondo without pay, learned they rested on another man's card, and "never relayed this information to the DA's Office or the grand jury." FAC ¶ 50. His own termination order excluded those charges from the proceeding he now invokes as preclusive. Ex. A, Doc. 37-1 at 4, ¶ 11(2). And deliberately concealing exculpatory evidence has been clearly unlawful in this Circuit since at least 1988. *Geter*, 849 F.2d at 1559.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Carlos Alberto Elizondo respectfully requests that the Court DENY Defendant Jarrett Sheldon's Second Rule 12(b)(6) Motion to Dismiss, Including Based on Qualified Immunity (Doc. 40) as to Counts I, II, III, and V insofar as those claims arise from the theft and misapplication prosecution that terminated in Plaintiff's favor in April 2025. Plaintiff does not oppose dismissal of Count IV as to Sheldon, or of claims against him premised solely on the 2019 termination or the computer-access prosecution. In the alternative, Plaintiff requests that the Court order a *Schultea* reply or grant leave to amend,

and that any dismissal be without prejudice. Plaintiff further requests all other relief to which he may be justly entitled.

Dated: October 23, 2026.

Respectfully submitted,

BARRERA, SANCHEZ & ASSOCIATES, P.C.
10113 N. 10th Street, Suite A
McAllen, Texas 78504
Telephone: (956) 287-7555
Facsimile: (956) 287-7711

Email: marcus@bsmlawyers.com
Email: melissa@bsmlawyers.com

By: /s/ Marcus C. Barrera
Marcus C. Barrera
Texas Bar No. 00790271
ATTORNEY-IN-CHARGE FOR PLAINTIFF
CARLOS ALBERTO ELIZONDO

**CERTIFICATE OF SERVICE**

I certify that on October 23, 2026, a true and correct copy of the foregoing Response was filed electronically through the Court's CM/ECF system, which will send notification of the filing to all counsel of record as follows:

Tamara Y. Imam and Mark J. Murphy
timam@mooneygreen.com
mmurphy@mooneygreen.com

Matt Bachop
mbachop@ddollaw.com

Kevin M. Curley
kevin@txmunicipallaw.com

*/s/ Marcus C. Barrera*
Marcus C. Barrera