United States District Court
Southern District of Texas
FILED

OCT 23 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **CARLOS ALBERTO ELIZONDO** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **CITY OF BROWNSVILLE, JARRETT SHELDON, INDIVIDUALLY AND AS FIRE CHIEF FOR THE CITY OF BROWNSVILLE, CESAR DE LEON, INDIVIDUALLY AND AS A BROWNSVILLE CITY COMMISSIONER, THE ESTATE OF BEN NEECE, INDIVIDUALLY AND AS A BROWNSVILLE CITY COMMISSIONER, AND THE BROWNSVILLE FIREFIGHTERS ASSOCIATION LOCAL 970** | § § § § § § § § § § § § | **CIVIL ACTION NO. 1:26-CV-00491** |

**PLAINTIFF CARLOS ALBERTO ELIZONDO'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF BROWNSVILLE'S SECOND RULE 12(b)(6) MOTION TO DISMISS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Carlos Alberto Elizondo ("Plaintiff" or "Elizondo") files this Response in Opposition to Defendant City of Brownsville's Second Rule 12(b)(6) Motion to Dismiss (Doc. 41) (the "Motion"), and respectfully shows the Court as follows.

## I. SUMMARY OF THE RESPONSE

1. The City's Motion treats this case as a stale employment dispute about a 2019 termination. It is not. At its core, the First Amended Complaint (Doc. 37) ("FAC") alleges that City officials helped bring and then kept alive a felony prosecution for theft of union funds after they learned the disputed transactions were tied to another man's card. That prosecution hung over Elizondo for more than seven years, until it was dismissed in April 2025. FAC ¶¶ 50, 68, 102. Elizondo sued within a year of the dismissal. FAC ¶ 70.

2. Plaintiff responds to the City's grounds as follows.

   1. **Limitations.** Plaintiff does not argue that a timely malicious-prosecution claim "relate[s] back" to save untimely claims. *Cf.* Mot. at 2. Each claim accrues under its own rule. Claims that challenge the validity of a criminal prosecution, including

fabrication of evidence, do not accrue until the prosecution ends in the plaintiff's favor. *McDonough v. Smith*, 588 U.S. 109 (2019); *Thompson v. Clark*, 596 U.S. 36, 39 (2022). The theft and misapplication prosecution ended in April 2025, so Counts II, III, and V, and the retaliatory-prosecution theory in Count I, are timely to the extent they rest on that prosecution. Plaintiff does not seek to recover against the City for the 2019 termination or the computer-access prosecution as stand-alone claims, and does not oppose dismissal of Count IV (stigma-plus) as to the City.

2. **Res judicata and collateral estoppel.** The 2019 civil service appeal and the 2022 state-court judgment could not have resolved claims arising from a prosecution that was still pending until 2025. And the City's own exhibit establishes that the termination proceeding "does not relate to or involve the facts connected with the criminal complaints by the fire union." Doc. 37-1 at 4, ¶ 11(2). The City relies on that same paragraph for the proposition that the financial charges "were expressly excluded from being involved in any of the City-related matters." Mot. at 19.
3. ***Monell*** liability. There is no heightened pleading standard for municipal liability. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993). The FAC pleads Commission action (the vote to commence the audit), decisions by officials with delegated final authority, ratification, and custom. FAC ¶¶ 38, 80–86. The City itself acknowledges that it acts through its Commission "or by someone that a majority of the commission members delegated authority to." Mot. at 16–17.
4. **Probable cause and the independent intermediary.** The FAC alleges that the PAC-fund accusation was false and that the officials knew the transactions were tied to Marco Longoria's card but withheld that fact from the District Attorney and the grand jury. FAC ¶¶ 50, 103. That is a specific allegation of taint, not a generalized one. A municipality also cannot invoke "arguable" probable cause, a qualified-immunity concept. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980).

3. The Motion should be denied except as to the matters Plaintiff does not contest.

## II. NATURE AND STAGE OF THE PROCEEDING

4. Plaintiff filed this action in the 138th Judicial District Court of Cameron County, Texas, on March 31, 2026. FAC ¶¶ 2, 12. The City and Jarrett Sheldon removed it on May 1, 2026. FAC ¶ 13. After a hearing on Defendants' first motions to dismiss on September 1, 2026, the Court granted Plaintiff leave to amend (Doc. 36), and Plaintiff filed the FAC on September 18, 2026 (Doc. 37). On October 9, 2026, the City filed the present Motion (Doc. 41), and Defendants Sheldon, De Leon, and the Estate of Neece filed separate motions (Docs. 40, 42). Local 970 filed its motion on October 16, 2026 (Doc. 44). No scheduling order has been entered and no discovery has occurred.

