United States District Court
Southern District of Texas
FILED
OCT 23 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **CARLOS ALBERTO ELIZONDO** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **CITY OF BROWNSVILLE, JARRETT SHELDON, INDIVIDUALLY AND AS FIRE CHIEF FOR THE CITY OF BROWNSVILLE, CESAR DE LEON, INDIVIDUALLY AND AS A BROWNSVILLE CITY COMMISSIONER, THE ESTATE OF BEN NEECE, INDIVIDUALLY AND AS A BROWNSVILLE CITY COMMISSIONER, AND THE BROWNSVILLE FIREFIGHTERS ASSOCIATION LOCAL 970** | § | **CIVIL ACTION NO. 1:26-CV-00491** |

**PLAINTIFF CARLOS ALBERTO ELIZONDO'S RESPONSE IN OPPOSITION TO DEFENDANTS CESAR DE LEON'S AND THE ESTATE OF BEN NEECE'S SECOND RULE 12(b)(6) MOTION TO DISMISS, INCLUDING BASED ON QUALIFIED IMMUNITY**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Carlos Alberto Elizondo ("Plaintiff" or "Elizondo") files this Response in Opposition to Defendants Cesar De Leon's and the Estate of Ben Neece's Second Rule 12(b)(6) Motion to Dismiss, Including Based on Qualified Immunity (Doc. 42) (the "Motion"), and respectfully shows the Court as follows.

## I. SUMMARY OF THE RESPONSE

1. The First Amended Complaint (Doc. 37) ("FAC") alleges that two sitting City Commissioners, Cesar De Leon and Ben Neece, tried to use Elizondo's elected seat on the Brownsville ISD Board for their own private gain. When he told them he would not because "it involved corruption," FAC ¶ 89, they set the City's machinery against him. They arranged an audit to manufacture a pretext. FAC ¶ 38. They urged the Union and the Fire Chief to "push the Theft and misappropriation of union funds charges against Plaintiff." FAC ¶ 50. And they joined in maintaining those charges after learning that the disputed transactions were tied to another man's card. *Id.* The prosecution lasted until April 2025. FAC ¶ 68.

2. The Motion raises four grounds. None warrants dismissal of the claims arising from that prosecution.

1. **Limitations.** Claims that challenge the validity of a criminal prosecution, including fabrication of evidence, accrue when the prosecution ends in the plaintiff's favor. *McDonough v. Smith*, 588 U.S. 109 (2019); *Thompson v. Clark*, 596 U.S. 36, 39 (2022). The PAC-fund prosecution ended in April 2025, and Plaintiff sued within one year. FAC ¶ 70. Plaintiff does not pursue these Defendants on claims based solely on the 2019 termination or the computer-access prosecution, and does not oppose dismissal of Count IV (stigma-plus) as to them.

2. **Res judicata and collateral estoppel.** Defendants concede they "were not . . . named as parties to the prior state court proceeding." Mot. at 12. That proceeding ended in 2022, three years before the PAC-fund prosecution terminated, and reviewed a termination order that expressly "does not relate to or involve the facts connected with the criminal complaints by the fire union." Doc. 37-1 at 4, ¶ 11(2).

3. **Personal involvement.** Defendants say the FAC does not allege "that either Defendant had any knowledge or did anything regarding those charges." Mot. at 10. However, the FAC alleges that the charges were pushed "through the urging of Neece and De Leon," and that, "[d]espite all of this information," Neece and De Leon "maintained that the theft and misappropriated funds were Plaintiff's fault." FAC ¶ 50; *see also* FAC ¶¶ 71–73, 103, 110, 123.

4. **Qualified immunity.** Long before 2017 it was clearly established that officials may not retaliate against a citizen's speech by subjecting him to criminal process, *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002), and may not fabricate evidence to bring false charges. *Cole v. Carson*, 935 F.3d 444, 452–53 (5th Cir. 2019) (en banc). Defendants' reliance on *Espinal v. City of Houston*, 96 F.4th 741, 748–49 (5th Cir. 2024), concerns the free-standing malicious-prosecution label; it does not reach the fabrication, retaliation, and conspiracy claims, and it does not immunize the knowing use of false information to procure a seizure, which has been unlawful since *Franks v. Delaware*, 438 U.S. 154 (1978).

