United States District Court
Southern District of Texas
FILED

OCT 23 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **CARLOS ALBERTO ELIZONDO** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **CITY OF BROWNSVILLE, JARRETT SHELDON, INDIVIDUALLY AND AS FIRE CHIEF FOR THE CITY OF BROWNSVILLE, CESAR DE LEON, INDIVIDUALLY AND AS A BROWNSVILLE CITY COMMISSIONER, THE ESTATE OF BEN NEECE, INDIVIDUALLY AND AS A BROWNSVILLE CITY COMMISSIONER, AND THE BROWNSVILLE FIREFIGHTERS ASSOCIATION LOCAL 970** | § | **CIVIL ACTION NO. 1:26-CV-00491** |

**PLAINTIFF CARLOS ALBERTO ELIZONDO'S RESPONSE IN OPPOSITION TO DEFENDANT BROWNSVILLE FIREFIGHTERS ASSOCIATION LOCAL 970'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Carlos Alberto Elizondo ("Plaintiff" or "Elizondo") files this Response in Opposition to the Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 44) (the "Motion") filed by Defendant Brownsville Firefighters Association Local 970 ("Local 970" or the "Union"), and respectfully shows the Court as follows.

## I. SUMMARY OF THE RESPONSE

1. Local 970's Motion rests on a single premise: that the First Amended Complaint (Doc. 37) ("FAC") supposedly "concedes" the Union "corrected its misunderstanding" and therefore cannot be responsible for the theft and misapplication prosecution that followed. Mot. at 10 (Doc. 44). That premise rewrites the pleading. The same paragraph the Union relies on alleges that, *after* the Longoria card information came to light, "Sheldon, Neece, De Leon, the City of Brownsville, *and Local 970 maintained that the theft and misappropriated funds were Plaintiff's fault.*" FAC ¶ 50 (emphasis added). The FAC further alleges that the Union "supported the criminal and employment consequences when they knew their initial allegations against Plaintiff were wrong," FAC ¶ 123, and "continued to support the investigation and prosecution despite . . . knowledge that another individual in the union made the alleged improper charges on the union credit card." FAC ¶ 128(e). A private word to the Fire Chief, who the FAC alleges

was a co-conspirator, is not a correction to the prosecutor or the grand jury. It is consistent with the conspiracy the FAC describes.

2. Read as a whole and in Plaintiff's favor, as Rule 12(b)(6) requires, the FAC states each of the three claims asserted against the Union:

1. **Count II (§ 1983 malicious prosecution).** The FAC pleads that Local 970's president, Jorge Lerma, "worked directly with Sheldon and the City of Brownsville, through the urging of Neece and De Leon, to push the Theft and misappropriation of union funds charges against Plaintiff." FAC ¶ 50. That is willful joint action with state actors, which makes a private party answerable under § 1983. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). Whether any intermediary's decision broke the chain of causation turns on whether the grand jury was tainted by withheld information, which the FAC expressly alleges. FAC ¶¶ 50, 103.
2. **Count V (§ 1983 conspiracy).** The FAC identifies the conspirators, the Union's representative, the time frame, the object, the motive, and the overt acts. FAC ¶¶ 50, 75–77, 120–123, 129–130. Rule 8 requires no more.
3. **Count VI (Texas malicious prosecution).** Under Texas law a complainant procures a prosecution when it "provides information which [it] knows is false" and that information causes the prosecution. *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 293 (Tex. 1994). The FAC alleges exactly that, FAC ¶¶ 127–133, and the City Defendants' own exhibit-backed record confirms that the theft case "arose out of a complaint by the fire union." Doc. 37-1 at 4, ¶ 11(1).

3. Finally, Plaintiff does not seek to recover against Local 970 on a stand-alone malicious prosecution theory arising from the computer-access prosecution that ended in 2019. The Union's limitations argument therefore supplies no ground to dismiss any count against it. The Motion should be denied.

## II. NATURE AND STAGE OF THE PROCEEDING

4. Plaintiff filed this action in the 138th Judicial District Court of Cameron County, Texas, on March 31, 2026. FAC ¶¶ 2, 12. The City of Brownsville and Jarrett Sheldon removed it on May 1, 2026, and Local 970 consented. FAC ¶ 13; Mot. at 1 (citing Docs. 1, 17). After hearing argument on Defendants' first round of motions to dismiss, the Court granted Plaintiff leave to amend (Doc. 36), and Plaintiff filed the FAC on September 18, 2026 (Doc. 37). The City Defendants filed renewed motions to dismiss on October 9, 2026 (Docs. 40, 41, 42), and Local 970 filed the present Motion on October 16, 2026 (Doc. 44). No scheduling order has been entered and no discovery has occurred.

5. The FAC asserts three claims against Local 970: Fourth Amendment malicious prosecution under 42 U.S.C. § 1983 (Count II), conspiracy under § 1983 (Count V), and malicious prosecution under Texas common law (Count VI). FAC ¶¶ 96–103, 119–137; Mot. at 4.

