**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| CARLOS ALBERTO ELIZONDO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:26-cv-00491 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BROWNSVILLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT BROWNSVILLE FIREFIGHTERS ASSOCIATION LOCAL 970's REPLY IN SUPPORT OF SECOND MOTION TO DISMISS**

Defendant Brownsville Firefighters Association Local 970 (hereinafter "Union" or "Local 970"), by and through undersigned counsel, files this reply in support of its pending Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") (Doc. 44).

## I. Plaintiff's Conclusory Allegations are Insufficient to Transform the Union into a State Actor.

The crux of Plaintiff's Opposition ("Pl. Opp.") (Doc. 48) centers on the allegation that the Union, through then-president Jorge Lerma, advised Defendant Fire Chief Jarrett Sheldon that it was mistaken about the identity of the individual who improperly used the Union's funds, but that Sheldon nonetheless failed to relay this information to the District Attorney's office or the grand jury to exculpate Plaintiff. *See* FAC ¶ 50. As detailed in the Union's Motion to Dismiss, this allegation not only defeats Plaintiff's theories of malicious prosecution, conspiracy, and causation, but it insulates Local 970, a private actor, from liability under 42 U.S.C. § 1983. *See* Doc. 44 at 5-14. Plaintiff counters that the FAC elsewhere alleges that, after disclosing this information to Chief Sheldon, the Union "maintained that the theft and misappropriated funds were Plaintiff's fault," "supported the criminal and employment consequences when they knew their initial allegations

against Plaintiff were wrong," and "continued to support the investigation and prosecution despite… knowledge that another individual in the union made the alleged improper charges on the union credit card." *See* Pl. Opp. at 6. Plaintiff argues that these allegations indicate "the opposite of a correction" and insists that the Union engaged in "joint action" with the City Defendants for purposes of his § 1983 malicious prosecution and conspiracy claims. *See id*.

But Plaintiff's argument is unavailing, as the non-specific, conclusory allegations in the FAC are insufficient to plead state action on the part of the Union. Plaintiff's allegations that the Union "maintained" that the misappropriation was Plaintiff's fault and "supported" Plaintiff's prosecution fail to provide the Union with the requisite notice of the grounds upon which his claims rest. *See Shepherd v. City of Shreveport*, 920 F.3d 278, 287 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 555). Indeed, it remains entirely unclear from the allegations in the FAC **what** specific actions the Union took or **how** the Union purportedly worked with the City to bring about Plaintiff's termination and malicious prosecution.

Reading the FAC generously, Plaintiff's allegations amount to nothing more than the Union cheering on the **government's** actions. This is simply not enough to plausibly allege an agreement between the City of Brownsville and Local 970 to violate Plaintiff's civil rights. *See Polacek v. Kemper County*, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010); *see also Matthews v. Green*, No. 23-10178, 2024 U.S. App. LEXIS 2732, at *10 (5th Cir. Feb. 6, 2024) (finding that plaintiff failed to allege state action where she "at best… allege[d] that [private actor] provided [officer] with misleading, potentially false information in hopes that he would arrest her").

Plaintiff nonetheless insists that the FAC sufficiently alleges a "prearranged agreement" between the Union and City officials, such that his claims for Fourth Amendment malicious prosecution and conspiracy under § 1983 are viable. But Plaintiff undercuts his own argument.

The only **specific** actions Plaintiff attributes to the Union are the initial complaint to the City and former President Lerma's later comments to the media accusing Plaintiff of withdrawing funds from the Union's account. *See* Pl. Opp. at 4 ("Sheldon's own order confirms the union's role. He wrote that… '[t]he criminal case involving the theft and misappropriation charges… arose out of a complaint by the fire union'"); *id.* at 9 (identifying the Union's role in the alleged conspiracy as "complainant and supplier of the PAC accusations"). Neither of these actions are "fairly attributable" to the state. *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999).

The Fifth Circuit has squarely rejected the argument that complaints to law enforcement – even if false or misleading – constitute state action. *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988) ("Police reliance in making an arrest on information given by a private party does not make the private party a state actor."). And the Union's comment to the media is self-evidently private action; nowhere in the FAC does Plaintiff allege that the Union and the City came to an agreement to publish this comment.

At bottom, Plaintiff's FAC is devoid of any specific allegations sufficient to bring the Union into the ambit of state action. As such, the Court must dismiss his §1983 claims against the Union.

## II. Plaintiff Cannot Establish the Causation Element of His § 1983 Malicious Prosecution Claim.

Even assuming *arguendo* that Plaintiff has adequately pled state action on the part of the Union, on their face, the allegations in the FAC are insufficient to state a claim for malicious prosecution under § 1983. In response to the Union's argument that providing exculpatory information about the Plaintiff to the City broke the chain of causation for purposes of this claim, *see* Doc. 44 at 10-11, Plaintiff argues that he has nonetheless stated a claim against the Union under the "taint exception" to the independent intermediary doctrine. As the Fifth Circuit explained in

*Cuadra v. Houston Indep. Sch. Dist.*, to overcome this doctrine, a plaintiff must show that the independent intermediary's deliberations were "in some way tainted by the actions of the defendant." 626 F.3d 808, 813 (5th Cir. 2010). "[M]ere allegations of 'taint,' without more, are insufficient." *Id.* at 813.

