**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **CARLOS ALBERTO ELIZONDO** | § | |
| **Plaintiff,** | § | **Civil No. 1:26-cv-00491** |
| **v.** | § | |
| | § | |
| **CITY OF BROWNSVILLE, et al.** | § | |
| **Defendants.** | § | **JURY DEMANDED** |

**DEFENDANT THE CITY OF BROWNSVILLE'S REPLY IN SUPPORT OF ITS SECOND RULE 12(b)(6) MOTION TO DISMISS**

COMES NOW defendant the City of Brownsville ("Defendant" or "City") and files its reply to Plaintiff's response (Doc. 46) to the City's *Second Motion to Dismiss*, showing as follows:

## I. SUMMARY OF THE REPLY

Plaintiff's response narrows this case to one prosecution: the theft and misapplication charges concerning the Brownsville Firefighters Association's political-action-committee ("PAC") funds, dismissed in April 2025. Plaintiff fails to allege adequate facts and otherwise state a plausible municipal liability claim under Monell against the City of Brownsville. For the reasons below and in the City's principal motion, the claims against the City should be dismissed with prejudice, without a Rule 7(a) reply or a third pleading.

## II. PLAINTIFF'S REMAINING CLAIMS

Plaintiff's First Amended Petition (Doc. 37) ("FAC") focuses on various matters relating to employment issues, traces factual allegations back to 2017 and earlier, seeks relief related to his former position as a Fire Chief (though when terminated he was a lieutenant), seeks back wages and benefits, and contains a myriad of claims and theories for a host of different types of relief. In fact, the bulk of the factual allegations relate to matters and claims addressing Plaintiff's employment, termination, and charges relating to computer use.

After Defendants' initial motion to dismiss (Doc. 9), Plaintiff's FAC conceded several of his claims against the City Defendants. Now, Plaintiff's response changes the focus of this case even more. In the face of the City Defendants' dispositive arguments, Plaintiff concedes all claims with the exception of the following, and even those only to the extent the claims relate to Plaintiff's PAC fund charges brought by the Firefighters' Association: (a) First Amendment retaliation in prosecution; (b) fabrication of evidence as to prosecution; (c) malicious prosecution; and (d) civil conspiracy. In limiting his claims, Plaintiff argues limitations, *res judicata*, and collateral estoppel no longer apply, as all his remaining claims did not accrue until April 2025.

As an initial matter, based on Plaintiff's response and the arguments the City set forth in its motion, the Court should grant the City's motion and dismiss all other claims and all other relief in the FAC. This includes: (a) all claims relating to Plaintiff's employment, including as to Plaintiff's demotion, termination, any employment actions or decisions, any investigations or audits, and any other employment related matters; (b) all claims relating to the first set of criminal charges for computer use; (c) Plaintiff's "unlawful seizure" claim within Count 2 of the FAC; (d) Plaintiff's due process "stigma plus" claim in its entirety (Count 4); (e) relief the FAC seeks relating to Plaintiff's employment with the City, including but not limited to any reinstatement, income, back pay, lost benefits, retirement opportunities, lost retirement benefits or service credit; and (f) declaratory and prospective relief.

Otherwise, for the remaining four theories limited to the prosecution of the second set of charges, as discussed below, Plaintiff's FAC fails to state viable municipal liability claims against the City.

### 1. Malicious Prosecution

As it noted in its initial motion to dismiss, the City concedes that for Plaintiff's malicious prosecution claim, limitations, *res judicata*, and collateral estoppel do not apply to the claim insofar as it relates to the PAC fund charges that were dismissed in April 2025. Yet Plaintiff's malicious prosecution claim against the City still fails.

Plaintiff's response does not appear to contest the hurdles he must clear to impose municipal liability on the City under a *Monell* theory. Plaintiff even pleads (Doc. 37, ¶81) and concedes in his response (Doc. 46, p. 5) that the City Commission held final policymaking authority. Plaintiff's response does not rebut the case law that requires the City Commission to act by a majority, and he appears to concede that he cannot allege that the Commission did anything regarding this case. Rather, Plaintiff hangs his hat as to all his *Monell* claims against the City on the premise that City administration and Chief Sheldon "possessed delegated final policymaking authority concerning Fire Department administration and employment discipline, subject to applicable law." (Doc. 37, ¶81; Doc. 46, p. 5)

Even if true, delegation of Fire Department administration and employment discipline relates only to employment matters. It does not equate to investigation of crimes or criminal prosecution matters. Plaintiff does not, and could not, allege any such information. Moreover, Plaintiff's own FAC alleges that any delegation is limited to that which would be lawful (Doc. 37, ¶81) and would not include Commission delegation to wrongfully initiate or participate in criminal prosecutions. Plaintiff does not allege such, nor does state law provide for it. For this reason alone, all Plaintiff's claims against the City, including malicious prosecution, fail as a matter of law.