5. The FAC asserts the following claims against the City under 42 U.S.C. § 1983: First Amendment retaliation (Count I), Fourth Amendment malicious prosecution (Count II), fabrication or material misrepresentation of evidence (Count III), Fourteenth Amendment stigma-plus (Count IV), and conspiracy (Count V). FAC ¶¶ 88–124; Mot. at 1–2. The FAC does not proceed against the City on a respondeat superior theory. FAC ¶ 79.

## III. STATEMENT OF THE ISSUES

1. Whether claims that challenge the theft and misapplication prosecution, which terminated in Plaintiff's favor in April 2025, are timely when Plaintiff sued on March 31, 2026.
2. Whether a 2019 civil service appeal and a 2022 state-court judgment reviewing Plaintiff's termination bar claims arising from a separate prosecution that was then still pending and that the termination order expressly excluded.
3. Whether the FAC plausibly pleads that the City's policymakers, or officials with delegated final authority, caused the constitutional violations.
4. Whether the FAC plausibly pleads protected speech and the absence of probable cause for the theft and misapplication prosecution.
5. Whether the FAC plausibly pleads that the grand jury's deliberations were tainted by the withholding of material exculpatory information.

6. Each issue is reviewed under the Rule 12(b)(6) standard in Part V.

## IV. STATEMENT OF FACTS AS PLEADED

7. The following facts are drawn from the FAC and its exhibits, which are part of the pleading for all purposes. Fed. R. Civ. P. 10(c); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Exhibit A is Chief Sheldon's October 17, 2019, Order of Indefinite Suspension (Doc. 37-1) ("Ex. A"). Exhibit B is a collection of contemporaneous news reports (Doc. 37-2) ("Ex. B").

### A. Elizondo refuses the Commissioners' demands.

8. Elizondo served the City for more than nineteen years and became Fire Chief in approximately May 2016. FAC ¶¶ 26–29. He was also an elected BISD trustee and is now the Board's President. FAC ¶ 28. City Commissioners Cesar De Leon and Ben Neece pressured him to use his BISD office for their private benefit, including by steering BISD legal work and a produce contract to De Leon and his associate, securing BISD legal work for Neece, intervening in a class-rank matter for a sitting judge's daughter, and altering an official report to help Neece have the City Attorney fired. FAC ¶ 31. Elizondo refused and "told them verbally that he could not do what they were asking him to do." FAC ¶ 35. He "specifically told both Neece and De Leon that he could not do what they were asking because it involved corruption." FAC ¶ 89. He spoke "in his capacity as a citizen and elected public official, not merely as part of his ordinary Fire Department duties." FAC ¶ 36.

**B. The City uses the audit, the Commission, and its administration to move against him.**

9. City Manager Charlie Cabler had told Elizondo that non-emergency calls should be routed to certified private ambulance companies. FAC ¶ 38. Even so, Cabler "carried out requests by Neece and De Leon to hold a vote to commence an audit of these non-emergency calls . . . in order to place Plaintiff in a bad light and create a pretext for firing him." *Id.* The audit was conducted by the "newly formed City Commissioners Audit Committee." Ex. B, Doc. 37-2 at 9. It found no financial benefit to Elizondo and determined that Cabler knew of and did not object to the referrals. FAC ¶ 39; Ex. B, Doc. 37-2 at 9. "Despite the City's knowledge of Plaintiff[']s practice with non-emergency calls, the City of Brownsville pressed forward with a referral to the District Attorney's Office for prosecution of Plaintiff." FAC ¶ 39.

10. In August 2017 the Commission, with Neece and De Leon in the majority, voted 5–2 to fire City Attorney Mark Sossi. FAC ¶ 31(5). Sossi had warned the City not to take the actions it took against Elizondo. FAC ¶ 85. On September 7, 2017, Cabler removed Elizondo as Fire Chief. FAC ¶ 45. On October 9, 2017, Sheldon, "after further consultation with City Manager Cabler," placed him on administrative leave. FAC ¶ 46; Ex. A, Doc. 37-1 at 3, ¶ 5.

**C. The City joins in pushing the PAC-fund charges and withholds the exculpatory facts.**

11. On or about October 17, 2017, Elizondo was arrested on charges of theft by a public servant and misapplication of fiduciary property concerning Local 970's political-action-committee ("PAC") funds. FAC ¶¶ 48–49. Local 970's president, Jorge Lerma, "worked directly with Sheldon and the City of Brownsville, through the urging of Neece and De Leon, to push the Theft and misappropriation of union funds charges against Plaintiff." FAC ¶ 50. Sheldon then used those charges to place Elizondo on temporary suspension without pay. Ex. A, Doc. 37-1 at 4, ¶ 11.