3. The Motion should be denied except as to the matters Plaintiff does not contest.

## II. NATURE AND STAGE OF THE PROCEEDING

4. Plaintiff filed this action in the 138th Judicial District Court of Cameron County, Texas, on March 31, 2026, and it was removed on May 1, 2026. FAC ¶¶ 2, 12–13. After a hearing on Defendants' first motions to dismiss on September 1, 2026, the Court granted Plaintiff leave to

amend (Doc. 36), and Plaintiff filed the FAC on September 18, 2026 (Doc. 37). On October 9, 2026, De Leon and the Estate of Neece filed the present Motion (Doc. 42); the City and Sheldon filed separate motions (Docs. 40, 41); and Local 970 filed its motion on October 16, 2026 (Doc. 44). No scheduling order has been entered and no discovery has occurred.

5. De Leon is sued in his individual capacity. FAC ¶ 9. The Estate of Neece is sued based on Neece's individual conduct as a City Commissioner. FAC ¶ 10. The FAC asserts against them First Amendment retaliation (Count I), Fourth Amendment malicious prosecution (Count II), fabrication or material misrepresentation of evidence (Count III), stigma-plus (Count IV), and conspiracy (Count V), all under 42 U.S.C. § 1983. FAC ¶¶ 88–124; Mot. at 1–2.

## III. STATEMENT OF THE ISSUES

1. Whether claims challenging the theft and misapplication prosecution, which terminated in Plaintiff's favor in April 2025, are timely when Plaintiff sued on March 31, 2026.
2. Whether a 2022 state-court judgment, in a proceeding to which Defendants were not parties and which reviewed a termination order that excluded the PAC-fund charges, bars claims that had not yet accrued.
3. Whether the FAC plausibly alleges each Defendant's personal involvement in the PAC-fund prosecution.
4. Whether the FAC alleges conduct that violated clearly established law, so as to overcome qualified immunity at the pleading stage.
5. Whether the FAC plausibly alleges the absence of probable cause and that the grand jury was tainted by withheld information.

6. Each issue is reviewed under the standards set out in Part V.

## IV. STATEMENT OF FACTS AS PLEADED

7. The following facts are drawn from the FAC and its exhibits, which are part of the pleading for all purposes. Fed. R. Civ. P. 10(c); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Exhibit A is Chief Sheldon's October 17, 2019, Order of Indefinite Suspension (Doc. 37-1) ("Ex. A"). Exhibit B is a collection of contemporaneous news reports (Doc. 37-2) ("Ex. B").

### A. The Commissioners' demands and Elizondo's refusal.

8. Elizondo was Brownsville's Fire Chief and, at the same time, an elected trustee of the Brownsville Independent School District. FAC ¶¶ 28–29. He now serves as President of the BISD Board. FAC ¶ 28. The FAC describes five specific demands the Commissioners made on him:

1. De Leon pressured him to use his BISD position to handle a class-rank matter for the daughter of De Leon's friend, a sitting state district judge. FAC ¶ 31(1).

2. De Leon brought him to a meeting with the owner of a Mexican banana plantation and pressured him to award that man a BISD supply contract in which De Leon would participate. FAC ¶ 31(2).

3. De Leon pressured him for BISD legal work at $300 per hour and future payments for attending meetings as BISD's lawyer. FAC ¶ 31(3).

4. Neece pressured him to obtain a contract for Neece to represent BISD. FAC ¶ 31(4).

5. Neece pressured him to change an official report about a child injured at the home of Neece's girlfriend to falsely place the City Attorney, Mark Sossi, at the scene, because Neece wanted Sossi fired. FAC ¶ 31(5). When Elizondo refused, "Neece became angry." *Id.* Neece and De Leon then voted with the majority to fire Sossi in August 2017. *Id.*

9. A recording exists of De Leon referring to these matters. FAC ¶¶ 33, 122. Elizondo refused, and "told them verbally that he could not do what they were asking him to do." FAC ¶ 35. He "specifically told both Neece and De Leon that he could not do what they were asking because it involved corruption." FAC ¶ 89. He spoke "in his capacity as a citizen and elected public official, not merely as part of his ordinary Fire Department duties." FAC ¶ 36. De Leon and Neece "knew of Plaintiff's protected activity and refusal to engage in corruption and opposed it." FAC ¶ 90.

10. De Leon's hostility was also public. After a recording of a private conversation between De Leon and Elizondo, in which De Leon used racial slurs about two assistant district attorneys, surfaced in September 2017, De Leon publicly blamed a City employee and said "the recording was released as a relation [sic] for Elizondo being demoted to lieutenant." Ex. B, Doc. 37-2 at 2, 9.