## III. STATEMENT OF THE ISSUES

1. Whether the FAC, accepting its well-pleaded facts as true and drawing reasonable inferences in Plaintiff's favor, plausibly alleges that Local 970 was a willful participant in joint action with City officials such that it acted under color of state law.
2. Whether the FAC plausibly alleges that Local 970 legally caused the commencement or continuation of the theft and misapplication prosecution, including whether the taint exception to the independent-intermediary doctrine applies.
3. Whether the FAC plausibly alleges a § 1983 conspiracy to which Local 970 was a party.
4. Whether the FAC plausibly alleges that Local 970 procured the theft and misapplication prosecution under Texas law by knowingly supplying false information.
5. Whether the Union's limitations argument directed at the 2019 computer-access acquittal provides any basis to dismiss a count pleaded against it.

Each issue is reviewed under the Rule 12(b)(6) standard set out in Part V.

## IV. STATEMENT OF FACTS AS PLEADED

6. The following facts are drawn from the FAC and its exhibits, which are part of the pleading for all purposes. Fed. R. Civ. P. 10(c); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Exhibit A to the FAC is Chief Sheldon's October 17, 2019 Order of Indefinite Suspension (Doc. 37-1) ("Ex. A"). Exhibit B is a collection of contemporaneous news reports (Doc. 37-2) ("Ex. B").

### A. Elizondo refuses to use his public office for the Commissioners' private benefit.

7. Elizondo served the City of Brownsville for more than nineteen years and became Fire Chief in approximately May 2016. FAC ¶¶ 26–29. He was also an elected trustee, and is now President, of the Brownsville Independent School District Board of Trustees. FAC ¶ 28. City Commissioners Cesar De Leon and Ben Neece pressured Elizondo to use his BISD position for their private and professional benefit, including steering BISD legal work and a produce contract and altering an official report. FAC ¶ 31. Elizondo refused. FAC ¶¶ 34–35. He alleges that, "[a]s a result, Plaintiff was retaliated against by Neece, De Leon, the City of Brownsville, Sheldon *and Local 970 who conspired to remove him.*" FAC ¶ 34 (emphasis added).

### B. The Union publicly accuses Elizondo as the City moves against him.

8. In the late summer of 2017, events against Elizondo moved on parallel tracks. On August 15, 2017, the City Commission, with Neece and De Leon voting in the majority, fired City Attorney Mark Sossi. FAC ¶ 31(5); Ex. B, Doc. 37-2 at 6. Two days later, on August 17, 2017, Local 970's president, Jorge Lerma, went public with the accusation that Elizondo "allegedly withdrew about $8,000" from the Union's political-action-committee ("PAC") account and asserted that Elizondo "had exclusive control of the account." Ex. B, Doc. 37-2 at 4. The same

report recorded the District Attorney's confirmation that his office had "been asked by the Brownsville Police Department to take over the investigation." *Id.* at 5. The Brownsville Police Department is a department of the City.

9. Three weeks later, on September 7, 2017, the City Manager removed Elizondo as Fire Chief. FAC ¶ 45. On October 9, 2017, Sheldon placed him on administrative leave. FAC ¶ 46. On or about October 17, 2017, Elizondo's home was searched and he was arrested on charges of theft by a public servant and misapplication of fiduciary property "concerning Brownsville Firefighters Association funds." FAC ¶¶ 48–49. The indictment was filed the next day. Ex. B, Doc. 37-2 at 19.

**C. The Union works directly with the Fire Chief, at the Commissioners' urging, to push the charges.**

10. The FAC alleges how those charges came about:

> *Local 970's then-president, Jorge Lerma, was identified as a principal complainant concerning the union's political-action-committee funds. On behalf of Local 970 he worked directly with Sheldon and the City of Brownsville, through the urging of Neece and De Leon, to push the Theft and misappropriation of union funds charges against Plaintiff.*

11. FAC ¶ 50. Sheldon's own order confirms the Union's role. He wrote that "criminal theft and misappropriation charges had been made against Elizondo by one or more members of the firefighters' union," that "[o]ne of the main complainants against Elizondo was the new Fire Association President, Jorge Lerma," and that "[t]he criminal case involving the theft and misappropriation charges . . . arose out of a complaint by the fire union." Ex. A, Doc. 37-1 at 4, ¶¶ 9, 11(1). Sheldon described Lerma as "the primary complainant against Elizondo *on behalf of the Fire Association*." *Id.* at 7, ¶ 36(1) (emphasis added). Sheldon then used the Union's charges to suspend Elizondo without pay. *Id.* at 4, ¶ 11.