In attempting to overcome the independent intermediary doctrine, Plaintiff points to the allegations in the FAC that "the information identifying [Union member] Longoria's card as the source of the transactions was never relayed 'to the DA's Office or the grand jury,'" as supporting its theory that the Union somehow "tainted" the grand jury proceedings. Pl. Opp. at 10 (quoting FAC ¶ 50). But again, the FAC specifically alleges that the Union informed Chief Sheldon of this exculpatory information, and that it was Chief Sheldon who failed to relay it to the prosecutor or the grand jury. And as explained above, the allegations that the Union "maintained" that the misappropriation was Plaintiff's fault and continued to "support" the prosecution of Plaintiff are too vague to suggest otherwise – and are certainly insufficient to allege taint on the part of the Union. *See Cuadra*, 626 F.3d at 813; *see also Anokwuru v. City of Houston*, 990 F.3d 956, 963 (5th Cir. 2021) (finding speculative allegations of withheld information insufficient to overcome independent intermediary doctrine).

Further undercutting Plaintiff's taint argument is his acknowledgement that Brownsville police conducted their own investigation into Plaintiff's alleged misappropriation of union funds. Plaintiff admits that, before arresting him on charges of theft by a public servant and misapplication of fiduciary property, Brownsville police searched his home and thereafter referred the matter to the District Attorney, who investigated the matter further. FAC ¶¶ 48-49; Pl. Opp. at 4, 10 (citing Doc. 37-2 at 5). Nowhere in the FAC does Plaintiff allege that the Union somehow interfered in the police or DA investigations, such that the evidence ultimately put before the grand jury was

compromised. *Cf. James v. Woods*, 899 F.3d 404, 410 (5th Cir. 2018) (where defendants gave detectives "incomplete and misleading" information but detectives conducted investigation independent of defendant's suspicions, chain of causation for malicious prosecution broken).

## III. Plaintiff Cannot Establish the Causation Element of His State Law Malicious Prosecution Claim.

Likewise, the allegations in the FAC fall short of establishing the causation element of Plaintiff's state law malicious prosecution claim. Under Texas law, a person procures a criminal prosecution if his actions were enough to cause the prosecution and, but for his actions, the prosecution would not have occurred. *Browning-Ferris Indus. v. Lieck*, 881 S.W.2d 288, 293 (Tex. 1994); *King v. Graham*, 126 S.W.3d 75, 77 (Tex. 2003). The plaintiff has the burden of proving that the decision would not have been made but for the false information supplied by the defendant. *Id*. Further, "a person does not procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, unless the person provides information which he knows is false." *Browning-Ferris Indus.*, 881 S.W.2d at 289.

Here, Plaintiff insists that, even though former President Lerma informed Chief Sheldon of the Union's mistaken belief that Plaintiff misappropriated Local 970's funds, the Union nonetheless caused his malicious prosecution. In support of this argument, Plaintiff points to the allegations in the FAC that the Union "did not merely provide truthful information in response to a neutral inquiry," but "actively pursued, encouraged, and/or procured criminal proceedings against Plaintiff." Pl. Opp. at 13 (citing FAC ¶129). He further argues that the FAC "does not allege that the Union ever told the prosecutor or the grand jury, the actual decision-makers, that its information was false; it alleges that the Union kept maintaining the accusation." *Id.* (citing Doc. FAC ¶¶ 50, 128(e)).

Again, the allegations Plaintiff relies on are vague and conclusory. Allegations that the Union "pursued, encouraged, and/or procured" the criminal proceedings against Plaintiff and continued "maintaining" the accusations against him say nothing of what the Union **actually did**. Plaintiff simply regurgitates the legal standard for malicious prosecution, with no discernable factual allegations in support. This is insufficient to state a claim against the Union. *See Twombly*, 550 U.S. at 555 (a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). [1]

Because Plaintiff has failed to state any claims for relief against the Union, the Court must dismiss the Complaint in its entirety.

Respectfully submitted,

*/s/Tamara Y. Imam*
Tamara Y. Imam (*Admitted Pro Hac Vice*)
Mark J. Murphy (*Admitted Pro Hac Vice*)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1620 Eye Street, NW, Suite 700
Washington, DC 20006
timam@mooneygreen.com
mmurphy@mooneygreen.com

*/s/Matt Bachop*
Matt Bachop
Deats Durst & Owen, P.L.L.C.
2901 Bee Caves Rd., Ste. L
Austin, TX 78746
mbachop@ddollaw.com

[1] Further, as explained in Section II, *supra*, the FAC alleges facts demonstrating that the Brownsville police and the District Attorney's office conducted independent investigations of the allegations against Plaintiff, breaking the chain of causation for purposes of Plaintiff's malicious prosecution claim.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, a copy of the foregoing Reply in Support of Second Motion to Dismiss was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

*/s/ Tamara Y. Imam*
Tamara Y. Imam