Plaintiff's allegations in Paragraph 83 of the FAC that "City policymakers authorized, approved, or ratified the use of the audit, criminal referrals, public employment actions, and

termination against Plaintiff" also do not change the analysis. First, this is a conclusory allegation, not *facts* that are entitled to the presumption of truth. Moreover, the allegation contains no facts explaining how the delegation applies to "criminal referrals" in the Association theft/misappropriation charges.

Plaintiff's conclusory allegations in Paragraphs 84, 95, 97, 98, 103, and 112 of the FAC do not allege any *facts* regarding municipal liability and are also not considered. Nowhere does the FAC allege facts as to what anyone affiliated with the City specifically did or did not do in relation to delegated final policymaking authority. Excluding improper conclusory allegations, the most alleged is that two commissioners allegedly "urg[ed]" others to "push" potential charges (Doc. 37, ¶ 50)[1] and that Chief Sheldon was aware that a credit card was in someone else's name and yet he still "push[ed] the Association to pursue charges." And while Plaintiff makes some specific allegations against Defendants regarding the computer access charges, Plaintiff stipulated away claims based on those charges. Plaintiff fails to allege facts to support a malicious prosecution claim, particularly in the context of municipal liability. His purported "ratification" theory fares no better, as Plaintiff certainly alleges nothing that the City did through a majority of the City Commission to ratify any conduct, and he alleges not a single fact to the contrary, outside of impermissible conclusory statements. (*See, e.g.,* Doc. 37, ¶ 83).

For these reasons, Plaintiff fails to state a malicious prosecution claim against the City (and the same analysis applies to each of Plaintiff's theories).

Independently, the FAC does not adequately negate probable cause, a requirement for Plaintiff's malicious prosecution claims. This burden requires Plaintiff allege *facts* to show that

[1] Plaintiff's response does not dispute that two commissioners' actions (a minority) are binding on the City—nor could he.

each defendant acted improperly and did not believe probable cause existed. As to the City, at most, Plaintiff alleges that a credit card used in connection with the charges was in another union member's name (Doc. 37, ¶ 50—but Plaintiff alleges how the card was used and alleges no facts that he did not use the other card), that *Chief Sheldon* allegedly knew that the card was in the other member's name[2], and that the collective "defendants" did not properly bring that defensive argument to the DA's or grand jury's attention.

Even assuming knowledge, the FAC must adequately explain how the City, through a final policymaker, participated in the use of materially false information or the suppression of material exculpatory information in the criminal process, and it does not: the FAC does not say what any final policymaker said to Lerma or anyone else; what the final policymaker supplied to the DA's office, the grand jury, or any affiant; or what a final policymaker withheld from anyone. The arrest was made by "Cameron County District Attorney investigators." (Doc. 37 ¶ 48). The allegations of "urging" and conclusory and collective "direction," (Doc. 37. ¶¶ 50, 103, 112), must be read with the surrounding allegations, but they do not eliminate the need for facts supporting the actionable role attributed to the City of Brownsville—by and though a final policymaker.

Plaintiff makes impermissible conclusory allegations in Paragraphs 107 and 108 of the FAC regarding omitted facts but fails to allege any *facts* about what information the City's final policymaker omitted, *facts* about what information the City's final policymaker relayed that was false, and *facts* showing that the City's final policymaker specifically withheld information that negated the low probable cause standard as Defendants briefed in their motion to dismiss. At best,

---

[2] Despite his repeated reference to Paragraph 50 of the FAC, Plaintiff's allegations do not state that the Commission was aware of anything about the other member's card. (Doc. 37, ¶ 50). Rather, Plaintiff alleges, at most, that *Chief Sheldon* "learned of this" and did not relay such information to the DA or grand jury. *Id. and see Doc. 37,* ¶ 92. Plaintiff's allegations in Paragraphs 75 and 128(e) are not alleged against the City Defendants, including the City.

the FAC alleges that the Local 970's representatives knew of information to negate probable cause (Doc. 37, ¶ 128), but Plaintiff does not come close to making such allegations as to the City Defendants.