12. The disputed PAC transactions were in fact associated with a card issued to another union member, Marco Longoria, and Sheldon learned this from Lerma. FAC ¶ 50. Yet Sheldon "never relayed this information to the DA's Office or the grand jury to exculpate Plaintiff." *Id.* "Despite all of this information, Sheldon, Neece, De Leon, the City of Brownsville, and Local 970 maintained that the theft and misappropriated funds were Plaintiff's fault." *Id.* City officials "referred, supported, or ratified criminal allegations against Plaintiff while failing to fairly disclose material information concerning City knowledge and authorization of the ambulance practices and Local 970's improper allegations of theft against Plaintiff." FAC ¶ 54. "The City publicly associated Plaintiff's suspension and employment status with the felony accusations." FAC ¶ 52. The FAC alleges that the defendants' "malicious motive . . . led them to withhold relevant information or otherwise misdirect the grand jury by omission and/or commission." FAC ¶ 103.

**D. The termination proceeding excludes the PAC-fund charges.**

13. In September 2019 a jury acquitted Elizondo of separate computer-access charges. FAC ¶¶ 61–62. On October 17, 2019, Sheldon issued an Order of Indefinite Suspension after consulting with Cabler. FAC ¶¶ 63–64. That Order expressly states that it "does not relate to or involve the facts connected with the criminal complaints by the fire union," that Elizondo "remains under a temporary suspension . . . with respect to those charges," and that Sheldon was "reserving [his] authority . . . to make civil service decisions about allegations of misconduct with respect to the union complaints when the criminal case involving those charges is concluded." Ex. A, Doc. 37-1 at 4, ¶ 11(2)–(3).

**E. Municipal policy and ratification.**

14. The FAC alleges that the City Commission held final policymaking authority, and that "City administration and the Fire Chief possessed delegated final policymaking authority concerning Fire Department administration and employment discipline." FAC ¶¶ 81–82. It alleges that "City policymakers authorized, approved, or ratified the use of the audit, criminal referrals, public employment actions, and termination against Plaintiff," FAC ¶ 83; that the City "maintained or tolerated practices permitting its officials and administrators to use audits, internal investigations, disciplinary proceedings, and criminal referrals to retaliate against employees or public officials who resisted improper demands," FAC ¶ 84; and that the City "failed to require neutral review, disclosure of material exculpatory information, . . . or adequate supervisory review before criminal referrals were made." FAC ¶ 85; *see also* FAC ¶ 86.

**F. The prosecution ends in Elizondo's favor.**

15. The theft and misapplication charges were dismissed in April 2025. FAC ¶¶ 68, 102. Elizondo filed this action on March 31, 2026. FAC ¶ 70.

## V. STANDARD OF REVIEW

16. A complaint survives a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Plausibility "is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. A well-pleaded complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and [are] rarely granted." *Lormand*, 565 F.3d at 232 (citation omitted). There is no heightened pleading standard for § 1983 claims against municipalities. *Leatherman*, 507 U.S. at 168.

17. **Affirmative defenses.** Limitations, res judicata, and collateral estoppel are affirmative defenses. Fed. R. Civ. P. 8(c)(1). A court may dismiss on such a defense under Rule 12(b)(6) only where it is "evident from the plaintiff's pleadings that the action is barred and the pleadings fail

to raise some basis for tolling or the like." *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (cited at Mot. at 4). The same rule governs preclusion: dismissal is appropriate only when the defense appears on the face of the pleadings and judicially noticeable record. *See* Mot. at 10 (citing *Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 386–87 (5th Cir. 2005)).

18. **Judicial notice.** The City asks the Court to take judicial notice of the civil service decision, the state-court judgment, and other materials submitted with the City Defendants' earlier motions. Mot. at 5–6, 10–11 & n.1. A court may notice the existence of another court's judgment and "the fact that a judicial action was taken." Mot. at 5 (quoting *Gray v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 407 n.7 (5th Cir. 2004)). It may not take judicial notice of factual findings in another proceeding for their truth, because such findings are not facts "not subject to reasonable dispute." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830–31 (5th Cir. 1998); Fed. R. Evid. 201(b). The City's own authority recognizes this limit. Mot. at 5 (citing *Taylor*). The civil service findings may therefore be noticed only for the fact that they were made, not to contradict the FAC.

**VI. ARGUMENT AND AUTHORITIES**

**A. The claims arising from the PAC-fund prosecution are timely.**

**1. Two years is the limitations period, and each claim accrues under its own rule.**

19. Section 1983 borrows the forum state's general personal-injury limitations period, which in Texas is two years. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); Mot. at 4. The City contends that a one-year period applies to malicious prosecution because Texas law provides one for the state-law tort. Mot. at 4. The Supreme Court has rejected that approach: where state law provides multiple limitations periods, § 1983 claims borrow the general or residual personal-injury period, not the period for a specific intentional tort. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989). The point makes no practical difference here, because Plaintiff sued within one year of the April 2025 dismissal. FAC ¶ 70.