**B. The audit, the demotion, and the charges.**

11. After Elizondo refused, De Leon and Neece "began efforts to remove him as Fire Chief and damage his professional reputation." FAC ¶ 37. City Manager Cabler "carried out requests by Neece and De Leon to hold a vote to commence an audit" of non-emergency ambulance referrals, even though Cabler himself had told Elizondo to route those calls to private providers,

"in order to place Plaintiff in a bad light and create a pretext for firing him." FAC ¶ 38. The audit found no financial benefit to Elizondo and determined that Cabler knew of and did not object to the practice. FAC ¶ 39. Elizondo was demoted on September 7, 2017. FAC ¶ 45.

12. On or about October 17, 2017, Elizondo was arrested on charges of theft by a public servant and misapplication of fiduciary property concerning Local 970's PAC funds. FAC ¶¶ 48–49. Local 970's president "worked directly with Sheldon and the City of Brownsville, *through the urging of Neece and De Leon*, to push the Theft and misappropriation of union funds charges against Plaintiff." FAC ¶ 50 (emphasis added). The disputed transactions were associated with a card issued to another union member, Marco Longoria; Sheldon learned this but "never relayed this information to the DA's Office or the grand jury." *Id.* "Despite all of this information, Sheldon, *Neece, De Leon*, the City of Brownsville, and Local 970 maintained that the theft and misappropriated funds were Plaintiff's fault." *Id.* (emphasis added).

**C. Each Commissioner's individual conduct.**

13. The FAC pleads each Commissioner's conduct separately. De Leon "personally participated in the pressure campaign directed at Plaintiff and used his position as a City Commissioner to influence City administration concerning Plaintiff." FAC ¶ 71. Neece "personally participated in the same campaign and used his position as a City Commissioner to influence City administration concerning Plaintiff." FAC ¶ 72. Both "caused or encouraged scrutiny, audit activity, employment action, and criminal referrals through the City of Brownsville after Plaintiff refused to use his BISD position for their illegal, private professional requests." FAC ¶ 73. They retaliated "by pressuring City administration, promoting and voting on investigations, using the audit as a pretext, supporting criminal referrals, and participating in Plaintiff's removal." FAC ¶ 91. The defendants "conspired, under the direction of Neece and De Leon," to create "false and materially misleading arrest warrant affidavits" and "failed to correct the facts on alleged misspending," and "as a result a grand jury indicted Plaintiff based on that fraud." FAC ¶¶ 103, 123. Their "malicious motive . . . led them to withhold relevant information or otherwise misdirect the grand jury by omission and/or commission." FAC ¶ 103. And they "knowingly fabricated, manipulated, or materially misrepresented evidence concerning . . . PAC funds." FAC ¶¶ 106, 110.

**D. The termination proceeding excludes the PAC-fund charges, and the prosecution ends.**

14. Sheldon's October 17, 2019, Order of Indefinite Suspension states that it "does not relate to or involve the facts connected with the criminal complaints by the fire union," and reserves those matters until "the criminal case involving those charges is concluded." Ex. A, Doc. 37-1 at 4, ¶ 11(2)–(3). The theft and misapplication charges were dismissed in April 2025. FAC ¶¶ 68, 102. Elizondo sued on March 31, 2026. FAC ¶ 70.

## V. STANDARDS OF REVIEW

### A. Rule 12(b)(6).

15. A complaint survives a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Plausibility "is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and [are] rarely granted." *Lormand*, 565 F.3d at 232 (citation omitted).

16. Limitations, res judicata, and collateral estoppel are affirmative defenses, Fed. R. Civ. P. 8(c)(1), and support dismissal only where "it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (cited at Mot. at 4). The Court may take judicial notice of the existence of another court's judgment, but not of factual findings in that proceeding for their truth. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830–31 (5th Cir. 1998) (cited at Mot. at 6); Fed. R. Evid. 201(b).

### B. Qualified immunity at the pleading stage.

17. Once a defendant invokes qualified immunity, the plaintiff bears the burden to show it does not apply. Mot. at 13–14. At the motion-to-dismiss stage, that burden is met when the complaint pleads specific facts that allow the court to draw the reasonable inference that the defendant is liable and that defeat a qualified-immunity defense with equal specificity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). The plaintiff need not plead legal authority in the complaint; the clearly-established question is a legal one addressed in briefing. If the Court finds the FAC insufficiently specific, the proper course is to order a tailored reply under Rule 7(a). *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995) (en banc).

18. A right is clearly established when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (cited at Mot. at 14). The Supreme Court "does not require a case directly on point," *White v. Pauly*, 580 U.S. 73, 79 (2017) (cited at Mot. at 15), and officials "can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). In an obvious case, general constitutional principles give fair warning without a prior case involving similar facts. *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (per curiam). And the analysis turns on the conduct, not the label of the cause of action: the question is whether a reasonable official in the defendant's position would have known the specific conduct alleged was unlawful. *Anderson*, 483 U.S. at 640.