12. The FAC also alleges that Local 970 "acted jointly with City officials regarding the audit, the suspension, the criminal charges, the dismissal, or otherwise reached an understanding with them, to advance criminal and employment consequences against Plaintiff," FAC ¶ 77, and that De Leon, Neece, Cabler, Sheldon, and Local 970 "used their governmental positions and influence with City administration to advance the campaign against Plaintiff." FAC ¶ 53. Local 970's participation "was not limited to neutral labor representation"; its representatives "communicated accusations to investigators and prosecutors and supported the effort that resulted in criminal charges against Plaintiff." FAC ¶ 76.

**D. The Union and the City learn the accusation is false and maintain it anyway.**

13. The disputed PAC transactions were in fact associated with a credit/ATM card issued to another union member, Marco Longoria. FAC ¶ 50. Sheldon learned this from Lerma. *Id.* Yet Sheldon "never relayed this information to the DA's Office or the grand jury to exculpate

Plaintiff." *Id.* And the FAC alleges that, "[d]espite all of this information, Sheldon, Neece, De Leon, the City of Brownsville, *and Local 970 maintained that the theft and misappropriated funds were Plaintiff's fault*." *Id.* (emphasis added).

14. The FAC repeats the point several times. Local 970 "supplied complaints and information concerning the PAC account and supported the resulting criminal and employment consequences," and "did this knowing that the alleged theft and misappropriation charges were not viable because of a determination that another union member had made the alleged purchases and withdrawals." FAC ¶ 75. Its representatives "supported the criminal and employment consequences when they knew their initial allegations against Plaintiff were wrong." FAC ¶ 123. And Local 970 "continued to support the investigation and prosecution despite information that undermined the accusations including knowledge that another individual in the union made the alleged improper charges on the union credit card." FAC ¶ 128(e). On October 19, 2017, after the indictment was filed, Lerma was again quoted publicly, insisting that the matter was "about upholding the union's credibility and integrity" and that Elizondo "was the only one overseeing PAC funds." Ex. B, Doc. 37-2 at 19.

15. The FAC pleads the Union's motive: "blaming Plaintiff for the association's financial discrepancies, protecting Local 970's institutional reputation, and assisting the campaign to remove Plaintiff from public employment." FAC ¶ 129; *see also* FAC ¶ 130. The FAC also pleads that the conspirators' "malicious motive . . . led them to withhold relevant information or otherwise misdirect the grand jury by omission and/or commission." FAC ¶ 103.

**E. The prosecution ends in Elizondo's favor.**

16. The theft and misapplication charges hung over Elizondo for more than seven years before they were dismissed in April 2025. FAC ¶¶ 68, 102, 132. A separate computer-access prosecution had ended in a jury acquittal in September 2019. FAC ¶¶ 61–62, 101. Elizondo filed this action on March 31, 2026, within one year of the April 2025 dismissal. FAC ¶ 70.

## V. STANDARD OF REVIEW

17. A complaint survives a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Plausibility "is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. A well-pleaded complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and [are] rarely granted." *Lormand*, 565 F.3d at 232 (citation omitted).

18. The Court reads the complaint as a whole, including its exhibits. Fed. R. Civ. P. 10(c); *Lone Star Fund*, 594 F.3d at 387. There is no heightened pleading standard for civil-rights claims, *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993), and Rule 8 does not demand the who-what-when-where particularity that Rule 9(b) imposes on fraud. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13 (2002). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A plaintiff may also plead in the alternative. Fed. R. Civ. P. 8(d)(2)–(3); FAC ¶ 23.

19. Where a defendant seeks dismissal on an affirmative defense such as limitations, dismissal is proper only "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (cited at Mot. at 7).

## VI. ARGUMENT AND AUTHORITIES

### A. The Motion's central premise, that the FAC "concedes" the Union corrected its accusation, misreads the pleading.

20. Every argument in the Motion depends on one characterization. The Union asserts that "Plaintiff himself admits that the Union corrected its misunderstanding," Mot. at 10, that "the Union explicitly told the City that its initial belief that Plaintiff misappropriated the PAC funds was incorrect," *id.* at 12, and that the FAC therefore "tacitly acknowledges that the Union in fact did not participate in any agreement to violate Plaintiff's civil rights." *Id.* From that premise the Union argues there is no state action, no causation, no conspiracy, and no procurement. *Id.* at 5. The premise fails for three reasons.

**21. First, the FAC alleges the opposite of a correction.** The Union quotes the sentence of paragraph 50 in which Sheldon learned of the Longoria card from Lerma, Mot. at 10, but omits the sentence that follows it: "Despite all of this information, Sheldon, Neece, De Leon, the City of Brownsville, *and Local 970 maintained that the theft and misappropriated funds were Plaintiff's fault*." FAC ¶ 50 (emphasis added). The FAC alleges that the Union supported the prosecution "knowing that the alleged theft and misappropriation charges were not viable," FAC ¶ 75; that it "supported the criminal and employment consequences when they knew their initial allegations against Plaintiff were wrong," FAC ¶ 123; and that it "continued to support the investigation and prosecution despite . . . knowledge that another individual in the union made the alleged improper charges on the union credit card." FAC ¶ 128(e). The Union quotes paragraph 128(e) itself, Mot. at 9, but never addresses it. At the pleading stage the Court must credit these allegations, not the Union's competing narrative. *Iqbal*, 556 U.S. at 678; *Lormand*, 565 F.3d at 232.