Plaintiff makes the conclusory allegation that all defendants "caused criminal proceedings to be initiated or maintained by supplying false, materially misleading, and incomplete information to investigators and prosecutors." (Doc. 37, ¶ 97). Again, such does not contain any *facts*, but consists of impermissible conclusory allegations. The FAC does not adequately allege the non-existence of probable cause, under the standards the City set forth in its motion to dismiss (Doc. 41, pp. 18-19), and for this additional reason Plaintiff's malicious prosecution claims fail (as do Plaintiff's other remaining claims against Defendants).

While Plaintiff's FAC is silent as to the full nature of the theft and misappropriation charges against him, the attachments to the FAC Plaintiff incorporates into his pleading reveal that the charges were not limited to credit card usage but included a search warrant executed as Plaintiff's home and "thousands of dollars missing from [the firefighters' union's] funds"—accounts which Plaintiff oversaw. (Doc. 37-2, pp. 13-14, pp. 18-19). The FAC does not negate probable cause, a required element for his claims, and does allege non-conclusory *facts* showing how the City violated the law through a final policymaker Those deficiencies not only negate Plaintiff's malicious prosecution claims, but also the other remaining theories he attempts to advance following his response.

Similarly, Plaintiff alleges that the grand jury's indictment failed to break the causal chain, because that only applies when all facts are presented. Yet the FAC contains no alleged *facts* as to what was and was not presented to the grand jury. Moreover, the FAC contains no *facts* as to what any of the City Defendants specifically did or did not do for purposes of either providing

false information or withholding any information from the district attorney or the grand jury. Plaintiff relies on an exception that "applies when the evidence presented to the grand jury 'obvious[ly] fail[ed]' to establish the probable cause necessary for an indictment." *Espinal*, 96 F.4th at 746 (citing *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017)). As discussed herein, the one "credit card" issue is what Plaintiff focuses on, and he fails to show how this issue "obviously failed" to provide probable cause. Again, the only fact alleged remotely relevant to the City Defendants is that one of the credit cards was in someone else's name—a fact that hardly negates probable cause, as Plaintiff does not allege he did not use the card, any facts on why the City had that knowledge by way of a final policymaker, or otherwise address the full aspect of the charges against Plaintiff.

The Court should dismiss Plaintiff's remaining and limited malicious prosecution claims against the City as a matter of law.

**2. FABRICATION OF EVIDENCE**

Citing *McDonough v. Smith*, 588 U.S. 109 (2019), Plaintiff argues that in addition to his malicious prosecution claim he can also pursue a fabricated evidence claim against Defendants and that the claim is not barred by limitations because it accrued upon favorable termination of his PAC fund charges. *McDonough* recognized a fabrication of evidence claim against a specially appointed prosecutor and the case addressed accrual of such a claim. In doing so, *McDonough* considered fabrication of evidence as being aligned with a malicious prosecution claim, assuming the theory arises from the due process clause (but not deciding that issue). At 115.

If another specific amendment provides a claim, such as here the Fourth Amendment through its malicious prosecution claim[3], a separate substantive due process-based claim should not proceed. *Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020) (rejecting substantive due process theory when the matter at hand was connected to a Fourth Amendment theory). But even if a separate fabrication of evidence claim exists independent of a malicious prosecution claim, Plaintiff's theory still fails.

First, Plaintiff cites *Cole v. Carson*, 802 F.3d 752, 767 (5th Cir. 2015) for the proposition that Plaintiff's fabrication claim arises from the Fourth Amendment based on Plaintiff's 2017 arrest—an argument Plaintiff makes a point to focus on (*see* Doc. 47, ¶ 21). To the extent Plaintiff's fabrication claim is based on a Fourth Amendment theory based on his 2017 arrest, the two-year statute of limitations bars Plaintiff's fabrication of evidence claims. *Id.*

Otherwise, the same arguments from the malicious prosecution section above regarding the FAC and the lack of allegations by a final policymaker and *Monell* liability apply equally to any fabrication of or withholding of evidence claim. Moreover, the FAC fails to allege specific *facts* as to each defendant, including Plaintiff's failure to allege *facts* of what fabricated evidence each defendant provided, as well as the causal chain being broken. For these reasons, Plaintiff's fabricated evidence claim fails to state a claim against the City.