20. The City's broader argument is that because the acts underlying Plaintiff's claims occurred while the Commissioners were in office, everything accrued by 2019, or by 2021 at the latest. Mot. at 6–7. But accrual turns on when the plaintiff has "a complete and present cause of action," *Wallace v. Kato*, 549 U.S. 384, 388 (2007), not on when the defendant acted. Federal law looks to common-law tort principles to fix the accrual date of each § 1983 claim. *Id.*; *McDonough*, 588 U.S. 109. A malicious-prosecution claim is not complete until the prosecution ends without a conviction, however long ago the defendant's wrongful acts occurred. *Thompson*, 596 U.S. at 39.

21. Plaintiff therefore does not contend, as the City suggests, that a timely malicious-prosecution claim can "relate back and save other allegedly related civil rights claims." Mot. at 2. His position is that each claim challenging the PAC-fund prosecution has its own accrual date, and that date is the favorable termination in April 2025.

**2. Count II (malicious prosecution) is timely as to the PAC-fund prosecution.**

22. The City concedes that a malicious-prosecution claim relating to the PAC-fund charges "could survive limitations." Mot. at 8; *see also id.* at 2. Those charges were dismissed in April 2025. FAC ¶¶ 68, 102. Count II is timely as to that prosecution.

23. The City notes that Count II also refers to "unlawful arrest," and argues that any free-standing arrest theory accrued at the arrest. Mot. at 7 n.4, 8 (citing *Davis v. Warren*, 173 F.4th 566, 572 (5th Cir. 2026)); *see Wallace*, 549 U.S. at 397. Plaintiff does not assert a separate false-arrest claim. The "unlawful seizure" in Count II is the seizure pursuant to legal process that is an element of the Fourth Amendment malicious-prosecution claim itself. *Thompson*, 596 U.S. at 42–43; *Manuel v. City of Joliet*, 580 U.S. 357, 368–69 (2017). It is actionable as part of that claim, which accrued in April 2025.

24. Plaintiff does not seek to recover against the City on a malicious-prosecution theory arising from the computer-access prosecution, which ended in an acquittal in September 2019. FAC ¶ 101.

**3. Count III (fabrication of evidence) is timely under *McDonough v. Smith*.**

25. The City argues that Count III accrued when Plaintiff "was arrested, charged, and criminal proceedings commenced." Mot. at 7. The Supreme Court rejected that rule in *McDonough*, holding that a § 1983 claim alleging the fabrication of evidence used in a criminal prosecution does not accrue until the prosecution terminates in the accused's favor. 588 U.S. 109. The Court reasoned that such a claim challenges the integrity of the prosecution itself, that requiring suit while the prosecution is pending would invite parallel civil and criminal litigation and conflicting judgments, and that the claim is therefore governed by the same favorable-termination principle that applies to malicious prosecution. *Id.*; *see Heck v. Humphrey*, 512 U.S. 477, 484–87 (1994).

26. Count III alleges that the defendants "knowingly fabricated, manipulated, or materially misrepresented evidence concerning ambulance referrals, PAC funds, and computer-system access," and "omitted material facts that undermined probable cause . . . and which mislead officials at the DA's office and the Grand Jury." FAC ¶¶ 106–107. Insofar as Count III rests on the PAC-fund prosecution, it accrued in April 2025 and is timely. The City also misstates the record: the FAC alleges that the arrest and PAC-fund charges came in October 2017, not 2019. FAC ¶¶ 48–49.

**4. Count V (conspiracy) is timely as to the PAC-fund prosecution.**

27. The City argues that the conspiracy claim accrued with the defendants' overt acts, all of which supposedly occurred by 2019. Mot. at 9–10 (citing *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987)). But a § 1983 conspiracy claim is actionable only for the constitutional deprivation it produces. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (cited at Mot. at 22). Where the deprivation is a malicious prosecution or a prosecution built on

fabricated evidence, the injury is not complete, and the claim cannot be brought, until the prosecution ends. *McDonough*, 588 U.S. 109; *Thompson*, 596 U.S. at 39. The FAC also alleges that the withholding of the Longoria information from the District Attorney and the grand jury, and the joint maintenance of the false accusation, continued while the prosecution was pending. FAC ¶¶ 50, 122. Count V is timely because it rests on the PAC-fund prosecution.

**5. Count I is timely insofar as it alleges retaliatory prosecution.**

28. Count I alleges that the Commissioners retaliated against Plaintiff's protected speech by, among other things, "supporting criminal referrals." FAC ¶ 91. A First Amendment retaliatory-prosecution claim requires the plaintiff to plead and prove the absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006). It therefore attacks the validity of the prosecution in the same way a malicious-prosecution or fabrication claim does, and the reasoning of *McDonough*, which ties accrual to favorable termination for claims that would impugn a pending prosecution, applies with equal force. 588 U.S. 109. Insofar as Count I rests on the PAC-fund prosecution, it accrued in April 2025.