## VI. ARGUMENT AND AUTHORITIES

**A. The claims arising from the PAC-fund prosecution are timely.**

19. Section 1983 borrows Texas's two-year personal-injury limitations period. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); Mot. at 4. Defendants' contention that a one-year period governs malicious prosecution, Mot. at 4, is foreclosed by *Owens v. Okure*, 488 U.S. 235, 249–50 (1989), which requires § 1983 claims to borrow the general personal-injury period rather than the period for a specific intentional tort. The question is academic: Plaintiff sued within one year of the April 2025 dismissal. FAC ¶ 70.

20. Defendants argue that because their alleged acts occurred while they were Commissioners, every claim accrued by July 2019 for De Leon, and by June 2021 for Neece. Mot. at 6–7. That confuses the timing of the defendant's conduct with the accrual of the plaintiff's claim. A claim accrues when the plaintiff has "a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). For claims that challenge the integrity of a criminal prosecution, that does not occur until the prosecution ends in the plaintiff's favor, however long ago the defendants acted. *McDonough*, 588 U.S. 109; *Thompson*, 596 U.S. at 39.

21. Plaintiff does not argue that a timely malicious-prosecution claim can "relate back and save other allegedly related civil rights claims." Mot. at 2. Each claim has its own accrual rule:

- **Count II (malicious prosecution).** Defendants concede that a malicious-prosecution claim based on the PAC-fund charges "could survive limitations." Mot. at 9. The "unlawful seizure" in Count II is the seizure pursuant to legal process that is an element of that claim, *Thompson*, 596 U.S. at 42–43; *Manuel v. City of Joliet*, 580 U.S. 357, 368–69 (2017), not a free-standing false-arrest claim governed by *Wallace*. *Cf.* Mot. at 8 n.4.

- **Count III (fabrication of evidence).** Defendants argue this claim accrued when Plaintiff was "arrested, charged, and criminal proceedings commenced." Mot. at 7. *McDonough* holds the opposite: a fabricated-evidence claim challenging a criminal prosecution does not accrue until the prosecution terminates in the accused's favor. 588 U.S. 109. Count III is timely insofar as it concerns the PAC-fund prosecution. FAC ¶¶ 106–107.

- **Count I (First Amendment).** Count I alleges that De Leon and Neece retaliated by, among other things, "supporting criminal referrals." FAC ¶ 91; *see* Mot. at 7. A retaliatory-prosecution claim requires the plaintiff to plead and prove the absence of probable cause, *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006), and so challenges the validity of the prosecution in the same way. Under *McDonough*'s reasoning, such a claim accrues on favorable termination. Plaintiff does not pursue Count I against these Defendants for the 2017 demotion or 2019 termination as independent adverse actions; those events

remain admissible as background evidence of motive. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

- **Count V (conspiracy).** Defendants argue the conspiracy claim accrued with each overt act. Mot. at 10 (citing *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987)). But a § 1983 conspiracy is actionable only for the deprivation it causes, *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (cited at Mot. at 24), and where that deprivation is a malicious or fabricated prosecution the claim cannot accrue before the prosecution ends. *McDonough*, 588 U.S. 109.

22. Defendants also misstate the FAC when they assert that Plaintiff "was arrested, charged, and criminal proceedings commenced in 2019." Mot. at 7. The FAC alleges the arrest and PAC-fund charges came in October 2017. FAC ¶¶ 48–49. The date matters to qualified immunity, addressed below, but not to accrual.

23. Plaintiff does not pursue these Defendants on any claim based on the computer-access prosecution, which ended in an acquittal in September 2019. FAC ¶ 101. Count IV is addressed in Part VI.G.

**B. Res judicata and collateral estoppel do not apply.**

24. Texas res judicata requires "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); Mot. at 11. Defendants cannot establish the second or third elements.

25. **No privity.** Defendants acknowledge that they "were not a named [sic] as parties to the prior state court proceeding." Mot. at 12. They argue they "should stand in privity with the City" because they are sued "for their actions as commissioners." *Id.* But Texas recognizes privity only where the nonparty controlled the prior action, had its interests represented by a party to it, or is a successor in interest to a party. *Amstadt*, 919 S.W.2d at 653. Defendants allege none of these. They are sued in their individual capacities for personal damages, FAC ¶¶ 9–10, and they assert personal defenses, such as qualified immunity, that the City could not have represented in a substantial-evidence review of a civil service decision. Defendants also cite no authority holding that individual officials are in privity with their municipality for res judicata purposes.