**22. Second, telling a co-conspirator is not correcting the record.** The FAC alleges that Lerma told Sheldon, the Fire Chief with whom Lerma "worked directly . . . to push the Theft and misappropriation of union funds charges," and that Sheldon then buried the information. FAC ¶

50. Nothing in the FAC alleges that the Union ever told the Cameron County District Attorney, the Brownsville Police Department, or the grand jury that its accusation was wrong. To the contrary, the FAC alleges that the information never reached the prosecutor or the grand jury at all. *Id.*; FAC ¶ 103. A private disclosure to a fellow participant, who then withholds it from the decision-makers, does nothing to undo the false accusation. It is precisely the conduct one would expect from parties who had reached an understanding to see the charges through. FAC ¶¶ 77, 120.

23. The law of conspiracy reflects the same common sense. A participant escapes responsibility for a joint undertaking only through "[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464–65 (1978). Even then, withdrawal ends a participant's liability only for the co-conspirators' later acts, not for the conspiracy already joined, and the burden of proving withdrawal rests on the defendant. *Cf. Smith v. United States*, 568 U.S. 106, 111–13 (2013). The FAC alleges the Union's accusation was the source of the charges and that the Union continued to maintain it. Withdrawal is not apparent on the face of the pleading, and the Union cannot obtain dismissal on an unpleaded defense.

**24. Third, the Motion assumes facts the FAC does not contain.** The Union's causation argument presumes that Lerma's disclosure to Sheldon came before the arrest and indictment, so that "any failure to disclose that information to prosecutors occurred after the Union's involvement." Mot. at 10. The FAC does not say when Lerma told Sheldon. What the exhibits do show is that Lerma was still publicly accusing Elizondo on October 19, 2017, after the indictment was filed, insisting that the case was "about upholding the union's credibility and integrity" and that Elizondo "was the only one overseeing PAC funds." Ex. B, Doc. 37-2 at 19. Whether the Union's disclosure to Sheldon came days, months, or years into a prosecution that lasted until April 2025, FAC ¶ 68, is a question of fact for discovery. Every reasonable inference on that question must be drawn in Plaintiff's favor, not the Union's. *Lormand*, 565 F.3d at 232.

25. Because the "correction" premise collapses, so does each argument built on it.

**B. Count II states a § 1983 malicious-prosecution claim against Local 970.**

**1. The FAC plausibly pleads that Local 970 acted under color of state law as a willful participant in joint action with City officials.**

26. A private party acts under color of state law when it is "a willful participant in joint activity with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute." *Id.* A private party involved in a conspiracy with state officials "can be liable under § 1983." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982). In this Circuit, a plaintiff proceeding on that theory must allege facts suggesting (1) an

agreement between the private and public defendants to commit an illegal act and (2) an actual deprivation of constitutional rights. *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994); *see also Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005). The Union's own authority frames the inquiry the same way: whether there was "an agreement or meeting of the minds between the state actor and the private actor," and whether the private actor "was a willful participant in joint activity with the state or its agents." Mot. at 8 (quoting *Polacek v. Kemper County*, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010)).

27. The FAC pleads facts, not labels, on both points.

28. *The agreement and the participants.* The FAC names the Union's actor (its president, Jorge Lerma, acting "[o]n behalf of Local 970"), the state actors he worked with (Fire Chief Sheldon and the City), the officials who directed the effort (Commissioners Neece and De Leon), and the object (to "push the Theft and misappropriation of union funds charges against Plaintiff"). FAC ¶ 50. The Union itself summarizes these allegations accurately, acknowledging the FAC alleges that Lerma "worked directly with [Fire Chief] Sheldon and the City of Brownsville, through the urging of [Commissioners] Neece and De Leon," to push the charges. Mot. at 2 (alterations in original). An allegation that a private actor worked "directly" with the Fire Chief, at the urging of two City Commissioners, to bring criminal charges against a public employee those Commissioners wanted removed is a factual allegation of concerted action. It is not a "buzzword." *Cf.* Mot. at 8.

29. *The meeting of the minds.* The FAC alleges that the Union and the City officials shared the same exculpatory knowledge (that the transactions were tied to Marco Longoria's card) and then jointly "maintained that the theft and misappropriated funds were Plaintiff's fault." FAC ¶ 50. Two parties who both know an accusation is false, and who both continue to maintain it to the same end, have reached an understanding. FAC ¶¶ 75, 77, 123.