### 3. First Amendment

The same analyses discussed in the two prior sections apply to Plaintiff's First Amendment retaliation claim against the City. Plaintiff's response argues, without citing any case law

[3] *Thompson v. Clark*, 596 U.S. 36, 43 (2022) found the malicious prosecution theory based in the Fourth Amendment. While not available in 2017 and not clearly established until 2022, the claim is currently recognized.

supporting his argument, that his First Amendment claims can proceed because they are subject to accrual at the termination of his criminal proceedings.

Even if limitations did not bar Plaintiff's First Amendment retaliation claim, those claims fail for several other reasons discussed in the City's motion to dismiss (and discussed above regarding lack of adequate final policymaker). Plaintiff argues, citing *Lane v. Franks*, 573 U.S. 228, 241 (2014), that he engaged in protected speech because he verbalized "official corruption" and such triggers the First Amendment. However, the FAC does not allege facts that relate to speech about corruption or misuse of funds. At most, the FAC alleges that two individuals, who happened to be city commissioners, allegedly asked *Plaintiff* if *Plaintiff* would bestow favorable treatment to them. Each of the alleged facts regarding protected conduct notes that the two commissioner defendants attempted to "pressure" Plaintiff to use his position in some way, and then Plaintiff contends he refused to do so. (Doc. 37, ¶31(1)-(5)). A favorable reading of the FAC suggests that the two commissioner defendants made requests, which Plaintiff denied. Nothing more.[4]

Plaintiff alleges nothing that the commissioner defendants did that constituted official misconduct, public corruption, impropriety, or illegal conduct. Plaintiff says the commissioner defendants asked for favoritism, which Plaintiff denied to engage in. Such does not trigger the First Amendment: (a) because there is insufficient "speech" as a matter of law as the City argued in its motion; but also (b) because the alleged requests and conduct set forth in the FAC do not trigger a matter of public concern for First Amendment purposes.

---

[4] The City refers to Chief Sheldon's reply arguments as to the lack of any knowledge of these alleged discussions between Plaintiff and the two commissioners for purposes of Chief Sheldon's actions. Moreover, the FAC does not allege that anyone else at the City, other than the two commissioners, had any knowledge of the alleged (and disputed) First Amendment activity.

Second, any First Amendment retaliation claim also requires Plaintiff to allege adequate inducement. *Hartman v. Moore*, 547 U.S. 250, 262 (2006). Plaintiff alleges no such facts, including what the City, by and through a final policymaker, communicated to the District Attorney's office or the grand jury, or any other fact that "bridge[s] the gap between the nonprosecuting government agent's motive and the prosecutor's action." *Id.*, at 263. "Evidence of an inspector's animus does not necessarily show that the inspector induced the action of a prosecutor who would not have pressed charges otherwise." *Id.*

Nor does Plaintiff negate probable cause under the standards the City's motion to dismiss sets out. (Doc. 41, pp. 18-19). The FAC's admission that individuals with knowledge of the Association's finances provided information to support the allegations supports probable cause. Plaintiff's argument is that it was not a card in his name for questioned expenses—a defense that he could raise in defense to the charges against him. (*See* Doc. 41, p. 19; *see also* fn. 3 above). As to a defense that the credit card at issue was in someone else's name that is somehow connected to his felony charges (Plaintiff does not allege how the card is connected, or even that he did not use the other person's card), the probable cause standard does not require such defensive issues to be negated. *See, e.g., Hall v. Trochessett*, 105 F.4th 335, 342 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1173, 221 L. Ed. 2d 255 (2025) ("A defense that may be raised in future proceedings does not vitiate probable cause at the time of arrest.")

The probable cause standard requires only the "fair probability" criminal activity occurred and the potential for guilt "*need not reach [even] the fifty percent mark*." *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024) (emphasis added). As discussed above, Plaintiff fails to adequately address probable cause other than to suggest that a credit card presumably at issue was in someone else's name, but Plaintiff does not allege how that deprives probable cause, much

less suggest that his charges were based only on credit card usage. Plaintiff's complaint and attachments show that there was at least an "arguable" basis for the criminal charges. The FAC even concedes that the financial crimes were advanced based on information from someone with knowledge of the Association's finances.

For all these reasons, Plaintiff's First Amendment claim against the City, like his malicious prosecution and fabrication of evidence claims, fail and should be dismissed. *See, e.g., Armstrong v. City of Shreveport*, 532 F. Supp. 3d 341 (W.D. La 2021), *aff'd by Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023) (dismissing and affirming dismissal of claims against city for failure to establish the final policymaker element). In fact, on appeal the Fifth Circuit expressly rejected the lack of any potential municipal liability based on claims that police officers personally engaged in misconduct, finding any *Monell* basis conclusory. *Armstrong*, 60 F.4th at 276-77. Plaintiff's allegations are equally deficient as to all theories against the City, and the Court should dismiss them in full.