29. Plaintiff does not seek to recover against the City on Count I for the 2017 demotion or the 2019 termination as independent adverse actions. Those events remain relevant background evidence of the retaliatory motive behind the timely claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (time-barred acts may be used "as background evidence in support of a timely claim").

**6. Count IV.**

30. Count IV (stigma-plus) rests on stigmatizing charges used in connection with Plaintiff's 2019 termination and the related civil service proceeding. FAC ¶¶ 115–117.

**B. Res judicata and collateral estoppel do not bar claims arising from a prosecution that was still pending, and that the termination order expressly excluded.**

31. Texas law governs the preclusive effect of the state-court judgment. *Cox v. Nueces Cnty.*, 839 F.3d 418, 420–21 (5th Cir. 2016); Mot. at 10. Res judicata requires "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); Mot. at 10. Texas applies a transactional approach, barring claims arising from the same subject matter that "through the exercise of diligence[] could have been raised in a prior suit." *Cox*, 839 F.3d at 421 (citing *Barr v. Resolution Tr. Corp.*, 837 S.W.2d 627, 630–31 (Tex. 1992)); Mot. at 11. The City's argument fails on the third element.

32. **First, the claims Plaintiff pursues could not have been raised in the earlier proceedings.** The civil service hearing took place in November 2019, and the state district court entered its judgment on February 9, 2022. Mot. at 5. The PAC-fund prosecution was then still pending; it was not dismissed until April 2025. FAC ¶¶ 68, 102. As shown above, claims for

malicious prosecution, fabrication of evidence, and retaliatory prosecution based on that prosecution did not exist until it ended in Plaintiff's favor. *Thompson*, 596 U.S. at 39; *McDonough*, 588 U.S. 109. A claim that has not yet accrued is not one that "could have been raised" in an earlier suit. *Barr*, 837 S.W.2d at 630–31. The Supreme Court has long recognized that a prior judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955). Indeed, *McDonough* holds that a plaintiff should *not* bring such claims while the prosecution is pending. 588 U.S. 109.

33. **Second, the City's own record shows the PAC-fund charges were outside the termination proceeding.** The civil service appeal reviewed Sheldon's October 17, 2019, Order of Indefinite Suspension. Mot. at 10–11. That Order states, in terms, that it "does not relate to or involve the facts connected with the criminal complaints by the fire union," and that Sheldon was "reserving [his] authority" to address those complaints "when the criminal case involving those charges is concluded." Ex. A, Doc. 37-1 at 4, ¶ 11(2)–(3). The City embraces this in its probable-cause argument, telling the Court that the financial charges "were expressly excluded from being involved in any of the City-related matters." Mot. at 19 (citing Doc. 37-1, ¶ 11(2)). The City cannot argue that the PAC-fund charges were excluded from the termination proceeding for one purpose and that they were part of the same litigated "transaction" for another. A proceeding that deliberately set those charges aside did not adjudicate them and could not have adjudicated claims arising from their later dismissal.

34. ***Cox* is distinguishable.** In *Cox*, the plaintiffs' First Amendment claims arose from the very employment actions reviewed in the civil service appeal, and those claims had accrued before the state suit. 839 F.3d at 421. Plaintiff does not quarrel with *Cox*'s rule as applied to claims arising from the termination itself; he no longer pursues those claims against the City. *See* Part VI.A.5–6. The City's cases involving employment appeals, Mot. at 11–12, are distinguishable for the same reason. What remains arises from a separate criminal prosecution that the termination order carved out and that did not end until three years after the state judgment.

35. **Third, collateral estoppel does not apply.** Issue preclusion requires the party asserting it to show that "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). The City does not identify a single issue decided in the civil service appeal that it seeks to preclude here. The findings it quotes concern the factual allegations "contained in the Notice and Order of Indefinite suspension," Mot. at 10–11, which, by that Order's own terms, did not involve the PAC-fund charges. Ex. A, Doc. 37-1 at 4, ¶ 11(2). Whether the City's officials withheld the Longoria information from the District Attorney and grand jury was never litigated, much less decided. And the Court may not take judicial notice of the civil service findings for their truth. *Taylor*, 162 F.3d at 830–31.