26. **The claims could not have been raised.** The state district court entered judgment on February 9, 2022. Mot. at 5. The PAC-fund prosecution was then still pending and did not end until April 2025. FAC ¶¶ 68, 102. Claims challenging that prosecution had not accrued, *McDonough*, 588 U.S. 109, and a claim that has not accrued is not one that "could have been

raised" in the earlier suit. *Barr v. Resolution Tr. Corp.*, 837 S.W.2d 627, 630–31 (Tex. 1992). A prior judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955).

27. **The PAC-fund charges were outside the prior proceeding.** The civil service appeal reviewed Sheldon's Order of Indefinite Suspension, Mot. at 11–12, which "does not relate to or involve the facts connected with the criminal complaints by the fire union." Ex. A, Doc. 37-1 at 4, ¶ 11(2). Defendants rely on that very paragraph to argue that the financial charges "were expressly excluded from being involved in any of the City-related matters." Mot. at 19 (citing Doc. 37-1, ¶ 11(2)). The PAC-fund charges cannot be both excluded from the termination proceeding and part of its "transaction." *Cox v. Nueces County*, 839 F.3d 418, 421 (5th Cir. 2016), on which Defendants rely, Mot. at 12–13, involved claims arising from the reviewed employment action itself. Plaintiff no longer pursues such claims against these Defendants.

28. **No collateral estoppel.** Issue preclusion requires that the facts at issue were "fully and fairly litigated" and "essential to the judgment" in the first action. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). Defendants identify no issue decided in the civil service appeal concerning the PAC-fund prosecution or their role in it. None could have been decided, because the Order under review expressly excluded those charges. Ex. A, Doc. 37-1 at 4, ¶ 11(2).

**C. The FAC pleads each Commissioner's personal involvement in the PAC-fund prosecution.**

29. Defendants argue that "while [Plaintiff] suggests that Defendants were involved in 'urging' the charges, Plaintiff does not allege that either Defendant had any knowledge or did anything regarding those charges." Mot. at 10. They invoke the rule that a plaintiff "must plead that each defendant individually engaged in actions that caused the unconstitutional harm." Mot. at 17 (quoting *Jones v. Hosemann*, 812 F. App'x 235, 238–39 (5th Cir. 2020)).

30. The FAC meets that rule. It alleges what each Commissioner wanted from Elizondo, FAC ¶ 31(1)–(5); that each was told no because the demands "involved corruption," FAC ¶ 89; that each "personally participated" in the campaign that followed, FAC ¶¶ 71–72; and that each "caused or encouraged . . . criminal referrals through the City of Brownsville." FAC ¶ 73. As to the PAC-fund charges specifically, it alleges three things:

- **Urging.** The charges were pushed by the Union and the City "through the urging of Neece and De Leon." FAC ¶ 50. Urging a prosecution is doing something regarding it.
- **Knowledge.** The same paragraph alleges that "[d]espite all of this information," including the fact that the transactions were tied to Longoria's card, "Neece, De Leon, the City of

Brownsville, and Local 970 maintained that the theft and misappropriated funds were Plaintiff's fault." *Id.* That is an allegation that both Commissioners knew the accusation was unfounded and persisted in it anyway.

- **Direction.** The defendants "conspired, under the direction of Neece and De Leon," to create "false and materially misleading arrest warrant affidavits" and to withhold the true facts, "and as a result a grand jury indicted Plaintiff based on that fraud." FAC ¶¶ 103, 123; *see also* FAC ¶¶ 106, 110.

31. These allegations are specific to De Leon and Neece. The FAC does not lump them with other defendants; it pleads that they directed and urged the conduct, and it identifies the motive peculiar to them. FAC ¶¶ 31–37, 71–73, 90–91. The FAC also pleads that De Leon publicly linked the September 2017 leak of his recorded racial slurs to Elizondo's demotion, Ex. B, Doc. 37-2 at 2, 9, and that Neece "became angry" when Elizondo refused to falsify a report. FAC ¶ 31(5). These facts make it plausible that the Commissioners wanted Elizondo prosecuted. *Iqbal*, 556 U.S. at 679 (plausibility draws on "judicial experience and common sense"). Knowledge and intent may be alleged generally. Fed. R. Civ. P. 9(b).