30. *The context.* The FAC situates the Union's conduct within a sequence that makes an agreement plausible: the Commissioners' retaliatory motive, FAC ¶¶ 31–37; their use of the audit to build a pretext, FAC ¶¶ 38–44; the Union president's public accusation on August 17, 2017, two days after the same Commissioners voted to fire the City Attorney, Ex. B, Doc. 37-2 at 4–6; the City police department's referral of the Union's complaint to the District Attorney, *id.* at 5; Elizondo's demotion three weeks later, FAC ¶ 45; and his arrest on the Union's charges, followed immediately by Sheldon's use of those charges to suspend him without pay. FAC ¶¶ 48–49; Ex. A, Doc. 37-1 at 4, ¶¶ 9–11. The FAC also alleges that Local 970 "used [its] . . . influence with City administration to advance the campaign against Plaintiff," FAC ¶ 53, and that its role "was not limited to neutral labor representation." FAC ¶ 76. Under *Twombly*, allegations of coordinated conduct "placed in a context that raises a suggestion of a preceding agreement" are sufficient. 550 U.S. at 557. "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 556.

31. The Union demands more. It faults the FAC for not identifying "who allegedly made the agreement, when the agreement was formed, what was said, or what role Local 970 supposedly played." Mot. at 8. The FAC answers most of those questions: who (Lerma, Sheldon, Neece, De Leon), when (the summer and fall of 2017, around the audit, demotion, and arrest), and what role (complainant and supplier of the PAC accusations). FAC ¶¶ 45–50, 75–77. To the extent the Union wants the content of private conversations among the conspirators, that is a Rule 9(b) standard the Supreme Court has refused to impose on civil-rights claims. *Leatherman*, 507 U.S. at 168; *Swierkiewicz*, 534 U.S. at 512–13. The details of a conspiracy are, by their nature, in the conspirators' possession. That is what discovery is for. *Twombly*, 550 U.S. at 556.

32. *The Union's authorities are distinguishable.* The Motion relies on cases holding that "the deliberate giving of false information by an individual to a police officer to cause the arrest of another" does not, standing alone, create state action. Mot. at 9 (quoting *Dubash v. City of Houston*, No. 4:23-cv-3556, 2024 U.S. Dist. LEXIS 179049, at *39 (S.D. Tex. Aug. 26, 2024)); *see also id.* (citing *Polacek*, 739 F. Supp. 2d at 953). Those cases address a lone private complainant who reports a crime and leaves the matter to independent officials. The FAC alleges something different: a complainant who worked "directly with" the Fire Chief, "through the urging of" two City Commissioners, as part of an effort by those officials to remove Plaintiff, and who joined with them in maintaining the accusation after all of them knew it was false. FAC ¶¶ 34, 50, 77. The Fifth Circuit has long distinguished between a private party who merely furnishes information and one whose accusation officials act on as part of a prearranged arrangement rather than through independent judgment. *See Hernandez v. Schwegmann Bros. Giant Super Mkts.*, 673 F.2d 771, 772 (5th Cir. 1982); *Smith v. Brookshire Bros., Inc.*, 519 F.2d 93, 94–95 (5th Cir. 1975) (state action where police acted on merchant's accusation under a preconceived plan without independent investigation). The FAC pleads the latter. Even *Polacek*, the Union's principal authority, recognizes that a private actor who reaches an agreement with state officials is a state actor. Mot. at 8.

33. Accepting the FAC's allegations as true, Local 970 acted under color of state law.

**2. The FAC plausibly pleads that Local 970 legally caused the commencement and continuation of the prosecution.**

34. The Fifth Circuit's Fourth Amendment malicious-prosecution elements, which the Union quotes, require "the commencement *or continuance* of an original criminal proceeding" and "its legal causation by the present defendant." Mot. at 10 (quoting *Santander v. Salazar*, 133 F.4th 471, 482 (5th Cir. 2025), and *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023)) (emphasis added); *see also Thompson v. Clark*, 596 U.S. 36, 39 (2022). The FAC pleads causation at both stages.

35. *Commencement.* Sheldon's own order states that the theft and misapplication case "arose out of a complaint by the fire union," and identifies Lerma as "[o]ne of the main complainants" and "the primary complainant against Elizondo on behalf of the Fire

Association." Ex. A, Doc. 37-1 at 4, ¶¶ 9, 11(1); *id.* at 7, ¶ 36(1). The Union's complaint was referred by the Brownsville Police Department to the District Attorney. Ex. B, Doc. 37-2 at 5. The FAC alleges that Local 970 "initiated the malicious prosecution," FAC ¶ 103, by "investigating Plaintiff, collecting and presenting allegations concerning the account to law-enforcement authorities, requesting or encouraging criminal investigation and prosecution, and supplying information that was communicated to the Brownsville Police Department and/or the Cameron County District Attorney's Office." FAC ¶ 127. Even the City Defendants describe the theft charges as "advanced by the Association (Local 970)." Doc. 41 at 9. Elizondo was arrested on those charges on October 17, 2017. FAC ¶ 48.