### 4. Section 1983 Civil Conspiracy

Plaintiff's federal conspiracy claims against the City fail for the same reasons discussed above on the substantive claims. Conspiracy itself is not actionable. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). Rather, it is the legal mechanism through which to impose liability on all defendants of an agreement. For the reasons above, including failure as to qualified immunity, Plaintiff fails to allege a federal conspiracy claim against the City.

The FAC asserts an agreement and supports it with the "sequence and coordination" of events, (Doc. 37, ¶ 121), a list of overt acts (*Id.*, ¶ 122), and an allegation "on information and belief" that "each Defendant was the agent and employee of each other Defendant," (*Id.* ¶ 123). Even considered together, those allegations do not provide sufficient factual support that the

City—by and through a final policymaker representing a final decision by the City—joined an agreement to fabricate material evidence, deliberately conceal exculpatory information, or otherwise cause the constitutional violation alleged. The references to a sequence of events and collective direction assert the connection; the surrounding factual allegations must plausibly support it. "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Bell v. Twombly*, 550 U.S. 544, 557 (2007).

Plaintiff does not allege how the City, which again acts through a majority of its council, engaged in the alleged conspiracy. The FAC does not allege non-conclusory *facts* to support a conspiracy as to the theft/misappropriation charges. FAC paragraphs 120-123 contain conclusory allegations, not facts specific as to each defendant to state a claim. And even those allegations simply allege that “city officials” acted on behalf of the City (e.g., Doc. 37, ¶ 120), which is insufficient. For this additional reason, the FAC fails to allege a viable conspiracy claim against the City.

**5. The Court Should Not Permit Plaintiff to Amend Again.**

Plaintiff asks in the alternative for a Rule 7(a) reply or leave to amend. The City refers to Chief Sheldon’s and the Commissioner Defendants’ briefing as to the Rule 7(a) reply, as such relates to qualified immunity. Ohterwise, Plaintiff received notice of the defendant specific deficiencies. In response to the City’s first motion to dismiss, Plaintiff stood on his petition and sought no leave. (Doc. 24). In response to the City's motion Plaintiff told the Court that if any claim needed "additional factual detail" he could plead "the specific acts by each Defendant supporting malicious prosecution." (Doc. 24 at 9).

The Court granted leave to amend at the September 1 hearing (Doc. 36) and Plaintiff filed the FAC with the stated purpose to "identify each defendant's conduct separately" and "address the issues raised in Defendants' motions to dismiss." (Doc. 37 ¶ 4). What he now offers as potential

further additions (Doc. 46, ¶ 54) are the same categories in the same general things alleged previously. Plaintiff does not specify what *facts* he would allege to change the analysis, just more categories or information. An offer to plead categories of facts, without their substance, does not show that amendment would cure the deficiency. Leave may be denied for "repeated failure to cure deficiencies by amendments previously allowed" and for "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir. 2002). Based on that and the authorities set forth in the City's reply in support of its first motion to dismiss (Doc. 28, pp. 7-8), the Court should deny Plaintiff's request to further develop the pleadings and his allegations. The Court should dismiss all claims against the City of Brownsville.

WHEREFORE, PREMISES CONSIDERED, the City of Brownsville prays that the Court dismiss Plaintiff's claims against the City in their entirety and with prejudice, enter judgment that Plaintiff take nothing against the City, assess costs against Plaintiff, and award the City all other relief to which it may show itself entitled.

Respectfully submitted,

*/s/ Kevin M. Curley*
**KEVIN M. CURLEY**
kevin@txmunicipallaw.com
*Attorney-In-Charge*
State Bar No. 24047314
Southern District Admission 3/1/2007
**MESSER FORT, PLLC**
6371 Preston Road, Suite 200
Frisco, TX 75034
972.668.6400 – Telephone
**ATTORNEY FOR DEFENDANT THE CITY OF BROWNSVILLE**

## CERTIFICATE OF SERVICE

A copy of the foregoing was provided to all counsel of record in accordance with the Federal Rules of Civil Procedure by ECF filing on the 6th day of November 2026.

*/s/ Kevin M. Curley*
**KEVIN M. CURLEY**