36. Res judicata and collateral estoppel do not bar the claims arising from the PAC-fund prosecution.

**C. The FAC plausibly pleads municipal liability.**

37. A municipality is liable under § 1983 when the plaintiff identifies "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." Mot. at 13–14 (quoting *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021)); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978). A single decision by an official with final policymaking authority in the relevant area can constitute official policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). And when authorized policymakers "approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

38. At the pleading stage, these elements are tested under Rule 8 alone. *Leatherman*, 507 U.S. at 168 (rejecting a heightened pleading standard for municipal liability claims). The identity of the final policymaker is a question of state law for the court, and a complaint need not plead it with specificity; it must plead facts showing that a policy was promulgated or ratified by the policymaker. *Groden v. City of Dallas*, 826 F.3d 280, 284–85 (5th Cir. 2016).

39. **The City's "majority of the Commission" argument misstates the FAC and the law.** The City asserts that "Plaintiff's petition does not allege any action whatsoever by a majority of the Brownsville City Commission. Nowhere." Mot. at 16. That is incorrect. The FAC alleges that, at Neece's and De Leon's request, City Manager Cabler arranged for a "vote to commence an audit" of the ambulance referrals "in order to place Plaintiff in a bad light and create a pretext for firing him." FAC ¶ 38. The audit was conducted by the "City Commissioners Audit Committee." Ex. B, Doc. 37-2 at 9. The FAC further alleges that "[t]he City Commission possessed final policymaking authority," FAC ¶ 81; that "City policymakers authorized, approved, or ratified the use of the audit, criminal referrals, public employment actions, and termination against Plaintiff," FAC ¶ 83; and that the Commission, with Neece and De Leon in the five-member majority, fired the City Attorney who had warned the City not to take these actions against Plaintiff. FAC ¶¶ 31(5), 85. Those are allegations of Commission action.

40. More fundamentally, a city does not act only through votes of its full governing body. The City itself acknowledges that it acts through its Commission "or by someone that a majority of the commission members delegated authority to." Mot. at 16–17. The FAC alleges exactly that: "City administration and the Fire Chief possessed delegated final policymaking authority concerning Fire Department administration and employment discipline." FAC ¶ 82. It alleges that the City Manager removed Plaintiff as Fire Chief, FAC ¶ 45; that Sheldon acted "after further consultation with City Manager Cabler" and "consulted with City Manager Cabler before making the employment decision," FAC ¶¶ 46, 64; Ex. A, Doc. 37-1 at 3, ¶ 5; and that the City, through those officials, "pressed forward with a referral to the District Attorney's Office for

prosecution of Plaintiff" despite knowing he had not benefited and that the City Manager had approved the practice. FAC ¶ 39. It alleges that the City, acting through those officials, joined in pushing the PAC-fund charges and withheld the Longoria information from the District Attorney and the grand jury. FAC ¶¶ 50, 54. Whether these officials held final authority over criminal referrals and the disclosure of exculpatory information to prosecutors is a question of state and local law, *Praprotnik*, 485 U.S. at 124–25, that the City has not addressed and that cannot be resolved against Plaintiff without the relevant charter provisions, ordinances, and delegations. *See Groden*, 826 F.3d at 284–85.

41. The City's authorities do not hold otherwise. *Griggs v. Chickasaw County*, 930 F.3d 696, 704 (5th Cir. 2019), and the other cases the City cites, Mot. at 15–16, addressed decisions made by the multimember body itself. They do not hold that a city escapes liability for the decisions of officials to whom it has delegated final authority, which *Pembaur* and *Praprotnik* squarely allow.

42. **The FAC also pleads custom and ratification.** The FAC alleges that the City "maintained or tolerated practices permitting its officials and administrators to use audits, internal investigations, disciplinary proceedings, and criminal referrals to retaliate against employees or public officials who resisted improper demands," FAC ¶ 84; that it "failed to require neutral review, disclosure of material exculpatory information, separation of political influence from employment investigations, or adequate supervisory review before criminal referrals were made," FAC ¶ 85; and that the dismissal of the City Attorney who warned against these actions illustrates the practice. *Id.* These allegations are tied to specific events, not offered in a vacuum. Together with the allegations that policymakers "authorized, approved, or ratified" the referrals and employment actions, FAC ¶ 83, they state a plausible claim that the City itself, not merely its employees, was the moving force behind the PAC-fund prosecution. FAC ¶ 86.

43. The City may dispute these allegations, and discovery may test them. But the details of how authority was delegated within the City, what the Commission and its Audit Committee knew, and who approved the criminal referrals are uniquely within the City's possession. Rule 8 does not require Plaintiff to plead them with greater particularity before discovery. *Leatherman*, 507 U.S. at 168; *Twombly*, 550 U.S. at 556.

**D. Count I plausibly pleads First Amendment retaliation.**

44. A First Amendment retaliation claim requires that the plaintiff (1) engaged in constitutionally protected activity, (2) suffered an injury that would chill a person of ordinary firmness from continuing that activity, and (3) the adverse action was substantially motivated by the protected activity. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); Mot. at 17. The City challenges the first element and argues that probable cause defeats the claim. Mot. at 17–19.