**D. Count I states a First Amendment retaliation claim that overcomes qualified immunity.**

**1. Elizondo engaged in protected speech.**

32. A retaliation claim requires protected activity, an injury that would chill a person of ordinary firmness, and a causal connection. *Keenan*, 290 F.3d at 258; Mot. at 17. Defendants challenge only the first element, characterizing the FAC as based on Elizondo's "refusing to engage in conduct." Mot. at 18. The FAC alleges speech. Elizondo "communicated his opposition to improper influence, misuse of public office, and governmental corruption to De Leon and Neece and told them verbally that he could not do what they were asking him to do." FAC ¶ 35. He "specifically told both Neece and De Leon that he could not do what they were asking because it involved corruption." FAC ¶ 89.

33. Speech opposing the corrupt use of public office is speech on a matter of public concern of the highest order. *See Lane v. Franks*, 573 U.S. 228, 241 (2014) (speech about "corruption in a public program and misuse of state funds . . . obviously involves a matter of significant public concern"). Elizondo was not De Leon's or Neece's subordinate in the matters they raised. He spoke as an elected BISD trustee about BISD contracts, litigation, and legal work. FAC ¶¶ 30–33, 36. That speech fell outside his duties as a fire department employee, so he spoke as a citizen. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Defendants' case, *Boisseau v. Town of Walls*, 138 F. Supp. 3d 792, 802 (N.D. Miss. 2015), as Defendants describe it, concerned a refusal to "fix" a charge, Mot. at 18, not an express verbal objection to official corruption.

**2. The FAC pleads the absence of probable cause for the PAC-fund prosecution.**

34. Defendants argue that a retaliatory-prosecution theory requires negating probable cause. Mot. at 18 (citing *Nieves v. Bartlett*, 587 U.S. 391, 403–04 (2019)); *see Hartman*, 547 U.S. at 265–66. Their probable-cause argument, however, is directed almost entirely at the computer-access charges, Mot. at 18–19, which Plaintiff does not pursue against them. As to the PAC-fund charges, Defendants say only that they "were advanced based on information from someone with knowledge of the Association's finances, which supported probable cause." Mot. at 19.

35. That argument assumes the truth of information the FAC alleges was false and known to be false. The FAC alleges the transactions were tied to Marco Longoria's card, and that De Leon and Neece maintained the accusation anyway. FAC ¶ 50. Probable cause cannot rest on information that officials know is false, and a probable-cause determination procured by deliberate or reckless falsehoods or material omissions does not protect those who procured it. *Franks*, 438 U.S. at 155–56; *Winfrey v. Rogers*, 901 F.3d 483, 494–95 (5th Cir. 2018). Evidence that a different person's card made the transactions is not a "defense that may be raised in future proceedings," Mot. at 19 (quoting *Hall v. Trochessett*, 105 F.4th 335, 342 (5th Cir. 2024)); it negates the factual basis for the charge.

36. Defendants also rely on "arguable" probable cause. Mot. at 18–19. Even under that standard, no reasonable official could believe probable cause existed to charge a man with stealing funds through transactions the official knew were made with someone else's card.

**3. The right was clearly established.**

37. Defendants contend that Plaintiff identified only *Keenan* and *Cole* at the hearing and that neither is factually similar. Mot. at 20. Clearly established law does not require a case with identical facts. *Hope*, 536 U.S. at 741; *White*, 580 U.S. at 79. The question is whether, in 2017, a reasonable official would have understood that using criminal process to punish a citizen for speaking out against official corruption violated the First Amendment.

38. It was. In *Keenan*, the Fifth Circuit held in 2002 that officials who subjected citizens to a stop, detention, and criminal charges in retaliation for their criticism of public officials could be liable for First Amendment retaliation, and it set out the governing elements. 290 F.3d at 258. Defendants dismiss *Keenan* as a case about a traffic stop and "deadly conduct charges," Mot. at 20, but that is the point: *Keenan* establishes that officials may not use the machinery of criminal enforcement against a citizen because of his speech. In 2006, the Supreme Court recognized the retaliatory-prosecution claim and defined its elements. *Hartman*, 547 U.S. at 256, 265–66. By 2014, it was settled that speech about public corruption is "obviously" a matter of public concern. *Lane*, 573 U.S. at 241. Officials who, after a citizen refused to join their corrupt

schemes, urged and directed a criminal prosecution against him and maintained it while knowing the accusation was false would have had fair warning that their conduct was unconstitutional. And if this were not established by precedent, it is an obvious case. *Taylor v. Riojas*, 592 U.S. at 8–9.

39. Defendants also argue that Plaintiff cited only these cases in the FAC. Mot. at 20. A complaint is not a brief. The FAC pleads facts; the clearly-established inquiry is a legal question that Plaintiff addresses here. *Backe*, 691 F.3d at 648.