36. *Continuation.* The FAC alleges that after the Union and Sheldon knew the disputed transactions were tied to Longoria's card, the Union "maintained that the theft and misappropriated funds were Plaintiff's fault" and "continued to support the investigation and prosecution." FAC ¶¶ 50, 128(e). The prosecution then continued for years until its dismissal in April 2025. FAC ¶¶ 68, 102.

37. *The independent-intermediary doctrine does not break the chain.* The Union argues that the grand jury's indictment insulated it. Mot. at 10–11 (quoting *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022)). But the Union quotes only half the rule. The intermediary's decision breaks the chain of causation only where all the facts are presented to it; the chain remains intact where "the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988); *see also Buehler v. City of Austin*, 824 F.3d 548, 554 (5th Cir. 2016); *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). The Fifth Circuit has explained that the chain is broken "only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (citation omitted).

38. The FAC pleads the taint exception directly. It alleges that the information identifying Longoria's card as the source of the transactions was never relayed "to the DA's Office or the grand jury." FAC ¶ 50. It alleges that "[t]he malicious motive of Defendants listed herein led them to withhold relevant information or otherwise misdirect the grand jury by omission and/or commission." FAC ¶ 103. And it alleges that Local 970 "failed to provide investigators and prosecutors with material information concerning the authorization, purpose, context, and documentation of the challenged transactions." FAC ¶ 128(b); *see also* FAC ¶ 128(c)–(d). A grand jury that never learned the transactions were tied to another person's card was not presented with "all the facts." *Cuadra*, 626 F.3d at 813.

39. The Union's response is that it was Sheldon, not the Union, who failed to relay the information. Mot. at 10. That argument fails for the reasons stated in Part VI.A. It also ignores that the FAC alleges joint action. A participant in a conspiracy to bring false charges is responsible for the acts of its co-conspirators taken in furtherance of the common objective.

*See Adickes*, 398 U.S. at 152; *Dennis*, 449 U.S. at 27–28. The Union cannot hand the exculpatory information to its partner in the joint effort, watch the partner suppress it, continue to maintain the accusation itself, and then claim the partner's suppression broke the chain. Whether the intermediary was tainted is, at minimum, a question that cannot be resolved against Plaintiff on the pleadings.

**3. The remaining elements are unchallenged.**

40. The Union does not dispute that the FAC pleads a Fourth Amendment seizure, favorable termination, absence of probable cause, malice, or damages. FAC ¶¶ 48, 100, 102, 128–134. Count II should proceed against Local 970.

**C. Count V states a § 1983 conspiracy claim against Local 970.**

41. A § 1983 conspiracy claim requires "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Mot. at 11 (quoting *Armstrong*, 60 F.4th at 280, and *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)). Because the same agreement that satisfies the joint-action test also supplies the conspiracy, the analysis in Part VI.B.1 largely resolves this Count. *See Priester*, 354 F.3d at 420.

42. The FAC does not rest on the word "conspired." It pleads:

- **The parties:** De Leon, Neece, Sheldon, City officials, and Local 970 representatives, including Lerma. FAC ¶¶ 50, 120, 123, 126.
- **The object:** "to remove Plaintiff, damage his reputation, and justify the removal through criminal accusations and disciplinary proceedings." FAC ¶ 120.
- **The motive:** the Commissioners' retaliation for Elizondo's refusal to misuse his BISD office, FAC ¶¶ 31–37, and the Union's desire "to shift responsibility for disputed PAC transactions," "to protect Local 970's reputation," and "to assist other Defendants in retaliating against Plaintiff." FAC ¶ 130.
- **The coordination:** Lerma "worked directly with Sheldon and the City of Brownsville, through the urging of Neece and De Leon, to push" the charges. FAC ¶ 50.
- **The overt acts:** "supplying or supporting PAC-fund accusations," "withholding material exculpatory information," and "publicly associating Plaintiff with felony misconduct," followed by the arrest, suspension, and termination. FAC ¶ 122; *see also* FAC ¶¶ 48–49, 63, 123; Ex. B, Doc. 37-2 at 4–5, 19.
- **The sequence:** the audit, the Union's August 2017 public accusation, the September 2017 demotion, the October 2017 leave, arrest, and indictment, and the suspension that relied on the Union's charges. FAC ¶¶ 38–49, 121; Ex. A, Doc. 37-1 at 4, ¶¶ 9–11.
- **The shared knowledge and joint maintenance of the false accusation:** FAC ¶¶ 50, 75, 123, 128(e).

43. These facts raise "a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556. They are not "[t]hreadbare recitals." *Iqbal*, 556 U.S. at 678.