45. **Elizondo engaged in protected speech.** The City characterizes the claim as resting on Elizondo's mere "refusing to engage in conduct." Mot. at 17. The FAC alleges more. Elizondo

"communicated his opposition to improper influence, misuse of public office, and governmental corruption to De Leon and Neece and told them verbally that he could not do what they were asking him to do." FAC ¶ 35. He "specifically told both Neece and De Leon that he could not do what they were asking because it involved corruption." FAC ¶ 89. That is speech, and its subject, the attempted misuse of public office for private gain, is a matter of public concern of the highest order. *See Lane v. Franks*, 573 U.S. 228, 241 (2014) (testimony about "corruption in a public program and misuse of state funds . . . obviously involves a matter of significant public concern"). Elizondo spoke as an elected BISD trustee about BISD contracts, litigation, and legal work, not pursuant to his duties as a fire department employee. FAC ¶¶ 30–33, 36. Speech outside the scope of an employee's official duties is speech as a citizen. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The City's case, *Boisseau v. Town of Walls*, 138 F. Supp. 3d 792, 802 (N.D. Miss. 2015), as the City describes it, concerned a refusal to "fix" a charge, Mot. at 17–18, not an express verbal objection to official corruption.

46. The City's further point, that the FAC does not allege that "a majority of the Brownsville City Commission was ever aware" of the speech, Mot. at 17, is a restatement of its *Monell* argument and fails for the reasons in Part VI.C. The FAC alleges that De Leon and Neece knew of the speech, FAC ¶ 90, and that they used their positions and the City's administration to bring about the audit, the referrals, and the prosecution. FAC ¶¶ 38, 50, 71–73, 91.

47. **The FAC pleads the absence of probable cause for the PAC-fund prosecution.** The City correctly notes that a retaliatory-prosecution claim requires the absence of probable cause. Mot. at 18 (citing *Nieves v. Bartlett*, 587 U.S. 391, 403–04 (2019)); *see Hartman*, 547 U.S. at 265–66. Its probable-cause argument, however, is directed almost entirely at the computer-access charges, Mot. at 18–19, on which Plaintiff does not pursue the City. As to the PAC-fund charges, the City says only that they "were advanced based on information from someone with knowledge of the Association's finances, which supported probable cause." Mot. at 19.

48. That argument assumes the truth of the very information the FAC alleges was false. The FAC alleges that the disputed transactions were tied to a card issued to Marco Longoria, not to Elizondo, and that the City's officials knew it and withheld it from the District Attorney and the grand jury. FAC ¶ 50. Probable cause cannot rest on information that officials know to be false, and an officer who deliberately or recklessly omits material facts from the information presented to a magistrate or grand jury is not shielded by the resulting probable-cause determination. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *Winfrey v. Rogers*, 901 F.3d 483, 494–95 (5th Cir. 2018). Whether probable cause existed is measured by asking whether it would have existed had the omitted facts been included. *Winfrey*, 901 F.3d at 495. Evidence that someone else's card made the transactions goes to the heart of whether Elizondo committed the offense at all. It is not, as the City contends, a mere "defense that may be raised in future proceedings." Mot. at 19 (quoting *Hall v. Trochessett*, 105 F.4th 335, 342 (5th Cir. 2024)).

49. Finally, the City repeatedly invokes "arguable" probable cause. Mot. at 18–19. "Arguable probable cause" is a qualified-immunity standard. Municipalities are not entitled to qualified immunity. *Owen*, 445 U.S. at 638. The question for the City is whether probable cause actually existed, and the FAC plausibly alleges it did not. FAC ¶¶ 50, 103, 107.

**E. Counts II and III plausibly plead that the grand jury was tainted.**

50. The City argues that the grand jury's indictment broke the chain of causation. Mot. at 20 (quoting *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010)). The independent-intermediary rule has a well-established exception: the chain of causation is broken "only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Cuadra*, 626 F.3d at 813 (citation omitted); *see also Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988); *Buehler v. City of Austin*, 824 F.3d 548, 554 (5th Cir. 2016).

51. The City points out that *Cuadra* "rejected the plaintiff's generalized allegations of 'taint.'" Mot. at 20. Plaintiff's allegations are not generalized. The FAC identifies the specific exculpatory fact (the transactions were associated with Marco Longoria's card), who knew it (Sheldon, who learned it from Lerma, and the other defendants), and to whom it was not disclosed ("the DA's Office or the grand jury"). FAC ¶ 50. It alleges that the defendants' "malicious motive . . . led them to withhold relevant information or otherwise misdirect the grand jury by omission and/or commission." FAC ¶ 103. It further alleges that City officials "referred, supported, or ratified criminal allegations against Plaintiff while failing to fairly disclose material information concerning City knowledge and authorization of the ambulance practices and Local 970's improper allegations of theft against Plaintiff." FAC ¶ 54. A grand jury that never learned that the accused transactions were tied to another person's card was not presented with "all the facts." *Cuadra*, 626 F.3d at 813.