**E. Counts II and III state claims that overcome qualified immunity.**

**1. The FAC pleads a constitutional violation, including taint of the grand jury.**

40. Defendants argue that the grand jury's indictment broke the chain of causation. Mot. at 21 (quoting *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010)). But the chain is broken "only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Cuadra*, 626 F.3d at 813 (citation omitted); *see also Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988); *Buehler v. City of Austin*, 824 F.3d 548, 554 (5th Cir. 2016).

41. Defendants note that *Cuadra* "rejected the plaintiff's generalized allegations of 'taint.'" Mot. at 21. The FAC's allegations are specific. It identifies the exculpatory fact (the transactions were tied to Longoria's card), the people who knew it (including De Leon and Neece), and to whom it was not disclosed ("the DA's Office or the grand jury"). FAC ¶ 50. It alleges that the defendants' "malicious motive . . . led them to withhold relevant information or otherwise misdirect the grand jury by omission and/or commission," FAC ¶ 103, and that they "omitted material facts that undermined probable cause . . . and which mislead officials at the DA's office and the Grand Jury." FAC ¶ 107. A grand jury that never learned that the accused transactions were made with someone else's card was not presented with "all the facts." *Cuadra*, 626 F.3d at 813.

42. Defendants characterize this as a complaint that they "failed to raise potentially defensive arguments to negate Plaintiff's criminal guilt." Mot. at 21. It is not. The FAC alleges that Defendants urged and directed a prosecution they knew rested on a false identification of the person who made the transactions. FAC ¶¶ 50, 103. That is not a failure to anticipate a defense; it is the knowing pursuit of a false charge.

**2. Count III (fabrication) was clearly established long before 2017.**

43. Defendants' clearly-established argument addresses only malicious prosecution. Mot. at 21–22. It says nothing about Count III. The Fifth Circuit has long recognized a due process right not to have officials deliberately fabricate evidence and use it to bring false charges, and in *Cole v. Carson* it held that officers alleged to have done so in 2010 were not entitled to qualified immunity. 935 F.3d at 452–53 (en banc); *see* FAC ¶¶ 111, 142. Count III alleges that Defendants "knowingly fabricated, manipulated, or materially misrepresented evidence concerning . . . PAC funds" and "used the false or materially misleading evidence to initiate or maintain criminal proceedings." FAC ¶¶ 106, 108. Defendants dismiss *Cole* as a deadly-force case, Mot. at 20, but its fabrication holding does not depend on the use of force. The principle that officials may not manufacture or knowingly misrepresent evidence to bring criminal charges against a person was clearly established years before Defendants' 2017 conduct.

**3. *Espinal* does not immunize the conduct alleged in Count II.**

44. Defendants rely on *Espinal v. City of Houston*, 96 F.4th 741, 748–49 (5th Cir. 2024), and *Green v. Thomas*, 129 F.4th 877, 885–86 (5th Cir. 2025), for the proposition that, because the Fifth Circuit did not recognize a free-standing constitutional malicious-prosecution claim between 2003 and 2022, the law on malicious prosecution was not clearly established when Defendants acted. Mot. at 21–22. Plaintiff acknowledges those decisions. They do not require dismissal of Count II, for two reasons.

45. First, qualified immunity turns on whether the *conduct* was clearly unlawful, not on whether a particular cause-of-action label was available. *Anderson*, 483 U.S. at 640. Even during the period *Espinal* describes, it was clearly established that causing a person's seizure through legal process procured by deliberately or recklessly false statements or material omissions violates the Fourth Amendment. *Franks*, 438 U.S. at 155–56; *Winfrey*, 901 F.3d at 494–95. The Fifth Circuit's en banc decision in *Castellano v. Fragozo*, 352 F.3d 939, 953–54 (5th Cir. 2003) (en banc), which ended the free-standing malicious-prosecution claim, itself recognized that the initiation of charges without probable cause may give rise to claims under explicit constitutional protections, including the Fourth Amendment where the accused is seized. Count II alleges exactly that kind of seizure, procured by "false and materially misleading arrest warrant affidavits" and by withholding material information from the grand jury. FAC ¶¶ 97–98, 100, 103.

46. Second, to the extent *Espinal* forecloses the malicious-prosecution label for pre-2022 conduct, the same facts remain actionable under Counts I, III, and V. The Court therefore need not resolve the reach of *Espinal* to deny the Motion as to the core of this case. Plaintiff preserves his position that *Espinal* does not bar Count II for further review.