44. The Union makes two further arguments. First, it says Count V "essentially repackages" the malicious-prosecution claim. Mot. at 12. That is not a defect. A § 1983 conspiracy claim is the vehicle for holding each participant responsible for a constitutional deprivation carried out jointly, and it necessarily rests on the underlying deprivation. *See Pfannstiel*, 918 F.2d at 1187. Second, the Union says the FAC alleges no "overt acts committed by Local 970 after it disclosed the exculpatory information to Chief Sheldon." Mot. at 12. No such allegation is required. A conspirator is responsible for acts in furtherance of the conspiracy it joined unless and until it withdraws. *See Gypsum*, 438 U.S. at 464–65. In any event, the FAC alleges continued acts: the Union "maintained" the accusation and "continued to support the investigation and prosecution" after it knew the transactions were tied to Longoria's card. FAC ¶¶ 50, 128(e). Count V should proceed against Local 970.

**D. Count VI states a Texas malicious-prosecution claim against Local 970.**

45. The Union challenges only one element of the Texas claim: causation. Mot. at 13–14. Under Texas law, a defendant causes a prosecution by initiating or procuring it. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997); Mot. at 13. The Texas Supreme Court has defined procurement this way:

> *A person procures a criminal prosecution if his actions were enough to cause the prosecution, and but for his actions the prosecution would not have occurred. A person does not procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, unless the person provides information which he knows is false.*

46. *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 292–93 (Tex. 1994) (emphasis added). Where the decision to prosecute rests with another, the plaintiff must show that the decision "would not have been made but for the false information supplied by the defendant." *King v. Graham*, 126 S.W.3d 75, 78 (Tex. 2003) (per curiam); *see also Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793–94 (Tex. 2006).

47. The FAC pleads procurement under that standard. It alleges that Local 970 investigated Plaintiff, collected and presented the PAC allegations to law enforcement, requested or encouraged prosecution, and supplied the information communicated to the Brownsville Police Department and the District Attorney. FAC ¶ 127. It alleges that the information was false, because the transactions were associated with Longoria's card. FAC ¶ 50. It alleges that the Union's representatives "knew, or acted with reckless disregard for whether, the allegations against Plaintiff were false, materially incomplete, and unsupported by probable cause," FAC ¶ 128, and that the Union supported the prosecution "knowing that the alleged theft and misappropriation charges were not viable." FAC ¶ 75. Knowledge may be alleged generally. Fed.

R. Civ. P. 9(b). The FAC further alleges that the Union "did not merely provide truthful information in response to a neutral inquiry" but "actively pursued, encouraged, and/or procured criminal proceedings against Plaintiff." FAC ¶ 129. And it alleges that the Union's conduct "was a substantial and proximate cause of the initiation, continuation, and resulting harm of the criminal proceedings." FAC ¶ 133.

48. But-for causation is more than plausible on these facts. The charges concerned the Union's own PAC account. FAC ¶¶ 49, 127. They "arose out of a complaint by the fire union." Ex. A, Doc. 37-1 at 4, ¶ 11(1). The Union's president was "the primary complainant." *Id.* at 7, ¶ 36(1). No one other than the Union is alleged to have held the account records or to have accused Elizondo of misusing the Union's funds. The reasonable inference is that, without the Union's complaint, there would have been no prosecution at all.

49. The Union relies on the statement that a complainant's "'explicit direction to prosecute an individual must be the determining factor in the official's decision to commence the prosecution.'" Mot. at 13 (quoting *Matthews v. Green*, No. 23-10178, 2024 U.S. App. LEXIS 2732, at *13–14 (5th Cir. Feb. 6, 2024), and *Dangerfield v. Ormsby*, 264 S.W.3d 904, 910–11 (Tex. App.—Fort Worth 2008, no pet.)). That language does not help the Union. First, *Lieck* makes clear that a complainant who knowingly supplies false information procures the prosecution even though the final decision is left to the prosecutor or grand jury. 881 S.W.2d at 293. Second, whether particular false information was the "determining factor" is a fact-bound question about what the prosecutor and grand jury relied on. It cannot be resolved against Plaintiff on the pleadings, before he has seen the District Attorney's file or the grand jury materials.

50. The Union's final point, that it "told Chief Sheldon of its mistaken belief," Mot. at 14, fails for the reasons stated in Part VI.A. The FAC does not allege that the Union ever told the prosecutor or the grand jury, the actual decision-makers, that its information was false; it alleges that the Union kept maintaining the accusation. FAC ¶¶ 50, 128(e). The Restatement, which the Texas Supreme Court followed in *Lieck*, treats one who "takes an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another" as though it had initiated them. Restatement (Second) of Torts § 655 (1977). Count VI should proceed.