52. The City also asserts that the withheld evidence merely "showed his lack of guilt" and "is not considered for probable cause determination." Mot. at 20. For the reasons in Part VI.D, evidence that someone else made the transactions is not a defense; it negates the factual basis for the charge. Its omission is precisely the kind of taint that preserves the chain of causation. Whether the grand jury was misled cannot be resolved against Plaintiff on the pleadings, before he has seen the District Attorney's file or the grand jury materials.

**F. Count V states a § 1983 conspiracy claim against the City.**

53. The City argues that the conspiracy claim fails for the same reasons as the substantive claims, and because the FAC does not allege how the City, acting through a majority of its Commission, joined the conspiracy. Mot. at 22–23. Because the FAC plausibly pleads underlying constitutional violations arising from the PAC-fund prosecution (Parts VI.D–E), the first argument fails. *See Pfannstiel*, 918 F.2d at 1187. The second fails for the reasons in Part VI.C: the FAC alleges that the City acted through its Commission's audit vote, through officials with

delegated final authority, and through ratification. FAC ¶¶ 38, 50, 81–83. The FAC also identifies the participants, the object, the overt acts, and the sequence of events from which an agreement may be inferred. FAC ¶¶ 50, 120–123. That is enough to raise "a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556.

**VII. ALTERNATIVE REQUEST FOR LEAVE TO AMEND**

54. If the Court concludes that any claim challenged by the City is insufficiently pleaded, Plaintiff respectfully requests leave to amend under Rule 15(a)(2), which directs that leave be "freely give[n] when justice so requires." Courts ordinarily afford a plaintiff an opportunity to cure pleading deficiencies before dismissing with prejudice, unless the defects are incurable. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The deficiencies the City identifies as to the PAC-fund prosecution are not incurable. If required, Plaintiff can plead additional facts concerning the Commission's vote and Audit Committee proceedings, the delegation of authority over criminal referrals and Fire Department discipline, the City officials' communications with the Brownsville Police Department and the District Attorney's Office regarding the PAC-fund charges, and the timing of the City's receipt of the Longoria information. Any dismissal of those claims should be without prejudice.

**VIII. CONCLUSION AND PRAYER**

55. The City asks the Court to treat this case as a stale challenge to a 2019 termination. The claims that remain against the City arise instead from a felony prosecution that the FAC alleges City officials helped push forward, and then kept alive by withholding the fact that the disputed transactions were tied to another man's card. FAC ¶ 50. That prosecution ended in April 2025, and Plaintiff sued within a year. The City's own exhibit confirms that the termination proceeding did not address those charges. Ex. A, Doc. 37-1 at 4, ¶ 11(2).

WHEREFORE, PREMISES CONSIDERED, Plaintiff Carlos Alberto Elizondo respectfully requests that the Court DENY Defendant City of Brownsville's Second Rule 12(b)(6) Motion to Dismiss (Doc. 41) as to Counts I, II, III, and V insofar as those claims arise from the theft and misapplication prosecution that terminated in Plaintiff's favor in April 2025. Plaintiff does not oppose dismissal of Count IV as to the City, or of claims against the City premised solely on the 2019 termination or the computer-access prosecution. In the alternative, Plaintiff requests that any dismissal be without prejudice and that the Court grant Plaintiff leave to file an amended complaint. Plaintiff further requests all other relief to which he may be justly entitled.

Dated: October 23, 2026.

Respectfully submitted,

BARRERA, SANCHEZ & ASSOCIATES, P.C.
10113 N. 10th Street, Suite A
McAllen, Texas 78504
Telephone: (956) 287-7555
Facsimile: (956) 287-7711

Email: marcus@bsmlawyers.com
Email: melissa@bsmlawyers.com

By: /s/ Marcus C. Barrera

Marcus C. Barrera
Texas Bar No. 00790271
ATTORNEY-IN-CHARGE FOR PLAINTIFF
CARLOS ALBERTO ELIZONDO

**CERTIFICATE OF SERVICE**

I certify that on October 23, 2026, a true and correct copy of the foregoing Response was filed electronically through the Court's CM/ECF system, which will send notification of the filing to all counsel of record as follows:

Tamara Y. Imam and Mark J. Murphy
timam@mooneygreen.com
mmurphy@mooneygreen.com

Matt Bachop
mbachop@ddollaw.com

Kevin M. Curley
kevin@txmunicipallaw.com

*/s/ Marcus C. Barrera*
Marcus C. Barrera