**F. Count V states a § 1983 conspiracy claim.**

47. Defendants argue that the conspiracy claim fails because the underlying claims fail. Mot. at 24 (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)). Because the FAC states underlying violations arising from the PAC-fund prosecution (Parts VI.D–E), that argument fails. The FAC also pleads the elements of the conspiracy: the participants (De Leon, Neece, Sheldon, City officials, and Local 970), FAC ¶ 120; the object ("to remove Plaintiff, damage his reputation, and justify the removal through criminal accusations and disciplinary proceedings"), *id.*; the direction by De Leon and Neece, FAC ¶¶ 50, 103, 123; and the overt acts, including "supplying or supporting PAC-fund accusations" and "withholding material exculpatory information." FAC ¶ 122. That is enough to raise "a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556. The law that officials may not conspire to bring false charges in retaliation for protected speech was clearly established for the reasons in Parts VI.D.3 and VI.E.2.

**G. Count IV.**

48. Count IV (stigma-plus) rests on stigmatizing charges used in connection with Plaintiff's 2019 termination and the related civil service proceeding. FAC ¶¶ 115–117; Mot. at 23–24. Plaintiff does not oppose dismissal of Count IV as to De Leon and the Estate of Neece.

## VII. ALTERNATIVE REQUEST FOR A *SCHULTEA* REPLY OR LEAVE TO AMEND

49. If the Court concludes that the FAC does not plead facts with enough specificity to address qualified immunity, Plaintiff requests that the Court order a Rule 7(a) reply tailored to the defense. *Schultea*, 47 F.3d at 1433–34. Alternatively, Plaintiff requests leave to amend under Rule 15(a)(2), which directs that leave be "freely give[n] when justice so requires." Courts ordinarily afford a plaintiff an opportunity to cure pleading deficiencies before dismissing with prejudice. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). If required, Plaintiff can plead additional facts concerning De Leon's and Neece's communications with City administration, Chief Sheldon, and Local 970 about the PAC-fund charges; the content of the recordings referenced in the FAC, FAC ¶¶ 33, 122; and the timing of each Commissioner's knowledge of the Longoria information. Any dismissal of the claims arising from the PAC-fund prosecution should be without prejudice.

## VIII. CONCLUSION AND PRAYER

50. Defendants ask the Court to read the FAC as alleging nothing about their role in the PAC-fund charges beyond a passing reference to "urging." Mot. at 10. The FAC alleges much more: that the charges were pushed "through the urging of Neece and De Leon," that the scheme was carried out "under the direction of Neece and De Leon," and that both maintained the accusation "[d]espite all of this information." FAC ¶¶ 50, 103, 123. Those claims arise from a

prosecution that ended in April 2025, were not and could not have been litigated in the earlier civil service appeal, and rest on conduct that was clearly unlawful when it occurred.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Carlos Alberto Elizondo respectfully requests that the Court DENY Defendants Cesar De Leon's and the Estate of Ben Neece's Second Rule 12(b)(6) Motion to Dismiss (Doc. 42) as to Counts I, II, III, and V insofar as those claims arise from the theft and misapplication prosecution that terminated in Plaintiff's favor in April 2025. Plaintiff does not oppose dismissal of Count IV as to these Defendants, or of claims against them premised solely on the 2019 termination or the computer-access prosecution. In the alternative, Plaintiff requests that the Court order a *Schultea* reply or grant leave to amend, and that any dismissal be without prejudice. Plaintiff further requests all other relief to which he may be justly entitled.

Dated: October 23, 2026.

Respectfully submitted,

BARRERA, SANCHEZ & ASSOCIATES, P.C.
10113 N. 10th Street, Suite A
McAllen, Texas 78504
Telephone: (956) 287-7555
Facsimile: (956) 287-7711

Email: marcus@bsmlawyers.com
Email: melissa@bsmlawyers.com

By: /s/ Marcus C. Barrera
Marcus C. Barrera
Texas Bar No. 00790271
ATTORNEY-IN-CHARGE FOR PLAINTIFF
CARLOS ALBERTO ELIZONDO

**CERTIFICATE OF SERVICE**

I certify that on October 23, 2026, a true and correct copy of the foregoing Response was filed electronically through the Court's CM/ECF system, which will send notification of the filing to all counsel of record as follows:

Tamara Y. Imam and Mark J. Murphy
timam@mooneygreen.com
mmurphy@mooneygreen.com

Matt Bachop
mbachop@ddollaw.com

Kevin M. Curley
kevin@txmunicipallaw.com

*/s/ Marcus C. Barrera*
Marcus C. Barrera