**E. The Union's limitations argument provides no basis to dismiss any count against it.**

51. The Union argues that the computer-access prosecution, which ended in an acquittal in September 2019, is time-barred and "cannot form the basis of any of Plaintiff's claims against the Union." Mot. at 5; *see also id.* at 6–7, 12 n.1. Plaintiff does not seek to recover against Local 970 on a stand-alone malicious-prosecution theory based on the computer-access prosecution. Count II pleads against Local 970 as the party "who initiated the malicious prosecution," FAC ¶ 103, meaning the PAC-funds prosecution the Union brought. Count VI is directed to the prosecution "concerning alleged withdrawals or expenditures from Local 970's political-action-

committee account," FAC ¶ 127, as the Union acknowledges. Mot. at 13 n.2. The theft and misapplication charges were dismissed in April 2025, and this action was filed on March 31, 2026, within one year. FAC ¶¶ 68, 70, 102. The Union does not dispute that claims based on those charges are timely. Mot. at 7.

52. The limitations argument therefore provides no ground to dismiss any count. Rule 12(b)(6) tests whether a claim has been stated; it is not a vehicle for striking individual factual allegations from a count that otherwise survives. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims . . . ."). The computer-access allegations also remain relevant background evidence of the conspiracy's scope and the participants' motives. *Cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (time-barred acts may be used "as background evidence in support of a timely claim"). Sheldon's order, for example, ties the computer-access referral directly to Lerma, describing Elizondo's access to an incident file involving "a possible policy violation by Jorge Lerma, the primary complainant against Elizondo on behalf of the Fire Association." Ex. A, Doc. 37-1 at 7, ¶ 36(1); *see also id.* at 4, ¶ 14.

53. The Union's footnote applying the same argument to Count V, Mot. at 12 n.1, fails for the same reason. Count V seeks recovery for a conspiracy whose injury includes the PAC-funds prosecution that terminated in April 2025. A claim that challenges the integrity of a criminal prosecution does not accrue until the prosecution ends in the plaintiff's favor. *See McDonough v. Smith*, 588 U.S. 109 (2019); *Thompson*, 596 U.S. at 39. Insofar as Count V rests on the PAC-funds prosecution, it is timely.

## VII. ALTERNATIVE REQUEST FOR LEAVE TO AMEND

54. Plaintiff maintains that the FAC states each claim against Local 970. If the Court concludes otherwise as to any claim, Plaintiff respectfully requests leave to amend under Rule 15(a)(2), which directs that leave be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts ordinarily afford a plaintiff an opportunity to cure pleading deficiencies before dismissing with prejudice, unless the defects are incurable. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The deficiencies the Union identifies are not incurable. If required, Plaintiff can plead additional facts concerning the timing and content of the communications between Lerma and Sheldon regarding the Longoria card, the Union's communications with the Brownsville Police Department and the District Attorney's Office, and the Union's continued public and private support for the prosecution after it learned the disputed transactions were not Elizondo's. Any dismissal should therefore be without prejudice.

## VIII. CONCLUSION AND PRAYER

55. The Motion asks the Court to read the FAC as admitting that the Union "corrected" its accusation. Mot. at 10. The FAC alleges the opposite: that the Union, together with the City

officials it worked with, "maintained that the theft and misappropriated funds were Plaintiff's fault" after all of them knew the transactions were tied to another member's card, and that the truth never reached the prosecutor or the grand jury. FAC ¶ 50. Those allegations, with the others discussed above, state claims against Local 970 for malicious prosecution under § 1983, conspiracy under § 1983, and malicious prosecution under Texas law.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Carlos Alberto Elizondo respectfully requests that the Court DENY Defendant Brownsville Firefighters Association Local 970's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 44) in its entirety. In the alternative, Plaintiff requests that any dismissal be without prejudice and that the Court grant Plaintiff leave to file an amended complaint. Plaintiff further requests all other relief to which he may be justly entitled.

Dated: October 23, 2026.

Respectfully submitted,

BARRERA, SANCHEZ & ASSOCIATES, P.C.
10113 N. 10th Street, Suite A
McAllen, Texas 78504
Telephone: (956) 287-7555
Facsimile: (956) 287-7711

Email: marcus@bsmlawyers.com
Email: melissa@bsmlawyers.com

By: /s/ Marcus C. Barrera
Marcus C. Barrera
Texas Bar No. 00790271
ATTORNEY-IN-CHARGE FOR PLAINTIFF
CARLOS ALBERTO ELIZONDO

**CERTIFICATE OF SERVICE**

I certify that on October 23, 2026, a true and correct copy of the foregoing Response was filed electronically through the Court's CM/ECF system, which will send notification of the filing to all counsel of record as follows:

Tamara Y. Imam and Mark J. Murphy
timam@mooneygreen.com
mmurphy@mooneygreen.com

Matt Bachop
mbachop@ddollaw.com

Kevin M. Curley
kevin@txmunicipallaw.com

*/s/ Marcus C. Barrera*
Marcus C. Barrera